**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
**SYRACUSE DIVISION**

DANIELLE RAUSA,

Plaintiff,

-against-

THE BOARD OF EDUCATION of the North Syracuse Central School District and STEVEN WOLF, Principal of Roxboro Middle School,

Defendants.

VERIFIED COMPLAINT

Jury Demand

CV No.:
5:11-CV-1152
(TJM/ATB)

Plaintiff, DANIELLE RAUSA, through her attorneys, O'HARA, O'CONNELL & CIOTOLI, for her Verified Complaint against the Defendants states and alleges as follows:

**JURISDICTION**

1. Plaintiff brings this action under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the New York Human Rights Law at New York Executive Law § 296, *et. seq.*, and New York Education Law § 3020-a and pendent State tort claims.

2. This Court has jurisdiction under 28 U.S.C. § 1331 and has supplemental jurisdiction for the state causes of action under 28 U.S.C. § 1367.

3. With respect to the pendant claims, plaintiff has complied with applicable notice of claim requirements under New York State law by serving a timely Notice of Claim on

September 16, 2010. Annexed hereto as **Exhibit "A"** is a true and correct copy of the Notice of Claim.

4. Plaintiff was examined regarding her Notice of Claim, pursuant to New York State General Municipal Law § 50-h, on March 18, 2011.

5. This action has been commenced within the time required by General Municipal Law §50-i.

6. More than thirty (30) days has elapsed since the Notice of Claim was served on defendants and adjustment or payment thereof has been neglected and/or refused.

7. Further, Plaintiff has filed claim with the Equal Employment Opportunity Commission ("EEOC") dated April 11, 2010 and upon receipt of a Right to Sue Letter from the EEOC in approximately 180 days after the filing date, Plaintiff anticipates amending this complaint to add causes of action under Title VII of the Civil Rights Act of 1964 at 42 U.S.C. § 2000e, *et. seq*. and that therefore, this current action is brought herein to protect the applicable statute of limitations for the causes of actions stated herein.

**THE PARTIES AND VENUE**

8. Plaintiff resides in the Village of Liverpool, County of Onondaga and State of New York.

9. The North Syracuse Central School District (hereinafter, the "District") is a municipal corporation, organized and existing under Article 37 of the New York State Education Law. The District has administrative offices located in the County of Onondaga, State of New York.

10. Defendant, the Board of Education (hereinafter, the "Board"), is the governing body of the District.

11. At all times relevant hereto, defendant Steven Wolf (hereinafter, "Wolf") was the Principal of Roxboro Road Middle School (hereinafter, "Roxboro"). Roxboro is a middle school within the District.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) (1) and (2) and (c). A substantial part of the events giving rise to the Plaintiff's claim occurred within the Northern District of New York.

**FACTUAL BACKGROUND**

13. Plaintiff has been employed by the District since 1997. She was granted tenure on or about April 24, 2000 in the Music Education tenure area and has been assigned to Roxboro as an instrumental and vocal music teacher since June 3, 2002.

14. Defendant Wolf began his employment with the District as principal of Roxboro on or about January 28, 2008.

15. Prior to that date, Plaintiff had always had a constructive and collegial relationship with the various principals at Roxboro and with her colleagues and fellow teachers.

16. However, immediately after Defendant Wolf's employment commenced, he began to make Plaintiff the target of unprofessional, unproductive and unwarranted criticisms, which is described in greater detail in the Notice of Claim and at the 50-h examination.

17. These criticisms were manifested in a variety of ways, most notably via improper reprimands that were placed in Plaintiff's personnel file.

18. The reprimands, discussed below, focused almost entirely on interactions that Plaintiff had with several male employees at Roxboro, all of whom were Defendant Wolf's "cronies" or buddies. The several male employees were identified by name by Plaintiff at the 50-h examination and are known to Defendants.

19. Plaintiff, as a female, was treated differently by Defendant Wolf than her male counterparts and the consequences of this disparate and hostile treatment have been devastating to Plaintiff, which continues through the present.

*The Reprimands*

20. Plaintiff received three reprimands during the first ten (10) months of Defendant Wolf's employment, whereas in the previous ten (10) years of Plaintiff's employment with the District she received none.

21. The first memorandum was dated February 25, 2008 and was subsequently placed in Plaintiff's personnel file.

22. This memorandum was disciplinary in nature as it contained castigating statements of misconduct. This reprimand was issued without affording Plaintiff, a tenured teacher, the due process protections pursuant to New York Education Law § 3020-a.

23. The specific conduct that was the basis for this memorandum was an alleged disagreement Plaintiff had with a male member of the music department. Plaintiff was disciplined for this alleged disagreement, while the male member was not.

24. The second reprimand was issued on or about June 25, 2008.

25. This reprimand again focused on an alleged incident that occurred between Plaintiff and a male member of the music department.

26. Plaintiff was reprimanded for her tone and for statements that were made during this alleged incident with the male employee. The male employee was not disciplined despite the fact that he was hostile, threatening, antagonizing and unprofessional during his interactions with Plaintiff. In fact, Defendant Wolf did not investigate Plaintiff's version of the incident in question.

27. This memorandum, like the February memorandum, was disciplinary in nature. It, too, contained castigating statements of misconduct and constituted a reprimand that was issued without affording Plaintiff, a tenured teacher, the due process protections of New York Education Law § 3020-a.

28. Finally, Plaintiff was issued two successive reprimands on October 20, 2008 and November 11, 2008, in which the first document from October 20, 2008 was really just notes from a meeting that Plaintiff had with the administration, but it was placed in Plaintiff's personnel file without her knowledge and the November 11, 2008 memorandum basically repeated what was in the October 20th document.

29. Both of these documents contained false information, which even after Plaintiff explained to Defendant Wolf how the information was false, he still refused to change the reprimand.

30. All of the surrounding facts and circumstances of these illegal reprimands were reviewed in detail at the 50-h examination of Plaintiff.

31. In addition, Plaintiff has sought a FOIL request for all similar discipline of male staff members and has been informed that there are none, showing again the discriminatory and disparate impact of Defendants' action on Plaintiff.

*3020-a Charges and Suspension*

32. On June 16, 2009, Plaintiff was served with charges by the District pursuant to New York Education Law § 3020-a (the "3020-a Charges").

33. The District suspended Plaintiff without pay for thirty (30) work days, commencing on September 8, 2009, prior to the hearing and prior to any decision on the 3020-a

Charges by an impartial hearing officer. The unpaid suspension continued until Plaintiff returned to work on or about October 20, 2009.

34. This unpaid suspension clearly violated New York Education Law § 3020-a(2)(b) which, since the 1994 amendments to that statute, has clearly required that a pre-hearing suspension of a tenured teacher be *with pay*, except in limited circumstances not applicable here.

35. Charge One of the 3020-a Charges alleged that Plaintiff committed misconduct by failing to properly supervise her Drama Club students during the 2008-2009 school year.

36. The Charges alleged that Plaintiff allowed a male student to commit acts of sexual abuse against several female members of the Drama Club.

37. Plaintiff was the only individual that was charged for this alleged failure to supervise the students despite the fact that several other adults, and faculty members, were also present during the time period when the alleged abuse occurred and furthermore, this male student also committed these acts in other school settings, including on the school bus and in art class, but Plaintiff was the only school district employee to be punished or charged with misconduct.

38. The allegations of abuse were investigated by the Abused Persons Unit of the Sheriff's Department. Annexed hereto as **Exhibit "B"** is a copy of the Sheriff's Incident Report Complaint Number 09-214737. Plaintiff was never questioned or contacted by the Sheriff and no charges were filed by the Department against her. The investigating Deputy went so far as to indicate that there was no investigation into Plaintiff's conduct because each of the victims stated unequivocally that the Plaintiff knew nothing about the alleged incidents of abuse. Even with this exonerating information, the District still proceeded to discipline the Plaintiff only.

39. Furthermore, during the previous (2007-2008) school year, at least one parent of a female student and two female students at Roxboro complained about the same male student's sexual harassment and abuse by speaking directly with the District administration (Assistant Principal Mrs. Hardy) and Defendant Wolf. However, the District and Defendant Wolf did not conduct any investigation into this complaint. Moreover, Wolf never advised Plaintiff or any other teachers of the complaint so that they would be alerted to this student's behavior. This reporting of the same male student's improper behavior from the prior school year is also referenced in the Sheriff's Incident Report (**Exhibit "B"**)

40. Despite this fact, Plaintiff was made the scapegoat and blamed for this incident by Defendant Wolf. No other individual was held accountable for this male student's misconduct. Defendant Wolf was never held accountable for his failure to advise the relevant staff members of the 2007-2008 incident of sexual harassment and abuse involving the same male student.

41. Even when Defendant Wolf, who is a mandatory reporter of suspected abuse, was informed of this male student's improper behavior on Friday, March 27, 2009, by the female victims, he waited until Monday, March 30, 2009, to actually call the Sheriff's Department to report the abuse (See **Exhibit "B"**) and, again, Defendant Wolf was never disciplined for this misconduct by the District. The only one who was ever charged by the District was Plaintiff, who knew nothing of the abuse or the history surrounding the abuse.

42. Charge One was later resolved and dropped by the District pursuant to a Settlement Agreement executed on **June 28, 2010** between the parties and signed by the hearing officer, where Plaintiff alleges herein on information and belief that the charges were so tenuous and unsustainable (and false) that the District had to drop it and back off. The Settlement Agreement is annexed hereto as **Exhibit "C"** and furthermore, the Settlement Agreement

specifically contained a non-waiver of claims clause so that Plaintiff could pursue the instant claims against the Defendants, which started with the filing of the Notice of Claim and submission to the 50-h examination.

43. Based on the settlement of charges, this matter never did go to hearing, where under New York Education Law § 3020-a(4)(c), the hearing officer may find that a charge is "frivolous" and may order reimbursement to the employee for the reasonable costs, including attorney's fees, the employee incurred in defending the charges.

44. It is Plaintiff's contention here that the Charge based on her supervision of the Drama Club was a frivolous charge and would have been found so by an impartial hearing officer, and that the only reason this charge was brought against her was because of the discriminatory and retaliatory animus of Defendants against her.

45. The remaining charges included two that dealt with Plaintiff's alleged failure to timely submit grades. Plaintiff was charged with the late reporting of grades, while Defendant Wolf and other District administrators allowed other teachers to submit late grades with no disciplinary repercussions whatsoever.

46. Plaintiff was also charged with misconduct for her interactions with several male employees, who, not surprisingly were individuals that Defendant Wolf favored over Plaintiff and such male employees were never written up themselves for hostile behavior toward the Plaintiff – only Plaintiff was ever written up for these encounters.

47. In exchange for Plaintiff's admission on one charge related to the timeliness of her grade submissions, the remaining charges, including Charge One, were resolved and not pursued by the District.

48. Furthermore, Plaintiff's unpaid suspension was reduced from 30 days to 5 days.

*Other Unprofessional and Discriminatory Behavior*

49. Defendant Wolf subjected Plaintiff to a variety of other discriminatory and unprofessional acts since he began his employment with the District, which were stated in paragraphs 56(a)-(z) of the Notice of Claim (**Exhibit "A"**) and Plaintiff was examined on these claims at the 50-h examination.

50. Ultimately, Defendants' discriminatory and retaliatory animus against Plaintiff culminated in the Settlement Agreement on the charges dated June 28, 2010, basically exonerating Plaintiff from any misconduct except for the one minor issue of turning in grades late, despite all the allegations contained in the reprimands and charges against Plaintiff.

51. This pattern of conduct directed at Plaintiff by Defendant Wolf has caused Plaintiff stress and anxiety, damaged her professional reputation and damaged otherwise productive relationships that she had with her peers, both male and female.

*Claimant's Brain Tumor and Medical Leave*

52. In the midst of Plaintiff's difficulties at work she was also diagnosed with a brain tumor at the end of January 2009.

53. Plaintiff went out on a disability leave from the District on *September 16, 2010* and returned to work on a part-time basis on *March 14, 2011* and then returned to work on a full-time basis. The surgery on the tumor took place at Johns Hopkins University Medical Center on September 17, 2010.

54. At one point, Defendant Wolf said to a staff member that the brain tumor would be Plaintiff's "*excuse*" now, as a way to further belittle and demean Plaintiff and her very serious medical condition.

*Since Plaintiff's Return to Work in March 2011*

55. Since Plaintiff returned to work in March 2011, the discriminatory animus and retaliatory behavior against Plaintiff continued through the end of the school year in June 2011, with threats of write-ups, multiple meetings with the Administration, including with the Assistant Superintendent for Instruction Stan Finkle (and Mr. Wolf), an unfair and improper evaluation, which required the filing of a grievance that led to the changing of this evaluation, favoritism in teaching assignments, instigation of a confrontation with a parent, and further favoritism shown toward male staff members the same as occurred prior to Plaintiff's' medical leave of absence.

56. For example, a male employee (Mr. Pat Wallace), who was also shown favoritism by the District and Mr. Wolf prior to Plaintiff's medical leave of absence, was given a teaching assignment so he could do an internship, which included reduced hours, while still receiving full pay, in violation of the teacher's contract, as well as other examples of preferential treatment for this particular male staff member.

*Injuries and Damages*

57. The harm and damage to Plaintiff has included stress and anxiety, damage to her professional reputation, damage to her professional relationships with her peers and fellow teachers, both male and female, loss of pay, which was originally 30 days pay, but later reduced to 5 days pay, and medical care and treatment. This harm and damage was stated in emotional detail by Plaintiff at her 50-h examination when she was asked to describe her damages in her own words. Please see **Exhibit "D"** for the transcript of pages 145-146 of the 50-examination taken on March 18, 2011 for Plaintiff's testimony regarding her damages and how her life was turned into "three years of hell."

**FIRST CAUSE OF ACTION**
**- 42 U.S.C. § 1983 –**
**EQUAL PROTECTION**

58. Plaintiff incorporates paragraphs "1" through "57" inclusive, as if fully set forth here.

59. Defendants Board and Wolf are state actors acting under color of state law for purposes of 42 U.S.C. § 1983.

60. Plaintiff is a citizen of the United States whose rights and liberties are protected pursuant to 42 U.S.C. § 1983 and the United States Constitution.

61. As set forth above, Defendants deprived Plaintiff of her right to Equal Protection under the Fourteenth Amendment to the United States Constitution based on her gender as alleged herein.

62. As set forth above, Defendants discriminated against Plaintiff in the terms, conditions and privileges of her employment in violation of her Constitutional Rights.

63. These acts constitute violations of the Fourteenth Amendment to the United States Constitution and are actionable pursuant to 42 U.S.C. § 1983, in that the actions taken herein by Defendants and each of them named individually were intended to deprive Plaintiff of her rights guaranteed by applicable and known federal law, and were done by Defendants under color of state law.

64. As a result of Defendants' unlawful acts, Plaintiff has suffered, and/or continues to suffer, monetary damages, lost wages, physical and psychological harm, emotional distress, damage to her professional reputation, and other damages.

65. Plaintiff is also entitled to attorney's fees under 42 U.S.C. § 1988.

**SECOND CAUSE OF ACTION**
**- 42 U.S.C. § 1983 –**
**DEPRIVATION OF PROPERTY AND LIBERTY INTERESTS WITHOUT DUE PROCESS**

66. Plaintiff incorporates paragraphs "1" through "65" inclusive, as if fully set forth here.

67. Defendants are state actors, and the actions described herein were taken by Defendants acting under color of state law for purposes of 42 U.S.C. § 1983.

68. As such, Defendants had an obligation to provide Plaintiff with due process relative to any deprivation of property or liberty rights pursuant to 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments to the United States Constitution.

69. Plaintiff is a citizen of the United States whose rights and liberties are protected pursuant to 42 U.S.C. § 1983 and the United States Constitution.

70. Plaintiff has a protected property interest in her contractual employment and tenure rights and a protected liberty interest in her good name, reputation and right to pursue her chosen career. Plaintiff may not be deprived of these rights by individuals acting under color of state law.

71. Defendant Wolf, under color of state law, deprived Plaintiff of these interests by issuing baseless reprimands and pursuing baseless 3020-a charges against her.

72. Defendant Board, under color of state law, deprived Plaintiff of these interests by serving baseless 3020-a charges against Plaintiff and by suspending Plaintiff for thirty (30) days without pay.

73. In addition, Defendants deprived Plaintiff of both of these interests, without any due process, by issuing illegal reprimands, by suspending Plaintiff without pay prior to any

hearing as required by law and through the overall flawed hearing process, and by engaging in a campaign of retaliation.

74. Such actions violated Plaintiff's tenure rights and harmed Plaintiff's good name and professional reputation.

75. As a result of Defendants' unlawful acts, Plaintiff has suffered, and/or continues to suffer, monetary damages, lost wages, physical and psychological harm, emotional distress, damage to her professional reputation, and other damages.

76. Plaintiff is also entitled to attorney's fees under 42 U.S.C. § 1988.

**THIRD CAUSE OF ACTION**
**VIOLATION OF NEW YORK EXECUTIVE LAW § 296, ET AL.**
**HUMAN RIGHTS LAW**

77. Plaintiff incorporates paragraphs "1" through "76" inclusive, as if fully set forth here.

78. Plaintiff is a female and, as such, is a covered individual under New York Human Rights Law (Executive Law § 296, et. seq.).

79. Plaintiff was subjected to disparate and discriminatory treatment by Defendants as compared with similarly situated male employees.

80. Upon information and belief, the Defendants' actions were based upon impermissible discrimination based upon the fact that Plaintiff was a female.

81. Based upon the foregoing, Defendants discriminated against Plaintiff in the terms, conditions and privileges of her employment in violation of New York Human Rights Law.

82. As set forth above, the aforementioned actions of the Defendants constitute a pattern and practice of gender discrimination, disparate treatment and/or harassment. These acts violation New York Executive Law § 296, et. seq., and are illegal.

83. As a direct and proximate result of this conduct, Plaintiff has suffered, and/or continues to suffer, monetary damages, lost wages, physical and psychological harm, emotional distress, damage to her professional reputation, and other damages.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF NEW YORK EXECUTIVE LAW § 296, ET AL.**
**RETALIATION**

84. Plaintiff incorporates paragraphs "1" through "83" inclusive, as if fully set forth here.

85. By the acts and conduct described herein, Plaintiff engaged in protected activities when she made internal discrimination complaints as alleged herein and repeatedly went to the District administration to complain about the treatment she was receiving at the hand of Wolf and his male cronies.

86. Upon information and belief, Defendants were aware that Plaintiff engaged in these protected activities.

87. Plaintiff suffered adverse employment actions as a result of having engaged in these protected activities, including further reprimands, being deprived of employment opportunities and having charges brought against her, which were false and baseless and ultimately dropped by Defendants.

88. Based upon the foregoing, Defendants discriminated against Plaintiff in the terms, conditions and privileges of her employment in violation of New York Human Rights Law (Executive Law § 296, et. seq.).

89. As a result of Defendants' unlawful acts, Plaintiff has suffered, and/or continues to suffer, monetary damages, lost wages, physical and psychological harm, emotional distress, damage to her professional reputation, and other damages.

**FIFTH CAUSE OF ACTION**
**AIDING AND ABETTING UNDER § 296 OF THE HUMAN RIGHTS LAW**
**DEFENDANT STEVEN WOLF ONLY**

90. Plaintiff incorporates paragraphs "1" through "89" inclusive, as if fully set forth here.

91. Upon information and belief, Defendant Wolf directly participated in and thereby aided and abetted in the unlawful discrimination and retaliatory conduct of the Defendants as described herein.

92. Defendant Wolf discriminated against Plaintiff in the terms, conditions and privileges of her employment in violation of New York Executive Law § 296.

93. As a direct and proximate result of this conduct, Plaintiff has suffered, and/or continues to suffer, monetary damages, lost wages, physical and psychological harm, emotional distress, damage to her professional reputation, and other damages.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF NEW YORK EDUCATION LAW § 3020-a**

94. Plaintiff incorporates paragraphs "1" through "93" inclusive, as if fully set forth here.

95. Plaintiff began her employment with the District in 1997 and acquired tenure on or about April 24, 2000.

96. New York State Education Law § 3020-a(2)(b) mandates that a pre-hearing suspension of a tenured teacher is to be with pay, except in limited circumstances not relevant here.

97. Defendants suspended Plaintiff without pay for thirty (30) days prior to the hearing. The unpaid suspension commenced on September 8, 2009 and continued until Plaintiff returned to work on or about October 20, 2009.

98. As a direct and proximate result of this conduct, Plaintiff has suffered, and/or continues to suffer, monetary damages, lost wages, physical and psychological harm, emotional distress, damage to her professional reputation, and other damages.

**SEVENTH CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

99. Plaintiff incorporates paragraphs "1" through "98" inclusive, as if fully set forth here.

100. Defendants intentionally, willfully and knowingly engaged in the conduct alleged and referenced herein.

101. Said conduct is extreme and outrageous and exceeded all bounds of decency.

102. As a direct and proximate result of this conduct, Plaintiff has suffered emotional distress.

103. As a direct and proximate result of this conduct and intentional infliction of emotional distress, Plaintiff has suffered, and/or continues to suffer, monetary damages, lost wages, physical and psychological harm, emotional distress, damage to her professional reputation, and other damages.

**EIGHTH CAUSE OF ACTION**
**PRIMA FACIE TORT**

104. Plaintiff incorporates paragraphs "1" through "103" inclusive, as if fully set forth here.

105. Even if found otherwise lawful, as a result of Defendants' intentional and malicious conduct referenced above, Plaintiff has suffered injury in her employment and to her professional reputation.

106. Defendants intentionally engaged in the conduct referenced above without any excuse or justification. The Defendants' above referenced conduct was motivated solely by malevolence.

107. As a direct and proximate result of this conduct, Plaintiff has suffered, and/or continues to suffer, monetary damages, lost wages, physical and psychological harm, emotional distress, damage to her professional reputation, and other damages, including the loss of 30 days pay which was later reduced to 5 days pay, which caused a direct financial hardship.

108. Plaintiff has also sought medical treatment for her work related stress and anxiety and has incurred medical bills for such treatment and for prescription drugs.

## DEMAND FOR TRIAL BY JURY

109. Pursuant to the Fed. R. Civ. P. 38, Plaintiff respectfully demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter an award of damages in her favor in a sum to be determined according to proof and as provided by law, plus her attorneys' fees, costs and disbursements incurred in prosecuting this action, punitive damages and such other and further relief as the Court may deem just and proper.

Dated: September 13, 2011

Yours, etc.,

s/ Stephen Ciotoli

Stephen Ciotoli, Esq.
Bar Roll No. 512228
*Attorney for Plaintiff*
O'HARA, O'CONNELL & CIOTOLI
7202 East Genesee Street
Fayetteville, New York 13066
(315) 451-3810

# A

SUPREME COURT
STATE OF NEW YORK ONONDAGA COUNTY

DANIELLE RAUSA,

*Claimant,*

v.

THE BOARD OF EDUCATION of the North Syracuse Central School District and STEVEN WOLF, Principal of Roxboro Road Middle School,

*Respondents,*

**NOTICE OF CLAIM**

TO THE ABOVE NAMED RESPONDENTS:

PLEASE TAKE NOTICE that Danielle Rausa (the "Claimant") hereby serves notice of the following claims upon the Board of Education (the "Board") of the North Syracuse Central School District (the "District") and the other named Respondents:

*The Parties*

1. I am employed by the North Syracuse Central School District (the "District") as a tenured teacher in the music department of Roxboro Road Middle School ("Roxboro").

2. My attorneys are O'HARA, O'CONNELL & CIOTOLI, with offices located at 7207 East Genesee Street, Fayetteville, New York 13066.

3. Respondent Board of Education (the "Board") is the governing body of the District. The Board is named because Respondent Steven Wolf may be entitled to

indemnification for any damages attributable to him as a consequence of the actions described below.

4. Steven Wolf ("Wolf") is currently the Principal of Roxboro and upon information and belief, he has held that position since approximately January 28, 2008.

*Factual Background*

5. I have been employed by the District since 1997. I was granted tenure on or about April 24, 2000 in the Music Education tenure area and have been assigned to the Roxboro Road Middle School as an instrumental and vocal music teacher since June 3, 2002.

6. During the period relevant to this Notice of Claim, I was employed as a music teacher at Roxboro responsible for both instrumental and vocal instruction.

7. For the last 9 years, I have also been the Drama Club advisor. In that role, I was responsible for producing and directing Roxboro's annual musical.

8. Wolf began his employment with the District on or about January 28, 2008.

9. Prior to that date, I had always had constructive and collegial relationships with the various Principals at Roxboro.

10. However, immediately after Wolf's employment commenced, he began to make me the target of unprofessional, unproductive and unwarranted criticisms.

11. These criticisms were manifested in a variety of ways, most notably via illegal reprimands that were placed in my personnel file.

12. The reprimands discussed below, focused almost entirely on interactions that I had with several male employees at Roxboro, all of whom were Wolf's "cronies."

13. I am female and I was treated differently by Wolf than my male counterparts.

14. Wolf's actions as described below were at times unprofessional and at other times discriminatory.

15. Wolf's actions in this regard so blatantly unprofessional that, upon information and belief, he received several complaints from parents and staff members about his treatment of me.

*The Reprimands*

16. From the moment Wolf began his employment, it became clear to me that he favored the male members of the Roxboro staff. As a consequence of this favoritism, I was subjected to unwarranted, illegal and unprofessional actions by Wolf.

17. I received three reprimands during the first ten (10) months of Wolf's employment.

18. The first memorandum was dated February 25, 2008 and was subsequently placed in my personnel file.

19. This memorandum was disciplinary in nature as it contained castigating statements of misconduct. This reprimand was issued without affording me, a tenured teacher, the due process protections of Education Law §3020-a.

20. The specific conduct that was the basis for this memorandum was an alleged disagreement that I had with a male member of the music department. I was disciplined for this alleged disagreement, while the male member was not. This is true despite that this male teacher

exhibited hostility and unprofessionalism during the interactions with me that are the subject of the reprimand.

21. The second reprimand was issued on or about June 24, 2008.

22. This reprimand again focused on an alleged incident that occurred between me and a male member of the music department.

23. I was reprimanded for my tone and for statements that were made during this alleged incident with the male employee. The male employee was not disciplined despite the fact he was hostile, threatening, antagonizing and unprofessional during his interactions with me. In fact, Wolf did not investigate my version of the incident in question.

24. This memorandum, like the February memorandum, was disciplinary in nature. It, too, contained castigating statements of misconduct and constituted a reprimand that was issued without affording me, a tenured teacher, the due process protections of Education Law §3020-a.

25. Finally, I was issued two successive reprimands on October 20, 2008 and November 11, 2008.

26. Although two memorandums were issued, they repeated references to the same events and alleged misconduct.

27. One of the allegations contained in these memorandums dealt with interactions that I had with Wolf concerning confusion about the structure of the chorus during the 2008-2009 school year.

28. Specifically, without notifying me and after, upon information and belief, consulting with various male members of the music program, Wolf unilaterally changed chorus

from a combined 6th and 7th grade program (the format utilized during the previous three (3) years) to 7th grade only. This was done without my knowledge.

29. Instead of discussing this in a constructive manner with me, Wolf unilaterally changed the structure of the chorus, cancelled informational meetings I had scheduled, and generally disrupted the orderly operation of my choral program.

30. Somehow, this resulted in an illegal reprimand being issued to me by Wolf.

31. The above reprimands involved situations where Wolf favored male employees and their version of events. This disparate treatment resulted in my being disciplined while male employees were allowed to treat me and other staff members in an unprofessional and hostile manner.

*3020-a Charges and Suspension*

32. On June 16, 2009, I was served with charges by the District pursuant to Education Law Section 3020-a (the "3020-a Charges").

33. The District suspended me without pay for thirty (30) work days, commencing on September 8, 2009. This suspension was imposed prior to the hearing and prior to any decision on the 3020-a Charges. The unpaid suspension continued until I returned to work on or about October 20, 2009.

34. This unpaid suspension clearly violated Education Law § 3020-a(2)(b) which, since the 1994 amendments to that statute, has clearly required that a pre-hearing suspension of a tenured teacher is to be *with pay*, except in limited circumstances not relevant here.

35. The District, ostensibly relying on pre-1994 language in the collective bargaining agreement between the District and its teachers (the "CBA"), ignored the clear mandates of § 3020-a and imposed an unpaid pre-hearing suspension. The relevant provision of the CBA states:

> In the event that any teacher is suspended pending a hearing on charges, such suspension shall be without pay until the findings and recommendations on the charges are determined.

36. Upon information and belief, this provision was in the CBA long before the Legislature amended Education Law § 3020-a(2)(b) in 1994 to require that the pre-hearing suspension of a tenured teacher be *with pay* except in very limited circumstances.

37. The CBA provision relied upon by the District has been preempted by the plain terms of Education Law Section 3020-a(2)(b), which explicitly requires that teachers be paid during suspensions under 3020-a.

38. My pre-hearing suspension was for thirty (30) work days. This is the *maximum* penalty that the Board sought to impose in the event I was found guilty of the 3020-a Charges. By suspending me without pay prior to the 3020-a disciplinary hearing for the maximum period sought by the Board, the Board violated my rights as a tenured teacher guaranteed by Education Law §3020-a (2)(b).

39. Furthermore, the Charges were pretextual in nature and orchestrated as part of Wolf's ongoing plot to discredit and illegally discipline me.

40. Charge One of the 3020-a charges alleged that I committed misconduct by failing to properly supervise her Drama Club students during the 2008-2009 school year.

41. The Charges alleged that I allowed a male student to commit acts of sexual abuse against several female members of the Drama Club.

42. I was the only individual that was held accountable for this alleged failure to supervise the students despite the fact several other adults, including the male technology club advisor, were present during the time period when the alleged abuse occurred.

43. The allegations of abuse were investigated by the Abused Persons Unit of the Sherriff's Department. I was never questioned or contacted by the Sheriff and no charges were filed by the Department against me. The investigating Deputy went so far as to indicate that there was no investigation into my conduct because each of the victim's stated unequivocally that the I knew nothing about the alleged incidents of abuse

44. Furthermore, during the previous (2007-2008) school year, at least one parent of a female student and two female students at Roxboro filed a formal complaint about the same male student's sexual harassment and abuse by speaking directly with Wolf. However, Wolf did not conduct any investigation into this complaint. Moreover, he never advised me or other teachers or advisors of the complaint so that we would be alerted to watch this particular student with extra vigilance. Ultimately, the parents who filed a complaint removed the child from the classroom where the incidents took place.

45. Additionally, the male student is alleged to have victimized female students in a variety of settings, including drama club rehearsals, on school buses, in the lunch rooms, in classrooms, in the hallways at Roxboro and outside of the school itself.

46. Despite this fact, I was made the scapegoat and blamed for this incident by Wolf. No other individual was held accountable for this male student's misconduct. Wolf was never

held accountable for his failure to advise the relevant staff members of the 2007-2008 incident of sexual harassment and abuse involving the same male student.

47. Charge One was dropped by the District pursuant to a settlement agreement executed on or about June 28, 2010.

48. The remaining charges included two that dealt with my alleged failure to timely submit grades. I was charged with the late reporting of grades, while Wolf and other District administrators allowed other teachers to submit late grades with no disciplinary repercussions.

49. I was also charged with misconduct for my interactions with several male employees who, not surprisingly, were individuals that Wolf favored over me and other female employees on several occasions.

50. This is true although several of the involved male employees were hostile, belligerent, negligent and unprofessional in their interactions with me.

51. In every instance where an allegedly strained encounter occurred between me and a male employee, I was saddled with the blame and the discipline for the incident. Wolf favored the male employees and treated them much differently than he treated me.

52. Ultimately, the 3020-a charges were resolved by way of settlement dated June 28, 2010.

53. In exchange for my admission of guilt on one charge related to the timeliness of my grade submission, the remaining charges, including Charge One, were dismissed.

54. My unpaid suspension was reduced from 30 days to 5 days.

*Other Unprofessional and Discriminatory Behavior*

55. Wolf subjected to me to a variety of other discriminatory and unprofessional practices since he began his employment with the District.

56. The following non-exhaustive list of incidents evidences a pattern of conduct by Wolf that began shortly after his appointment and continued until the conclusion of the 2009-2010 school year and the subsequent settlement of the 3020-a process:

a. Two months after Wolf was hired, he notified me that I was being removed from my instrumental position and moved into a classroom vocal position. As a justification for this move, Wolf stated that he believed that I was a "stronger vocalist than instrumentalist." However, this decision was made before Wolf had seen any performance by me, vocal or instrumental. Wolf thereafter placed a non-tenured male teacher, whom he favored, into my instrumental position. Upon information and belief, this decision was influenced by the male members of the music department because one male member wanted the instrumental position yet lacked the experience and seniority to be placed in that position.

b. As a continuing course of conduct throughout Wolf's employment, he has refused to speak directly to me on any issue or question related to the Drama Club. Instead, Wolf communicated with me through other individuals, even when the content of the message was critical and/or negative.

c. In September 2008, without notifying me and after, upon information and belief, consulting with various male members of the music program, Wolf unilaterally changed chorus from 7th grade ONLY to 6th and 7th grade. This was done without my knowledge.

d. From September 2008 through June 2010, Wolf would not allow me to operate the lights and sound for my productions and concerts. I had always completed these tasks. Instead, Wolf insisted that there was now a Technology Club, run by a male advisor whom Wolf favored, who would take care of all lighting and sound needs. I was denied access to the sound and lighting instruments.

e. From September 2008 through June 2010, Mr. Wolf repeatedly favored the male band director at Roxboro. I was disciplined and counseled for issues related to her use of the auditorium for rehearsals and other legitimate school related tasks. I was specifically chastised for failing to cooperate with the male band director and for allegedly failing to leave the auditorium in an appropriate state following rehearsals. The fact is that the male band director consistently refused to leave the auditorium when I was scheduled to use that space, failed to break down the stage and refused to work cooperatively with me. However, I, not the male band director, was criticized for these issues.

f. From 2008 through June 2010, Wolf, who was critical of me in the past for allegedly leaving the auditorium during Drama Club rehearsals, permitted the technology club advisor who was responsible for overseeing his club participants during Drama Club rehearsals, to simply NOT attend his club activities after school so that he could watch his children in the auditorium during drama club rehearsals. Wolf was advised of this fact and refused to take any action. I was left to monitor both my students and the technology club students.

g. In July 2009, Wolf accessed my private Facebook profile without my knowledge or consent. This was a clear violation of my privacy rights.

h. From June 2009 through June 2010, Wolf refused to meet with me to formally discuss my Year End Summary (YES) from the 2008-2009 school year. The YES report was in my personnel file despite this fact and despite the fact it included negative information that I was never permitted to respond to. I repeatedly requested a meeting (as required in the relevant CBA) with Wolf to discuss the YES.

i. From September 2009 through June 2010, whenever I was unable to attend staff meetings, Wolf refused to provide me with the minutes of the staff meetings despite the fact I promptly requested a copy. Upon information and belief, he regularly provided minutes to male staff members who missed meetings.

j. In October 2009, following my unilaterally imposed suspension that was later overturned, Wolf attempted to fill my position of Drama Club Director with a male member of the Roxboro staff.

k. From October 2009 through December 2009 and January 2010, despites my repeated complaints to Wolf, nothing was done to counteract the male technology advisor's failure to assist with technical support issues for students.

l. At the end of the 2008-2009 school year, I raised concerns to Wolf about a plan book and grade book that were stolen from my classroom. After following up several times with Wolf, I made a final request on November 8, 2009 to determine what steps were taken by Wolf or any other member of the District to investigate this incident. Wolf refused to provide this information. Upon information and belief, never investigated this incident.

m. In December 2009, Mr. Wolf openly praised the male band and orchestra directors following a student performance and wholly ignored me and the performance of my students.

n. In December 2009, Wolf scheduled a holiday pops concert and once again refused to include, inform, or allow the upper chorus that I headed to participate. This, in turn, intentionally created yet another rift in the music department, particularly between me and the male members of the department, who were favored by Wolf.

o. In December 2009 and January 2010, Wolf again favored the male members of the music department by praising the band and orchestra performances in the "Good News" bulletin. Little, if any, mention of the chorus that I headed was included in that or subsequent bulletins.

p. In January 2010, I was disciplined by Wolf for an unsubstantiated claim that I had acted unprofessionally by hanging up on Wolf's secretary.

q. From January 2010 through June 2010, despite my repeated requests, Wolf refused to provide adequate equipment and advisors in the auditorium for the concert that I was responsible for organizing.

r. In January 2010, Wolf publicly questioned the style of music that I chose to include in a student's performance.

s. In January 2010, Wolf illegally disciplined me one week prior to the chorus concert for failing to constructively work with the male members of the music department. Later that month, a male member of the music department was hostile during the

department's first meeting of the new year. That male member was not disciplined despite the fact his conduct was similar to my alleged conduct.

t. In February 2010, despite my decision to remove a student from Drama Club for disciplinary reasons, Wolf ordered that the student be allowed to participate in Drama Club. This ultimately led to a racial discrimination investigation.

u. In February 2010, I organized a District event at the Syracuse Crunch game despite Wolf's lack of support. After this turned out to be a successful event, Wolf took credit for the event.

v. From February through June 2010, I was responsible for organizing several successful events during this time period. Wolf ignored me and my contributions to the school, despite the fact many of the events were well received and even covered on local television.

w. On March 1, 2010, Wolf refused to respond to various requests and or questions I submitted to him despite the fact he previously demanded that I speak with him whenever I had questions and/or concerns.

x. In April 2010, I was responsible for the Drama Club production. I repeatedly requested that either Wolf and/or Wolf's close friend, the male technology club advisor, provide specific sound and lighting for the production. Wolf refused.

y. In June 2010, I voluntarily took the responsibility for organizing the 7th grade award night. Wolf took the credit for this event.

z. In June 2010, as discussed above, I was charged with various acts of misconduct by Wolf pursuant to Education Law §3020-a. One charge related to my alleged

failure to timely submit grades for a marking period during the 2008-2009 school year. However, several other teachers failed to meet the deadline for posting grades in both February and June, 2010, were not disciplined by Wolf.

57. This pattern of conduct directed at me by Wolf has caused me stress and anxiety, damaged my professional reputation and destroyed otherwise productive relationships that I had with her peers, both male and female.

## REQUESTS FOR RELIEF

58. Based on the foregoing, I make demand for damages for gender based discrimination and damages for personal and psychological injury, medical and doctor's expenses, emotional distress, and general damages and loss to my reputation and good name.

59. I further seek equitable relief, including, but not limited to, the removal of all illegal disciplinary memorandums and any other derogatory information from my personnel file.

60. I present this claim and demand payment for the damages that I have sustained. Unless I receive the relief outlined above and monetary damages adjusted and paid within the time provided by law from the date of presentation to you, I intend to commence an action on these claims.

Dated: September 16, 2010

Danielle Rausa

## INDIVIDUAL VERIFICATION

STATE OF NEW YORK )
COUNTY OF ONONDAGA ) ss.:

DANIELLE RAUSA, being duly sworn, deposes and says that the deponent is the Claimant in the within action; that deponent has read the foregoing notice of claim and knows the contents thereof; that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters deponent believes them to be true.

Danielle Rausa

Sworn to before me this

16th day of September, 2010.

Notary Public

Steven C. Judge
Notary Public State of New York
Tompkins County
Lic. #02JU6162317
Comm. Exp. 03/12/20__

**JUDITH A La MANNA**
ATTORNEY ARBITRATOR MEDIATOR
224 HARRISON STREET (#306)
SYRACUSE, NY 13202

PHONE: (315) 451-5552 x. 17
FAX: 315.461-1243
lamanna@rivette.us

**SENT VIA FAX ONLY**

**DATE:** June 28, 2010

**# OF PAGES:** **3 including cover**

Laura Harshbarger, Esq.
Bond, Schoeneck & King
One Lincoln Center
Syracuse, NY 13202
(315) 218-8314 //
FAX (315) 218-8100

Dennis G. O'Hara, Esq.
O'Hara, O'Connell & Ciotoli
7207 East Genesee Street
Fayetteville, NY 13066
(315) 451-3810 //
FAX (315) 451-5585

RE: Charges preferred under §3020-a of the Education Law of New York, North Syracuse CSD against Danielle Rausa File # 13,333

Attached please find a copy of the original Agreement executed by you earlier today on behalf of each of your clients, in full settlement of this matter. Thank you for your efforts and cooperation and reaching this result.

In light of your settlement, I have cancelled the arrangements made with the stenographic service and have cancelled the hearing days previously set. I will notify the New York State Education Department that the matter has settled. Within a few days, I will calculate the time chargeable to the parties and the SED and advise.

You are to be commended on settling this matter on behalf of your clients. I thank you for your civility in working through this process. It was a pleasure working with you.

Judith
JAL:w

# Settlement Agreement

In Full settlement of the pending 3020-a matter of the North Syracuse School District against Danielle Rausa (file # 13,333), the undersigned agree to the following:

- Ms Rausa admits to the conduct as contained in Charge TWO, and denies all remaining charges
- The amount of the suspension shall be reduced from 30 days to five days and the money to be refunded to Ms Rausa shall be issued within 30 days of the date of the settlement agreement.
- Ms Rausa will have 10 days from the date of this Settlement Agreement to issue a concise response to the memos in her file related to the charges ~~in this matter~~, with the understanding that
  - a. she had the right to reply to each at the time they were issued and did not do so, and
  - b. this new ability to respond to these memos is allowed only in settlement of this matter and does not alter the normal practices of the parties or establish any precedent on that practice.
- No General Release is required by the School District.
- ~~This Agreement does not contain any provision for the~~ payment of attorneys fees related to this matter, nor should it be construed to do so.
- ~~Nothing contained in this Agreement is a right of Ms Rausa~~ to negate

To the extent the memos in Ms Rausa's file do not address the unadmitted charges, she will have the opportunity to address same in the same time frame (within 10 days of this Agreement) to issue a concise reply to same.

This Agreement is not a waiver of either party's right to commence an action for any relief not specifically addressed herein.

Except as expressly admitted herein, neither party makes an admission with respect to the charges in this matter.

This Settlement Agreement shall be attached to the Charges and remain a part of Ms Rausa's file along with all response memos provided for herein, at the direction of the Hearing Officer.

Dennis G. O'Hara

Laura Harshbarger

Judith A LaManna, Hearing Officer

Dated: June 28, 2010

# B

# CNYLEADS Report Cover Page

Agency Name
**Onondaga County Sheriff's Office**

Incident Complaint Number
**09-214737**

Related DR Number
-

Incident Type
SXOF

Deputy Name
**Christopher Dell**

| Select Page(s) to use & go to page | Select Page(s) |
|---|---|
| ☒ INCIDENT PAGE | |
| ☒ INVOLVED PERSONS 3-5 | ☒ |
| ☐ INVOLVED PERSONS 6-8 | ☐ |
| ☐ VEHICLE PAGE | ☐ |
| ☐ PROPERTY PAGE | ☐ |
| ☐ MISSING PERSON PAGE | ☐ |
| ☒ OFFENSE PAGE | ☒ |
| ☒ NARRATIVE PAGE 1 | ☒ |
| ☐ NARRATIVE PAGE 2 | ☐ |
| ☐ NARRATIVE PAGE 3 | ☐ |
| ☐ NARRATIVE PAGE 4 | ☐ |

# CNYLEADS Incident Report

Form 3.6 (Rev. 2/07)

| Agency Name | ORI | Location Code | Beat | 1. DR Number |
|---|---|---|---|---|
| Onondaga County Sheriff's Office | NY0330000 | 3464 | 4511 | 09-214737 |

**Incident**

| 2. Incd. Address Num | Prefix | Street Name | Street Type | Suffix | Bldg | APT# | 3. City | 4. State | 5. Zip |
|---|---|---|---|---|---|---|---|---|---|
| 300 | | Bernard | ST | | | | Syracuse | NY | 13211 |

| 6. IncidentType | 7. Premise Name | 8. Alarm # | 9. Occurred Date/ Time | 10. To Date/ Time |
|---|---|---|---|---|
| SXOF | Roxboro Road Middle School | | 03/01/2009 08:00 | 03/27/2009 12:00 |

| 11. Disp. Address Num | Prefix | Street Name | Street Type | Suffix | Bldg | APT# | 12. City | 13. Dispatched Date / Time |
|---|---|---|---|---|---|---|---|---|
| 300 | | Bernard | ST | | | | Syracuse | 03/30/2009 08:30 |

| INCIDENT CODE | A | B | C | D | E | F | G | H | I | J | K | L | M |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 77 | 77 | 77 | 08 | 77 | 77 | 77 | 0 | 77 | 77 | 77 | 77 | 77 |

**Involved Person 1**

| 1. Person Type | 2. Victim Type | 3. Notified of Victim Rights | 4. Last | First | MI | Suffix | 5. Business Name |
|---|---|---|---|---|---|---|---|
| VI | Individual | Y | [redacted] | [redacted] | | | |

| 6. Alias/Nickname/Maiden Name | 7. Race | 8. Ethnicity | 9. Sex | 10. DOB | 11. Age | 12. Hgt | 13. Wgt | 14. Hair | 15. Eye |
|---|---|---|---|---|---|---|---|---|---|
| | W | N | F | [redacted] | 12 | ' " | | | |

| 16. Address:Num | Prefix | Street Name | Street Type | Suffix | Bldg. | APT# | 17. City | 18. State |
|---|---|---|---|---|---|---|---|---|
| [redacted] | | [redacted] | [redacted] | | | | [redacted] | NY |

| 19. Zip | 20. Resident Status | 21. Home Phone | 22. Cell Phone | 23. Soc. Sec. # | 24. Scars / Marks / Tattoos |
|---|---|---|---|---|---|
| [redacted] | Resident | [redacted] | ( ) - | - - | |

| 25. Describe: | 26. Skin | 27. Eyewear | 28. Employer / School |
|---|---|---|---|
| | | | Roxboro Rd Middle School |

| 29. Work Phone | 30. Occupation | 31. Address Num | Prefix | Street Name | Street Type | Suffix |
|---|---|---|---|---|---|---|
| (315) 218-3000 | Student | 300 | | Bernard | ST | |

| Bldg. | Suite# | 32. City | 33. State | 34. Zip | 35. Apparent Condition | 36. Handicapped | 37. Nature of Ill / Inj | 38. Med. Treatment |
|---|---|---|---|---|---|---|---|---|
| | | Syracuse | NY | 13211 | Not Injured | | | |

39. Subject description, actions, etc

Victim of sexual abuse/forcible touching

**Involved Person 2**

| 1. Person Type | 2. Victim Type | 3. Notified of Victim Rights | 4. Last | First | MI | Suffix | 5. Business Name |
|---|---|---|---|---|---|---|---|
| PG | | | [redacted] | [redacted] | [redacted] | | |

| 6. Alias/Nickname/Maiden Name | 7. Race | 8. Ethnicity | 9. Sex | 10. DOB | 11. Age | 12. Height | 13. Weight | 14. Hair | 15. Eye |
|---|---|---|---|---|---|---|---|---|---|
| | W | N | F | / / | | ' " | | | |

| 16. Address:Num | Prefix | Street Name | Street Type | Suffix | Bldg. | APT# | 17. City | 18. State |
|---|---|---|---|---|---|---|---|---|
| [redacted] | | [redacted] | [redacted] | | | | [redacted] | NY |

| 19. Zip | 20. Resident Status | 21. Home Phone | 22. Cell Phone | 23. Soc. Sec. # | 24. Scars / Marks / Tattoos |
|---|---|---|---|---|---|
| [redacted] | Resident | [redacted] | [redacted] | - - | |

| 25. Describe: | 26. Skin | 27. Eyewear | 28. Employer / School |
|---|---|---|---|
| | | | |

| 29. Work Phone | 30. Occupation | 31. Address Num | Prefix | Street Name | Street Type | Suffix |
|---|---|---|---|---|---|---|
| ( ) - | | | | | | |

| Bldg. | Suite# | 32. City | 33. State | 34. Zip | 35. Apparent Condition | 36. Handicapped | 37. Nature of Ill / Inj | 38. Med Treatment |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

39. Subject description, actions, etc

Mother of above victim

**Prop 1**

| 1. Owner | 2. Status | 3. Desc. Code | 4. Quantity | 5. Measure | 6. Item |
|---|---|---|---|---|---|
| | | | | | |

| 7. Make | 8. Drug Type | 9. Model | 10. Serial Number | 11. Gun Type | 12. Gun Caliber | 13. Value |
|---|---|---|---|---|---|---|
| | | | | | | $ |

**Vehicle 1**

| 1. Code | 2. Plate # | 3. State | 4. Expiration | 5. Reg. Type | 6. Imp. Plate | 7. VIN/HULL # | 8. # Occ. |
|---|---|---|---|---|---|---|---|
| | | | / / | | | | |

| 9. Year | 10. Make | 11. Model | 12. Style | 13. Color | 14. Vehicle Value | 15. Damage Est. | 16. Weapon in Veh | 17. NCIC Ck |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

18. Vehicle Description / Damage

| 19. Towed | 20. Owner Notif | 21. Hold | 22. Reason | 23. To/By Tow Company | 24. Truck # / Tow Operator |
|---|---|---|---|---|---|
| | | | | | |

| Red Tag | Difficult Tow | Winch Used | Dolly Used | Flat Bed | Veh. Inventory | Keys In Veh | Ignition Dmg | Spare Tire | Battery | Radio |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

**Sign Off**

| 1. REPORT STATUS: | 2. CLOSED BY: | 3. CLEARED AGES | 4. NYSPIN MSG: | 5. MSG # | 6. DATE | 7. TIME | Records Use Only |
|---|---|---|---|---|---|---|---|
| Open | | | | | / / | : | |

8. NOTIFIED/ TURNED OVER TO: Abused Person Unit — 9. PERSON NOTIFIED: Lt. C. Costanzo — 10. NOTIFIED DATE TIME: 03/30/2009 10:00 — 11. COPY TO: Crim Invest

*False Statements made herein are punishable as a Class A Misdemeanor pursuant to 210.45 NYSPL*
AFFIRMED UNDER PENALTY OF PERJURY

Administrative Use Only

| 12. PRINT NAME | 13. ID# | 14. SIGNATURE | 15. SUPERVISOR NAME (PRINT) | 16. ID# | 17. APPROVED BY SIGNATURE |
|---|---|---|---|---|---|
| Christopher Dell | [redacted] | Electronically Signed | Sgt JA Stephens | [redacted] | Approved Electronically |

Page 2 of 5

# CNYLEADS Involved Persons Supplement

DR # 09-214737

## Involved Person

| Field | Value |
|---|---|
| 1. Person Type | SU |
| 2. Victim Type | |
| 3. Notified of Victim Rights | |
| 4. Last | [redacted] |
| First | [redacted] |
| MI | [redacted] |
| Suffix | |
| 5. Business Name | |
| 6. Alias/Nickname/Maiden Name | |
| 7. Race | W |
| 8. Ethnicity | N |
| 9. Sex | M |
| 10. DOB | [redacted] |
| 11. Age | 14 |
| 12. Hgt | ' " |
| 13. Wgt | |
| 14. Hair | |
| 15. Eye | |
| 16. Address Num | [redacted] |
| Prefix | |
| Street Name | [redacted] |
| Street Type | [redacted] |
| Suffix | |
| Bldg. | |
| APT# | |
| 17. City | [redacted] |
| 18. State | NY |
| 19. Zip | [redacted] |
| 20. Resident Status | Resident |
| 21. Home Phone | [redacted] |
| 22. Cell Phone | [redacted] |
| 23. Soc. Sec. # | - - |
| 24. Scars/Marks/Tattoos | |
| 25. Describe | |
| 26. Skin | |
| 27. Eyewear | |
| 28. Employer/School | Roxboro Rd Middle School |
| 29. Work Phone | (315) 218-3000 |
| 30. Occupation | Student |
| 31. Address Num | 300 |
| Prefix | |
| Street Name | Bernard |
| Street Type | ST |
| Suffix | |
| Bldg. | |
| Suite# | |
| 32. City | Syracuse |
| 33. State | NY |
| 34. Zip | 13211 |
| 35. Apparent Condition | Normal |
| 36. Handicapped | |
| 37. Nature of Ill/Inj | |
| 38. Med Treatment | |
| 39. Subject description, actions, etc | Inappropriately touched female students |

3

## Involved Person

| Field | Value |
|---|---|
| 1. Person Type | PG |
| 2. Victim Type | |
| 3. Notified of Victim Rights | |
| 4. Last | [redacted] |
| First | [redacted] |
| MI | [redacted] |
| Suffix | |
| 5. Business Name | |
| 6. Alias/Nickname/Maiden Name | |
| 7. Race | W |
| 8. Ethnicity | N |
| 9. Sex | F |
| 10. DOB | / / |
| 11. Age | |
| 12. Hgt | ' " |
| 13. Wgt | |
| 14. Hair | |
| 15. Eye | |
| 16. Address Num | [redacted] |
| Prefix | |
| Street Name | [redacted] |
| Street Type | [redacted] |
| Suffix | |
| Bldg. | |
| APT# | |
| 17. City | [redacted] |
| 18. State | NY |
| 19. Zip | [redacted] |
| 20. Resident Status | Resident |
| 21. Home Phone | [redacted] |
| 22. Cell Phone | [redacted] |
| 23. Soc. Sec. # | - - |
| 24. Scars/Marks/Tattoos | |
| 25. Describe | |
| 26. Skin | |
| 27. Eyewear | |
| 28. Employer/School | |
| 29. Work Phone | ( ) - |
| 30. Occupation | |
| 31. Address Num | |
| Prefix | |
| Street Name | |
| Street Type | |
| Suffix | |
| Bldg. | |
| Suite# | |
| 32. City | |
| 33. State | |
| 34. Zip | |
| 35. Apparent Condition | Normal |
| 36. Handicapped | |
| 37. Nature of Ill/Inj | |
| 38. Med Treatment | |
| 39. Subject description, actions, etc | Mother of suspect |

4

## Involved Person

| Field | Value |
|---|---|
| 1. Person Type | OI |
| 2. Victim Type | |
| 3. Notified of Victim Rights | |
| 4. Last | Wolf |
| First | Steven |
| MI | |
| Suffix | |
| 5. Business Name | |
| 6. Alias/Nickname/Maiden Name | |
| 7. Race | W |
| 8. Ethnicity | N |
| 9. Sex | M |
| 10. DOB | / / |
| 11. Age | |
| 12. Hgt | ' " |
| 13. Wgt | |
| 14. Hair | |
| 15. Eye | |
| 16. Address Num | |
| Prefix | |
| Street Name | |
| Street Type | |
| Suffix | |
| Bldg. | |
| APT# | |
| 17. City | |
| 18. State | |
| 19. Zip | |
| 20. Resident Status | |
| 21. Home Phone | ( ) - |
| 22. Cell Phone | ( ) - |
| 23. Soc. Sec. # | - - |
| 24. Scars/Marks/Tattoos | |
| 25. Describe | |
| 26. Skin | |
| 27. Eyewear | |
| 28. Employer/School | Roxboro Rd Middle School |
| 29. Work Phone | (315) 218-3300 |
| 30. Occupation | Principal |
| 31. Address Num | 300 |
| Prefix | |
| Street Name | Bernard |
| Street Type | ST |
| Suffix | |
| Bldg. | |
| Suite# | |
| 32. City | Syracuse |
| 33. State | NY |
| 34. Zip | 13211 |
| 35. Apparent Condition | Normal |
| 36. Handicapped | |
| 37. Nature of Ill/Inj | |
| 38. Med Treatment | |
| 39. Subject description, actions, etc | Principal of school and person reporting incident |

5

*False Statements made herein are punishable as a Class A Misdemeanor pursuant to 210.45 NYSPL*
AFFIRMED UNDER PENALTY OF PERJURY

PRINT NAME: Christopher Dell
ID# [redacted]
SIGNATURE: Electronically Signed

Administrative Use Only
SUPERVISOR NAME (PRINT): Sgt JA Stephens
ID# [redacted]
APPROVED BY SIGNATURE: Approved Electronically

Page 3 of 5

Form 3.5I (Rev.2/07)

CNYLEADS

**Offense Page**

DR # 09-214737

OFFENSE

| | 1. Law Type | 2. Section | 3. Sub | 4. Class | 5. Cat. | 6. Degree | 7. Attempt | 8. Offense Name | 9. Count |
|---|---|---|---|---|---|---|---|---|---|
| 1 | PL | 13052 | | A | M | | N | Forcible Touching | 01 |
| 2 | PL | 13060 | 02 | A | M | 2 | N | Sexual Abuse in the 2nd Degree | 01 |
| 3 | | | | | | | | | |
| 4 | | | | | | | | | |
| 5 | | | | | | | | | |
| 6 | | | | | | | | | |
| 7 | | | | | | | | | |
| 8 | | | | | | | | | |
| 9 | | | | | | | | | |
| 10 | | | | | | | | | |

*False Statements made herein are punishable as a Class A Misdemeanor pursuant to 210.45 NYSPL*
AFFIRMED UNDER PENALTY OF PERJURY

| PRINT NAME | ID# | SIGNATURE | Administrative Use Only SUPERVISOR NAME (PRINT) | ID# | APPROVED BY SIGNATURE | Page 4 of 5 |
|---|---|---|---|---|---|---|
| Christopher Dell | [redacted] | Electronically Signed | Sgt JA Stephens | [redacted] | Approved Electronically | |

Form 3.5R (Rev.2/07)

**CNYLEADS Narrative Supplement**

| AGENCY | | | | DR # |
|---|---|---|---|---|
| Onondaga County Sheriff's Office | | | | 09-214737 |

| Person Type | Last Name | First | MI | Suffix | Business Name |
|---|---|---|---|---|---|
| VI | [redacted] | [redacted] | | | |

On 03/30/2009 at 0830 hours while working as Unit SR16 at Roxboro Road Middle School, I was callled to the Principal, Steven Wolf"s, office in regard to a Sex Offense investigation.

Upon my arrival I interviewed Steven Wolf who advised me of the following; on 03/27/2009 he was approached by a group of female students including [redacted], who advised him that they had been being physically, Sexually harassed by a male student, [redacted]. Wolf had all of the female students write down on paper their statements as to what happened to them. Due to him being notified so late on Friday afternoon, a day that I was assigned to Gillette Road Middle School, Wolf decided to wait until Monday morning, 03/30/2009 to initiate the police side of the investigation. He did state that alll of the girls involved called home on Friday 03/27/2009 to advise their parents of what had happened.

On 03/30/2009 I read all of the girls statement, including the statement of [redacted], and determined that a notification to OCSO APU was necessary. In the statements the allegations against [redacted] ranged from excessive hugging to grabbing the girl's buttocks with his hands to reaching down inside the girl's shirts and squeezing their breasts over a several week period of time. I contacted Sgt. Stephens (HQ80) to advise him of the call and he responded to the school and also advised me to contact APU.

I contacted APU and spoke to Lt. Costanzo. He had APU Detective K. Tarbell contact me and I briefed her on the incident. Detectives Tarbell, Wafer and Brogan responded to Roxboro Road Middle School and took over the investigation.

No further information at this time.

Request case TOT to APU.

*False Statements made herein are punishable as a Class A Misdemeanor pursuant to 210.45 NYSPL*
AFFIRMED UNDER PENALTY OF PERJURY

| PRINT NAME | ID# | SIGNATURE | Administrative Use Only SUPERVISOR NAME (PRINT) | ID# | APPROVED BY SIGNATURE | Page 5 of 5 |
|---|---|---|---|---|---|---|
| Christopher Dell | [redacted] | Electronically Signed | Sgt JA Stephens | [redacted] | Approved Electronically | |

Form 3.6N (Rev. 2/07)

# CNYLEADS Supplemental Report Cover Page

Agency Name
**Onondaga County Sheriff's Office**

| ORI | Location Code | Incident Complaint Number |
|---|---|---|
| NY0330000 | 3464 | 09-214737 |

| Incident Type | Occurred Date/ Time | | Follow-up Date / Time | |
|---|---|---|---|---|
| SXOF | 03/01/2009 | 00:00 | 05/28/2009 | 06:35 |

| Incident Address: Number | Prefix | Street Name | Street Type | Suffix |
|---|---|---|---|---|
| 300 | | Bernard | ST | |

Related DR Number
-

| Select Page(s) to use & go to page | Select Page(s) |
|---|---|
| [X] NARRATIVE PAGE 1 | [X] |
| [X] NARRATIVE PAGE 2 | [X] |
| [X] NARRATIVE PAGE 3 | [X] |
| [ ] NARRATIVE PAGE 4 | [ ] |
| [ ] NARRATIVE PAGE 5 | [ ] |
| [ ] NARRATIVE PAGE 6 | [ ] |
| [X] INVOLVED PERSONS 1-3 | [X] |
| [X] INVOLVED PERSONS 4-6 | [X] |
| [ ] INVOLVED PERSONS 7-9 | [ ] |
| [ ] INVOLVED PERSONS 10-12 | [ ] |
| [ ] INVOLVED PERSONS 13-15 | [ ] |
| [ ] INVOLVED PERSONS 16-18 | [ ] |
| [ ] VEHICLE PAGE | [ ] |
| [ ] PROPERTY PAGE 1 | [ ] |
| [ ] PROPERTY PAGE 2 | [ ] |
| [X] OFFENSE PAGE | [X] |

| 1. CASE STATUS: | 2. CLOSED BY: | 3. NYSPIN MSG: | 4. MSG # | 5. DATE | TIME |
|---|---|---|---|---|---|
| Closed | Arrest | | | / / | : |

| [ ] NOTIFIED [ ] TURNED OVER TO | 6. CASE RESPONSIBILITY: | 7. PERSON NOTIFIED: | 8. NOTIFIED DATE TIME: |
|---|---|---|---|
| | | | / / : |

*False Statements made herein are punishable as a Class A Misdemeanor pursuant to 210.45 NYSPL* AFFIRMED UNDER PENALTY OF PERJURY

| 9. PRINT NAME | 10. ID# | 11. SIGNATURE | Administrative Use Only 12. SUPERVISOR NAME (PRINT) | 13. ID# | APPROVED DATE | 14. APPROVED BY SIGNATURE | Page 1 of 7 |
|---|---|---|---|---|---|---|---|
| Kristen Tarbell | [redacted] | Electronically Signed | SGT J F SCHMIDT | [redacted] | 06/03/2009 | Approved Electronically | |

Form 3.5NC (Rev.2/07) CNYLEADSIncidentReport 1.1.5

## CNYLEADS Narrative Supplement 1

| Agency Name | | DR # |
|---|---|---|
| Onondaga County Sheriff's Office | | 09-214737 |

| Incident Type | Person Type | Victim Type |
|---|---|---|
| SXOF | VI | Individual |

| Last Name | First | Middle | Suffix | DOB | Business Name |
|---|---|---|---|---|---|
| [redacted] | [redacted] | | | / / | |

This investigation involved a 14 year old boy, [redacted], who inappropriately touched several females at school. The incidents were originally reported to the School Resource Officer of Roxboro Middle School, Deputy Dell, and he contacted the Abused Persons Unit. Sgt. Simone assigned the case to me on 03/30/09. Det. Brogan and Det. Wafer assisted me in this investigation.

On 03/30/09, Sgt. Simone instructed me to respond to Roxboro Middle School. He advised me that there were approximately nine female students who reported being touched by [redacted]. Upon arrival, Det. Wafer, Det. Brogan and I met with Deputy Dell and the school principal, Mr. Steven Wolf. They informed us that on Friday, 03/27/09, six girls came forward and talked about what [redacted] had done. All of the students provided a written statement to the school and contacted their parents. Mr. Wolf provided me with each of the students names, their parents' contact information and their written statements. The following is a list of the students: [redacted], [redacted], [redacted], [redacted], [redacted], [redacted], [redacted] and [redacted]

Det. Wafer conducted the interviews for the following victims: [redacted], [redacted] and [redacted] Det. Brogan conducted the interviews for the following victims: [redacted], [redacted] and [redacted]. She also interviewed the teacher that the victims originally disclosed to, Mr. Anthony Longo. I conducted the interviews for the following victims: [redacted] and [redacted]. I also conducted the interviews for an additional victim that came forward after all of the others, [redacted]

On 03/30/09, I spoke with [redacted] mother, [redacted] She stated that I could speak with her daughter. I interviewed [redacted], and she stated that [redacted] made her hug him, and he slapped her buttocks. she also stated that he did this to her friends. [redacted] stated that what [redacted] did to her made her uncomfortable, but she did not think he should be arrested for it. See attached affidavit of [redacted] under this DR#. I then called her mother again. [redacted] said that if her daughter did not desire prosecution, she did not either.

On 03/30/09, I spoke with [redacted] mother, [redacted]. She stated that I could talk to her daughter. I interviewed [redacted] on 03/31/09. She stated that she was in Drama with [redacted] One day at Drama, [redacted] told her she was "flat chested" and he attempted to touch her breasts. [redacted] slapped [redacted] hand away so he could not touch her. [redacted] stated that she felt that [redacted] should be arrested for what he did to her. See attached affidavit of [redacted] under DR#09-216104. I contacted [redacted] mother again after my interview. After discussing it with her husband, she stated that they did not desire prosecution against [redacted]

Prior to all interviews being completed, [redacted] mother, [redacted], called the school. She was aware that something had happened because the school had suspended [redacted] I spoke with her and asked if she could respond to the school with [redacted], and she did.

On 03/30/09, I spoke with [redacted] in the conference room at Roxboro Middle School. I advised her of the allegations and asked if Det. Wafer and I could speak to her son. She stated we could. Det. Wafer and [redacted] joined us in the conference room, and I read [redacted] and [redacted] their Miranda Rights from a Constitutional Rights Waiver form. They stated that they understood their rights, and agreed to speak with me. [redacted] and [redacted] both signed the form. [redacted] then left the room and allowed Det. Wafer and I to talk to [redacted] alone.

*False Statements made herein are punishable as a Class A Misdemeanor pursuant to 210.45 NYSPL* AFFIRMED UNDER PENALTY OF PERJURY

Administrative Use Only

| 12. PRINT NAME | 13. ID# | 14. SIGNATURE | 15. SUPERVISOR NAME (PRINT) | 16. ID# | APPROVED DATE | 17. APPROVED BY SIGNATURE | Page 2 of 7 |
|---|---|---|---|---|---|---|---|
| Kristen Tarbell | [redacted] | Electronically Signed | SGT J F SCHMIDT | [redacted] | 06/03/2009 | Approved Electronically | |

**CNYLEADS Narrative Supplement 2**

| Agency Name | | | DR # |
|---|---|---|---|
| Onondaga County Sheriff's Office | | | 09-214737 |

| Incident Type | Person Type | Victim Type |
|---|---|---|
| SXOF | VI | Individual |

| Last Name | First | Middle | Suffix | DOB | Business Name |
|---|---|---|---|---|---|
| [redacted] | [redacted] | | | / / | |

[redacted] admitted to touching some of the girls, but not all of them. He stated that he was involved in the Drama Club. Regarding [redacted], [redacted] stated that he "slapped her butt" one time when they got off the bus.

Regarding [redacted] [redacted] stated that he "slapped her butt" at Drama. He did this because she said that she liked him.

Regarding [redacted], [redacted] stated that he "slapped her butt a lot". He did this at his house and at Drama. [redacted] also stated that he put his hand in [redacted] shirt and touched her breast at Drama. [redacted] added that he later apologized to [redacted]. He has also asked her to have sex with him.

Regarding [redacted], [redacted] stated that he "grabbed her butt 2-3 times". Two of the times were earlier in the year, and one time was at Drama.

Regarding [redacted], [redacted] stated that he "grabbed her butt" the previous year, and he may have grabbed her earlier this year. [redacted] also said that approximately 4-5 times this school year, he took something of hers and told her she had to hug him to get it back.

[redacted] stated that he never touched or did anything to [redacted], [redacted] or [redacted]. I completed a written statement with [redacted] and then had [redacted] join us to review it. [redacted] stated that the information in the statement was accurate and true. [redacted] signed the statement, and this was witnessed by myself and [redacted]. See attached affidavit of [redacted]

On 04/07/09, I learned from Deputy Dell that another victim, [redacted] had come forward. I spoke with her mother, [redacted] Mrs. [redacted] stated that [redacted] endured 6 months of [redacted] harassing her the previous school year. This was brought to the attention of the Assistant Principal Mrs Hardy. Mrs Hardy refused to move [redacted] from [redacted] classes, so [redacted] eventually got moved to another class. Mrs. [redacted] explained to me that her daughter came home from school very upset and would cry at night because of what [redacted] did to her. She stated that her daughter was an honor student who loved going to school, and [redacted] made her not want to go. Mrs. [redacted] told me I could speak with her daughter. She also stated that she desired prosecution against [redacted].

On 04/09/09, I interviewed [redacted] at Roxboro Middle School. She stated that [redacted] was in her class in 6th grade. She was currently in 7th grade. [redacted] was a new student at the school. As soon as he began attending Roxboro, he began "bothering" [redacted]. He asked her out all the time, and he passed her notes in class. The notes said things such as, "You're hot" and "You're sexy". One day in art class, [redacted] was wearing a skirt, and [redacted] told her to bend over. [redacted] eventually got her class changed so she did not have to be in class with [redacted]

This year, in 7th grade, [redacted] was in Drama Club with [redacted]. She stated that about four different times, [redacted] grabbed her butt in Drama, and this always happened back stage. [redacted] stated that she and the other girls were scared to walk down the hall alone because they never knew where [redacted] was. They did not want him to bother them or touch them. [redacted] stated that she thought [redacted] should be arrested for what he did to her because he needs counseling. See attached affidavit of [redacted]

**CNYLEADS Narrative Supplement 3**

| Agency Name | OR # |
|---|---|
| Onondaga County Sheriff's Office | 09-214737 |

| Incident Type | Person Type | Victim Type |
|---|---|---|
| SXOF | VI | Individual |

| Last Name | First | Middle | Suffix | DOB | Business Name |
|---|---|---|---|---|---|
| [redacted] | [redacted] | | | / / | |

I completed a written affidavit for [redacted] and Det. Brogan met with her on 04/20/09. [redacted] signed an affidavit stating she desired prosecution against [redacted] for what he did to her daughter. See attached affidavit of [redacted]

I contacted [redacted] and advised her that two of the parents desired prosecution against [redacted] brought [redacted] to OCSO HQ on 04/22/09, and I spoke with them in interview room #4 of the Abused Persons Unit. I issued them two appearance tickets for victims [redacted] and [redacted] Each ticket was for one count of Endangering the welfare of a child and Forcible touching. I advised [redacted] not to have any contact with any of the victims. [redacted] was very cooperative throughout this investigation, and she was anxious to get her son into counseling. I provided her with information regarding Family Transitions.

While [redacted] was in APU, I spoke with him alone in interview room #3. I asked [redacted] if anyone had ever done anything to him, or touched him inappropriately. He stated that nothing had ever happened to him. [redacted] told me that he had people in his family he could talk to if something happened to him.

For further information, see reports under the following DR#'s:
[redacted] #09-227-987
[redacted] #09-216107
[redacted] #09-216104
[redacted] #09-216106
[redacted] #09-216109
[redacted] #09-216111
[redacted] #09-216114
[redacted] #09-216115
[redacted] #09-216116

All paperwork was forwarded to Sgt. Stephens for Family Court. Case closed.

*False Statements made herein are punishable as a Class A Misdemeanor pursuant to 210.45 NYSPL* AFFIRMED UNDER PENALTY OF PERJURY

| 12. PRINT NAME | 13. ID# | 14. SIGNATURE | Administrative Use Only 15. SUPERVISOR NAME (PRINT) | 16. ID# | APPROVED DATE | 17. APPROVED BY SIGNATURE | Page |
|---|---|---|---|---|---|---|---|
| Kristen Tarbell | [redacted] | Electronically Signed | SGT J F SCHMIDT | [redacted] | 06/03/2009 | Approved Electronically | 4 of 7 |

Form 3.5NC (Rev.2/07)

# CNYLEADS Involved Persons 1-3 Supplement

DR # 09-214737

## Involved Person 1

| Field | Value |
|---|---|
| 1. Person Type | VI |
| 2. Victim Type | Individual |
| 3. Notified of Rights | Y |
| 4. Last | [redacted] |
| First | [redacted] |
| Middle | |
| Suffix | |
| 5. Business Name | |
| 6. Alias/Nickname/Maiden Name | |
| 7. Race | W |
| 8. Ethnicity | N |
| 9. Sex | F |
| 10. DOB | [redacted] |
| 11. Age | 13 |
| 12. Hgt | ' " |
| 13. Wgt | |
| 14. Hair | |
| 15. Eye | |
| 16. Address Num | [redacted] |
| Prefix | |
| Street Name | [redacted] |
| Street Type | [redacted] |
| Suffix | |
| Bldg. | |
| APT# | |
| 17. City | [redacted] |
| 18. State | NY |
| 19. Zip | [redacted] |
| 20. Resident Status | |
| 21. Home Phone | [redacted] |
| 22. Cell Phone | ( ) - |
| 23. Soc. Sec. # | - - |
| 24. Scars / Marks / Tattoos | |
| 25. Describe | |
| 26. Skin | |
| 27. Eyewear | |
| 28. Employer / School | |
| 29. Work Phone | ( ) - |
| 30. Occupation | |
| 31. Address Num / Prefix / Street Name / Street Type / Suffix | |
| Bldg. / Suite# | |
| 32. City | |
| 33. State | |
| 34. Zip | |
| 35. Apparent Condition | |
| 36. Handicapped | |
| 37. Nature of Ill / Inj | |
| 38. Med. Treatment | |
| 39. Subject description, actions, etc | |

## Involved Person 2

| Field | Value |
|---|---|
| 1. Person Type | AR |
| 2. Victim Type | |
| 3. Notified of | |
| 4. Last | [redacted] |
| First | [redacted] |
| Middle | [redacted] |
| Suffix | |
| 5. Business Name | |
| 6. Alias/Nickname/Maiden Name | |
| 7. Race | W |
| 8. Ethnicity | N |
| 9. Sex | M |
| 10. DOB | [redacted] |
| 11. Age | 14 |
| 12. Height | 5' 08" |
| 13. Weight | 140 |
| 14. Hair | BLN |
| 15. Eye | BLU |
| 16. Address Num | [redacted] |
| Prefix | |
| Street Name | [redacted] |
| Street Type | [redacted] |
| Suffix | |
| Bldg. | |
| APT# | |
| 17. City | [redacted] |
| 18. State | NY |
| 19. Zip | [redacted] |
| 20. Resident Status | |
| 21. Home Phone | [redacted] |
| 22. Cell Phone | ( ) - |
| 23. Soc. Sec. # | [redacted] |
| 24. Scars / Marks / Tattoos | |
| 25. Describe | |
| 26. Skin | |
| 27. Eyewear | |
| 28. Employer / School | |
| 29. Work Phone | ( ) - |
| 30. Occupation | |
| 31. Address Num / Prefix / Street Name / Street Type / Suffix | |
| Bldg / Suite# | |
| 32. City | |
| 33. State | |
| 34. Zip | |
| 35. Apparent Condition | |
| 36. Handicapped | |
| 37. Nature of Ill / Inj | |
| 38. Med Treatment | |
| 39. Subject description, actions, etc | |

## Involved Person 3

| Field | Value |
|---|---|
| 1. Person Type | PG |
| 2. Victim Type | |
| 3. Notified of | |
| 4. Last | [redacted] |
| First | [redacted] |
| Middle | |
| Suffix | |
| 5. Business Name | |
| 6. Alias/Nickname/Maiden Name | |
| 7. Race | W |
| 8. Ethnicity | N |
| 9. Sex | F |
| 10. DOB | [redacted] |
| 11. Age | 31 |
| 12. Hgt | ' " |
| 13. Wgt | |
| 14. Hair | |
| 15. Eye | |
| 16. Address Num | [redacted] |
| Prefix | |
| Street Name | [redacted] |
| Street Type | [redacted] |
| Suffix | |
| Bldg. | |
| APT# | |
| 17. City | [redacted] |
| 18. State | NY |
| 19. Zip | [redacted] |
| 20. Resident Status | |
| 21. Home Phone | [redacted] |
| 22. Cell Phone | [redacted] |
| 23. Soc. Sec. # | - - |
| 24. Scars/Marks/Tattoos | |
| 25. Describe | |
| 26. Skin | |
| 27. Eyewear | |
| 28. Employer/School | |
| 29. Work Phone | ( ) - |
| 30. Occupation | |
| 31. Address Num / Prefix / Street Name / Street Type / Suffix | |
| Bldg. / Suite# | |
| 32. City | |
| 33. State | |
| 34. Zip | |
| 35. Apparent Condition | |
| 36. Handicapped | |
| 37. Nature of Ill/Inj | |
| 38. Med Treatment | |
| 39. Subject description, actions, etc | |

*False Statements made herein are punishable as a Class A Misdemeanor pursuant to 210.45 NYSPL* AFFIRMED UNDER PENALTY OF PERJURY

12. PRINT NAME: Kristen Tarbell
13. ID#: [redacted]
14. SIGNATURE: Electronically Signed

Administrative Use Only

15. SUPERVISOR NAME (PRINT): SGT J F SCHMIDT
16. ID#: [redacted]
APPROVED DATE: 06/03/2009
17. APPROVED BY SIGNATURE: Approved Electronically



Form 3.5NC (Rev.2/07)

# CNYLEADS Involved Persons 4-6 Supplement

DR # 09-214737

## Involved Person 4

1. Person Type: PG
2. Victim Type:
3. Notified of Rights:
4. Last: [redacted]
First: [redacted]
Middle:
Suffix:
5. Business Name:
6. Alias/Nickname/Maiden Name:
7. Race: U
8. Ethnicity: U
9. Sex: F
10. DOB: / /
11. Age:
12. Hgt: ' "
13. Wgt:
14. Hair:
15. Eye:
16. Address Num: [redacted] Prefix: Street Name: [redacted] Street Type: [redacted] Suffix: Bldg.: APT#:
17. City: [redacted]
18. State: NY
19. Zip: [redacted]
20. Resident Status:
21. Home Phone: [redacted]
22. Cell Phone: ( ) -
23. Soc. Sec. #: - -
24. Scars/Marks/Tattoos:
25. Describe:
26. Skin:
27. Eyewear:
28. Employer/School:
29. Work Phone: ( ) -
30. Occupation:
31. Address Num: Prefix: Street Name: Street Type: Suffix: Bldg.: Suite#:
32. City:
33. State:
34. Zip:
35. Apparent Condition:
36. Handicapped:
37. Nature of Ill/Inj:
38. Med Treatment:
39. Subject description, actions, etc:

## Involved Person 5

1. Person Type:
2. Victim Type:
3. Notified of Rights:
4. Last:
First:
Middle:
Suffix:
5. Business Name:
6. Alias/Nickname/Maiden Name:
7. Race:
8. Ethnicity:
9. Sex:
10. DOB: / /
11. Age:
12. Hgt: ' "
13. Wgt:
14. Hair:
15. Eye:
16. Address Num: Prefix: Street Name: Street Type: Suffix: Bldg.: APT#:
17. City:
18. State:
19. Zip:
20. Resident Status:
21. Home Phone: ( ) -
22. Cell Phone: ( ) -
23. Soc. Sec. #: - -
24. Scars/Marks/Tattoos:
25. Describe:
26. Skin:
27. Eyewear:
28. Employer/School:
29. Work Phone: ( ) -
30. Occupation:
31. Address Num: Prefix: Street Name: Street Type: Suffix: Bldg.: Suite#:
32. City:
33. State:
34. Zip:
35. Apparent Condition:
36. Handicapped:
37. Nature of Ill/Inj:
38. Med Treatment:
39. Subject description, actions, etc:

## Involved Person 6

1. Person Type:
2. Victim Type:
3. Notified of Rights:
4. Last:
First:
Middle:
Suffix:
5. Business Name:
6. Alias/Nickname/Maiden Name:
7. Race:
8. Ethnicity:
9. Sex:
10. DOB: / /
11. Age:
12. Hgt: ' "
13. Wgt:
14. Hair:
15. Eye:
16. Address Num: Prefix: Street Name: Street Type: Suffix: Bldg.: APT#:
17. City:
18. State:
19. Zip:
20. Resident Status:
21. Home Phone: ( ) -
22. Cell Phone: ( ) -
23. Soc. Sec. #: - -
24. Scars/Marks/Tattoos:
25. Describe:
26. Skin:
27. Eyewear:
28. Employer/School:
29. Work Phone: ( ) -
30. Occupation:
31. Address Num: Prefix: Street Name: Street Type: Suffix: Bldg.: Suite#:
32. City:
33. State:
34. Zip:
35. Apparent Condition:
36. Handicapped:
37. Nature of Ill/Inj:
38. Med Treatment:
39. Subject description, actions, etc:

---

*False Statements made herein are punishable as a Class A Misdemeanor pursuant to 210.45 NYSPL* AFFIRMED UNDER PENALTY OF PERJURY

12. PRINT NAME: Kristen Tarbell
13. ID#: [redacted]
14. SIGNATURE: Electronically Signed

Administrative Use Only

15. SUPERVISOR NAME (PRINT): SGT J F SCHMIDT
16. ID#: [redacted]
APPROVED DATE: 06/03/2009
17. APPROVED BY SIGNATURE: Approved Electronically

Page 6 of 7

Form 3.5NC (Rev.2/07)

DR # 09-214737

## CNYLEADS

### Offense Page

OFFENSE

| | 1. Law Type | 2. Section | 3. Sub | 4. Class | 5. Cat. | 6. Degree | 7. Attempt | 8. Offense Name | 9. Count |
|---|---|---|---|---|---|---|---|---|---|
| 1 | PL | 13052 | | A | M | | N | Forcible touching | 02 |
| 2 | PL | 26010 | 01 | A | M | | N | EWOC | 02 |
| 3 | | | | | | | | | |
| 4 | | | | | | | | | |
| 5 | | | | | | | | | |
| 6 | | | | | | | | | |
| 7 | | | | | | | | | |
| 8 | | | | | | | | | |
| 9 | | | | | | | | | |
| 10 | | | | | | | | | |

*False Statements made herein are punishable as a Class A Misdemeanor pursuant to 210.45 NYSPL* AFFIRMED UNDER PENALTY OF PERJURY

PRINT NAME: Kristen Tarbell
ID#: [redacted]
SIGNATURE: Electronically Signed

Administrative Use Only

SUPERVISOR NAME (PRINT): SGT J F SCHMIDT
ID#: [redacted]
APPROVED DATE: 06/03/2009
APPROVED BY SIGNATURE: Approved Electronically



Form 3.5R (Rev.2/07)

# VOLUNTARY AFFIDAVIT

STATE OF NEW YORK
COUNTY OF ONONDAGA

DR# 09-21 1737

T|SALINA

I, ANTHONY M. LONGO being duly sworn, state that I am 41 years of age with a date of birth of [redacted]. I reside at BERNARD ST, MATTYDALE NY 13211 / ROXBORO MIDDLE SCHOOL (W) 218-3300.

I am voluntarily giving this affidavit to DET. V.A. BROGAN from the Onondaga County Sheriff's Department. I am giving this statement on 3/10/2009 at 12:30pm. I am giving this at ROXBORO M.S.

THIS PAST FRIDAY, I WAS IN MY CLASSROOM EATING MY LUNCH. I AM A 7TH GRADE TEACHER AT ROXBORO MIDDLE SCHOOL, AND TEACH LIFE SCIENCE. IT IS NOT UNUSUAL FOR STUDENTS TO COME TO ROOM TO EAT LUNCH. AT AROUND 1:00 PM THE FOLLOWING STUDENTS: [redacted], [redacted] [redacted] [redacted] AND [redacted] CAME IN, AND WERE STANDING AROUND MY DESK. THE GIRLS WERE ALL TALKING AND I WOULD CATCH A WORD HERE AND THERE. I HEARD THEM MENTION MISS MAVICA WHO IS ALSO A LIFE SCIENCE TEACHER BUT WASN'T SURE IF THEY WERE TALKING ABOUT HER OR HER ROOM. AS THE GIRLS CONTINUED TO TALK, I HEARD ONE OF THE GIRLS, WHO I THINK IT WAS [redacted], MENTION SOMETHING ABOUT SOMEONE RUBBING DOWN [redacted] SHIRT. THIS OF COURSE CAUGHT MY ATTENTION, AND ASKED

I have read this 3 page(s) affidavit and swear that it is truth to the best of my knowledge and recollection. I know the meaning of perjury, it is the telling of a lie while under oath and I know that false statements made herein are punishable as a Class A misdemeanor pursuant to Section 210.45 of the Penal Law of the State of New York.

Witness: Det V.G. Brogan Deponent: [signature]

Subscribed and sworn to before me this

____ day of ________ 20___

Commissioner of Deeds
City of Syracuse
Commission expires: / /

# VOLUNTARY AFFIDAVIT DR# 09-214737

HER TO REPEAT WHAT SHE'D SAID. THE NAME [redacted]
WAS SPECIFICALLY MENTIONED SO I ASKED [redacted] WHY?
[redacted] POINTED TO HERSELF. I SAID A BOY PUT
HIS HAND DOWN YOUR SHIRT? [redacted] SAID YES AND
THEN THE OTHER GIRLS SAID HE DOES IT ALL THE TIME.
THEY REFERRED TO THE BOY AS [redacted]. I KNOW
[redacted] IS A STUDENT AT ROXBORO BUT HE DOESN'T
ATTEND MY CLASSES. I WAS TAKEN BACK WITH WHAT
THE GIRLS WERE SAYING, AND SAID WHERE AND WHEN
DID THIS HAPPEN AND WHY DIDN'T YOU TELL ANYONE?
I WAS GETTING THAT IT TOOK PLACE ALL THE [illegible] AT DRAMA, AND
THE GIRLS WERE SAYING IT EVEN HAPPENED LAST YEAR,
AND THAT EVEN THOUGH [redacted] GOT INTO TROUBLE,
HE CONTINUED TO TOUCH THEM.
[redacted] ALSO COMMENTED WHEN [redacted] SAID
[redacted] WENT DOWN HER SHIRT, THAT THAT WASN'T
THE ONLY PLACE HE'D TOUCHED THEM. I BECAME
VERY SERIOUS AND TOLD THE GIRLS I WOULD NEED
TO REPORT WHAT THEY'D TOLD ME, BUT THAT IT
WOULD BE THEM HAVING TO FOLLOW THROUGH. NOT
ONE OF THEM BACKED DOWN FROM WHAT THEY TOLD
ME, OR DID THEY CHANGE THEIR ACCOUNT OF WHAT
TOOK PLACE.

I have read this 3 page(s) affidavit and swear that it is the truth to the best of my knowledge and recollection. I know the meaning of perjury, it is the telling of a lie while under oath and I know that false statements made herein are punishable as a Class A misdemeanor pursuant to Section 210.45 of the Penal Law of the State of New York.

Deponent: ______________

Witness: Det V.G. Bergan

Subscribed and sworn to before me this

_____ day of __________ 19_____

______________________
Commissioner of Deeds
City of Syracuse
Commission Expires ______________

# VOLUNTARY AFFIDAVIT

DR: 09-214737

As I walked down the hall with the girls I decided to tell Joan (Kesselring) who is the Guidance Counselor what was going on. After I briefed Joan she brought the girls and into the office, and they told her what they'd told me. The only thing different, was Joan asked [redacted] if [redacted] touched her breast, and [redacted] told her he had. Joan told the girls this would have to be passed onto Mr. Wolfe who is the principal. At first, I was going to go with the girls, but the bell rang which meant I had students coming to my room. Joan realized this and asked the girls if she could go in my place, and the girls said it would be okay.

I reinforced with the girls over and over that they did the right thing. They for whatever reason, were worried what their parents would think.

I have read this 3 page(s) affidavit and swear that it is the truth to the best of my knowledge and recollection. I know the meaning of perjury, it is the telling of a lie while under oath and I know that false statements made herein are punishable as a Class A misdemeanor pursuant to Section 210.45 of the Penal Law of the State of New York.

Deponent: ______________________

Witness: Det. V.C. Berg ______________________

Subscribed and sworn to before me this

______ day of ______________ 19______

______________________

Commissioner of Deeds
City of Syracuse
Commission Expires ______________

# CNYLEADS Report Cover Page

Agency Name
**Onondaga County Sheriff's Office**

Incident Complaint Number
**09-216104**

Related DR Number
-

Incident Type
**SXOF**

Deputy Name
**Kristen Tarbell**

| Select Page(s) to use & go to page | Select Page(s) |
|---|---|
| ☒ INCIDENT PAGE | |
| ☒ INVOLVED PERSONS 3-5 | ☒ |
| ☐ INVOLVED PERSONS 6-8 | ☐ |
| ☐ INVOLVED PERSONS 9-11 | ☐ |
| ☐ INVOLVED PERSONS 12-14 | ☐ |
| ☐ VEHICLE PAGE | ☐ |
| ☐ PROPERTY PAGE 1 | ☐ |
| ☐ PROPERTY PAGE 2 | ☐ |
| ☐ MISSING PERSON PAGE | ☐ |
| ☐ OFFENSE PAGE | ☐ |
| ☒ NARRATIVE PAGE 1 | ☒ |
| ☐ NARRATIVE PAGE 2 | ☐ |
| ☐ NARRATIVE PAGE 3 | ☐ |
| ☐ NARRATIVE PAGE 4 | ☐ |
| ☐ NARRATIVE PAGE 5 | ☐ |
| ☐ NARRATIVE PAGE 6 | ☐ |

# CNYLEADS Incident Report

Form 3.6 (Rev. 2/07)

| Agency Name | ORI: | Location Code | Beat | 1. DR Number |
|---|---|---|---|---|
| Onondaga County Sheriff's Office | NY0330000 | 3464 | | 09-216104 |

## Incident

| 2. Incd. Address Num | Prefix | Street Name | Street Type | Suffix | Bldg. | APT# | 3. City | 4. State | 5. Zip |
|---|---|---|---|---|---|---|---|---|---|
| 300 | | Bernard | ST | | | | Mattydale | NY | 13211 |

| 6. IncidentType | 7. Premise Name | 8. Alarm # | 9. Occurred Date/ Time | 10. To Date/ Time |
|---|---|---|---|---|
| SXOF | Roxboro Middle School | | 03/01/2009 00:00 | 03/27/2009 12:00 |

| 11. Disp. Address Num | Prefix | Street Name | Street Type | Suffix | Bldg. | APT# | 12. City | 13. Dispatched Date / Time |
|---|---|---|---|---|---|---|---|---|
| 407 | S | State | ST | | | | Syracuse | 03/30/2009 08:30 |

| INCIDENT CODE | A | B | C | D | E | F | G | H | I | J | K | L | M |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 77 | 77 | 77 | 08 | 77 | 77 | 77 | 0 | 77 | 77 | 77 | 77 | 77 |

## Involved Person

| 1. Person Type | 2. Victim Type | 3. Notified of Rights | 4. Last | First | Middle | Suffix | 5. Business Name |
|---|---|---|---|---|---|---|---|
| VI | Individual | Y | [redacted] | [redacted] | [redacted] | | |

| 6. Alias/Nickname/Maiden Name | 7. Race | 8. Ethnicity | 9. Sex | 10. DOB | 11. Age | 12. Hgt | 13. Wgt | 14. Hair | 15. Eye |
|---|---|---|---|---|---|---|---|---|---|
| | W | N | F | [redacted] | 12 | ' " | | | |

| 16. Address Num | Prefix | Street Name | Street Type | Suffix | Bldg. | APT# | 17. City | 18. State |
|---|---|---|---|---|---|---|---|---|
| [redacted] | | [redacted] | [redacted] | | | | [redacted] | NY |

| 19. Zip | 20. Resident Status | 21. Home Phone | 22. Cell Phone | 23. Soc. Sec. # | 24. Scars / Marks / Tattoos |
|---|---|---|---|---|---|
| [redacted] | | [redacted] | ( ) - | - - | |

| 25. Describe: | 26. Skin | 27. Eyewear | 28. Employer / School |
|---|---|---|---|
| | | | |

| 29. Work Phone | 30. Occupation | 31. Address Num | Prefix | Street Name | Street Type | Suffix |
|---|---|---|---|---|---|---|
| ( ) - | | | | | | |

| Bldg. | Suite# | 32. City | 33. State | 34. Zip | 35. Apparent Condition | 36. Handicapped | 37. Nature of Ill / Inj | 38. Med. Treatment |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

39. Subject description, actions, etc

## Involved Person

| 1. Person Type | 2. Victim Type | 3. Notified of Rights | 4. Last | First | Middle | Suffix | 5. Business Name |
|---|---|---|---|---|---|---|---|
| SU | | | [redacted] | [redacted] | [redacted] | | |

| 6. Alias/Nickname/Maiden Name | 7. Race | 8. Ethnicity | 9. Sex | 10. DOB | 11. Age | 12. Height | 13. Weight | 14. Hair | 15. Eye |
|---|---|---|---|---|---|---|---|---|---|
| | W | N | M | [redacted] | 14 | 5' 08" | 140 | BLN | BLU |

| 16. Address Num | Prefix | Street Name | Street Type | Suffix | Bldg. | APT# | 17. City | 18. State |
|---|---|---|---|---|---|---|---|---|
| [redacted] | | [redacted] | [redacted] | | | | [redacted] | NY |

| 19. Zip | 20. Resident Status | 21. Home Phone | 22. Cell Phone | 23. Soc. Sec. # | 24. Scars / Marks / Tattoos |
|---|---|---|---|---|---|
| [redacted] | | [redacted] | ( ) - | - - | |

| 25. Describe: | 26. Skin | 27. Eyewear | 28. Employer / School |
|---|---|---|---|
| | | | |

| 29. Work Phone | 30. Occupation | 31. Address Num | Prefix | Street Name | Street Type | Suffix |
|---|---|---|---|---|---|---|
| ( ) - | | | | | | |

| Bldg. | Suite# | 32. City | 33. State | 34. Zip | 35. Apparent Condition | 36. Handicapped | 37. Nature of Ill / Inj | 38. Med Treatment |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

39. Subject description, actions, etc

## Property

| 1. Owner | 2. Status | 3. Desc. Code | 4. Quantity | 5. Measure | 6. Item |
|---|---|---|---|---|---|
| | | | | | |

| 7. Make | 8. Drug Type | 9. Model | 10. Serial Number | 11. Gun Type | 12. Gun Caliber | 13. Value |
|---|---|---|---|---|---|---|
| | | | | | | $ |

## Vehicle

| 1. Code | 2. Plate # | 3. State | 4. Expiration | 5. Reg. Type | 6. Imp. Plate | 7. VIN/HULL # | 8. # Occ. |
|---|---|---|---|---|---|---|---|
| | | | / / | | | | |

| 9. Year | 10. Make | 11. Model | 12. Style | 13. Color | 14. Vehicle Value | 15. Damage Est. | 16. Weapon in Veh | 17. NCIC Ck |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

18. Vehicle Description / Damage

| 19. Towed | 20. Owner Notif | 21. Hold | 22. Reason | 23. To/By Tow Company | 24. Truck # / Tow Operator |
|---|---|---|---|---|---|
| | | | | | |

| Red Tag | Difficult Tow | Winch Used | Dolly Used | Flat Bed | Veh. Inventory | Keys in Veh | Ignition Dmg | Spare Tire | Battery | Radio |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

## Sign Off

| 1. CASE STATUS: | 2. CLOSED BY: | 3. NYSPIN MSG: | 4. MSG # | 5. DATE | TIME |
|---|---|---|---|---|---|
| Closed | No Prosecution | | | / / | : |

| | 6. CASE RESPONSIBILITY: | 7. PERSON NOTIFIED: | 8. NOTIFIED DATE TIME: |
|---|---|---|---|
| __ NOTIFIED<br>__ TURNED OVER TO | | | / / : |

*False Statements made herein are punishable as a Class A Misdemeanor pursuant to 210.45 NYSPL AFFIRMED UNDER PENALTY OF PERJURY*

| 9. PRINT NAME | 10. ID# | 11. SIGNATURE | 12. SUPERVISOR NAME (PRINT) | 13. ID# | APPROVED DATE | 14. APPROVED BY SIGNATURE |
|---|---|---|---|---|---|---|
| Kristen Tarbell | [redacted] | Electronically Signed | SGT J F SCHMIDT | [redacted] | 06/01/2009 | Approved Electronically |

Administrative Use Only

Page 2 of 4

# CNYLEADS Involved Persons 3-5 Supplement

DR # 09-216104

**Involved Person 3**

1. Person Type: PG | 2. Victim Type: | 3. Notified of: | 4. Last: [redacted] | First: [redacted] | Middle: | Suffix: | 5. Business Name:

6. Alias/Nickname/Maiden Name: | 7. Race: U | 8. Ethnicity: U | 9. Sex: F | 10. DOB: / / | 11. Age: | 12. Hgt: ' " | 13. Wgt: | 14. Hair: | 15. Eye:

16. Address Num: [redacted] | Prefix: | Street Name: [redacted] | Street Type: [redacted] | Suffix: | Bldg.: | APT#: | 17. City: [redacted] | 18. State: NY

19. Zip: [redacted] | 20. Resident Status: | 21. Home Phone: [redacted] | 22. Cell Phone: ( ) - | 23. Soc. Sec. #: - - | 24. Scars/Marks/Tattoos:

25. Describe: | 26. Skin: | 27. Eyewear: | 28. Employer/School:

29. Work Phone: ( ) - | 30. Occupation: | 31. Address Num: | Prefix: | Street Name: | Street Type: | Suffix:

Bldg.: | Suite#: | 32. City: | 33. State: | 34. Zip: | 35. Apparent Condition: | 36. Handicapped: | 37. Nature of Ill/Inj: | 38. Med Treatment:

39. Subject description, actions, etc:

**Involved Person 4**

1. Person Type: | 2. Victim Type: | 3. Notified of Rights: | 4. Last: | First: | Middle: | Suffix: | 5. Business Name:

6. Alias/Nickname/Maiden Name: | 7. Race: | 8. Ethnicity: | 9. Sex: | 10. DOB: / / | 11. Age: | 12. Hgt: ' " | 13. Wgt: | 14. Hair: | 15. Eye:

16. Address Num: | Prefix: | Street Name: | Street Type: | Suffix: | Bldg.: | APT#: | 17. City: | 18. State:

19. Zip: | 20. Resident Status: | 21. Home Phone: ( ) - | 22. Cell Phone: ( ) - | 23. Soc. Sec. #: - - | 24. Scars/Marks/Tattoos:

25. Describe: | 26. Skin: | 27. Eyewear: | 28. Employer/School:

29. Work Phone: ( ) - | 30. Occupation: | 31. Address Num: | Prefix: | Street Name: | Street Type: | Suffix:

Bldg.: | Suite#: | 32. City: | 33. State: | 34. Zip: | 35. Apparent Condition: | 36. Handicapped: | 37. Nature of Ill/Inj: | 38. Med Treatment:

39. Subject description, actions, etc:

**Involved Person 5**

1. Person Type: | 2. Victim Type: | 3. Notified of Rights: | 4. Last: | First: | Middle: | Suffix: | 5. Business Name:

6. Alias/Nickname/Maiden Name: | 7. Race: | 8. Ethnicity: | 9. Sex: | 10. DOB: / / | 11. Age: | 12. Hgt: ' " | 13. Wgt: | 14. Hair: | 15. Eye:

16. Address Num: | Prefix: | Street Name: | Street Type: | Suffix: | Bldg.: | APT#: | 17. City: | 18. State:

19. Zip: | 20. Resident Status: | 21. Home Phone: ( ) - | 22. Cell Phone: ( ) - | 23. Soc. Sec. #: - - | 24. Scars/Marks/Tattoos:

25. Describe: | 26. Skin: | 27. Eyewear: | 28. Employer/School:

29. Work Phone: ( ) - | 30. Occupation: | 31. Address Num: | Prefix: | Street Name: | Street Type: | Suffix:

Bldg.: | Suite#: | 32. City: | 33. State: | 34. Zip: | 35. Apparent Condition: | 36. Handicapped: | 37. Nature of Ill/Inj: | 38. Med Treatment:

39. Subject description, actions, etc:

*False Statements made herein are punishable as a Class A Misdemeanor pursuant to 210.45 NYSPL* AFFIRMED UNDER PENALTY OF PERJURY

Administrative Use Only

PRINT NAME: Kristen Tarbell | ID#: [redacted] | SIGNATURE: Electronically Signed

SUPERVISOR NAME (PRINT): SGT J F SCHMIDT | ID#: [redacted] | APPROVED DATE: 06/01/2009 | APPROVED BY SIGNATURE: Approved Electronically

Page 3 of 4

Form 3.5I (Rev.2/07)

## CNYLEADS Narrative Supplement 1

| AGENCY | | | | | OR # |
| --- | --- | --- | --- | --- | --- |
| Onondaga County Sheriff's Office | | | | | 09-216104 |
| Person Type | Last Name | First | Middle | Suffix | Business Name |
| VI | [redacted] | [redacted] | [redacted] | | |

This investigation involved a 14 year old boy, [redacted], who inappropriatley touched several females at school. The incidents were originally reported to the School Resource Officer of Roxboro Middle School, Deputy Dell, and he contacted the Abused Persons Unit. Sgt. Simone assigned the case to me on 03/30/09. Det. Brogan and Det. Wafer assisted me in this investigation.

[redacted], a 12 year old female, was one of the students involved. I interviewed [redacted] and talked to her mother, [redacted] did not desire prosecution against [redacted]. For further detials, see complete narrative under DR#09-214737.

*False Statements made herein are punishable as a Class A Misdemeanor pursuant to 210.45 NYSPL* AFFIRMED UNDER PENALTY OF PERJURY

| PRINT NAME | ID# | SIGNATURE | Administrative Use Only SUPERVISOR NAME (PRINT) | ID# | APPROVED DATE | APPROVED BY SIGNATURE | Page 4 of 4 |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Kristen Tarbell | [redacted] | Electronically Signed | SGT J F SCHMIDT | [redacted] | 06/01/2009 | Approved Electronically | |

Form 3.5N (Rev. 2/07)

# C

**JUDITH A La MANNA**
**ATTORNEY ARBITRATOR MEDIATOR**
**224 HARRISON STREET (#306)**
**SYRACUSE, NY 13202**

**PHONE: (315) 451-5552 x. 17**
**FAX: 315.461-1243**
lamanna@rivette.us

**SENT VIA FAX ONLY**

**DATE:** June 28, 2010

**# OF PAGES:** **3 including cover**

Laura Harshbarger, Esq.
Bond, Schoeneck & King
One Lincoln Center
Syracuse, NY 13202
(315) 218-8314 //
FAX (315) 218-8100

Dennis G. O'Hara, Esq.
O'Hara, O'Connell & Ciotoli
7207 East Genesee Street
Fayetteville, NY 13066
(315) 451-3810 //
FAX (315) 451-5585

RE: Charges preferred under §3020-a of the Education Law of New York.
North Syracuse CSD against Danielle Rausa File # 13,333

Attached please find a copy of the original Agreement executed by you earlier today on behalf of each of your clients, in full settlement of this matter. Thank you for your efforts and cooperation and reaching this result.

In light of your settlement, I have cancelled the arrangements made with the stenographic service and have cancelled the hearing days previously set. I will notify the New York State Education Department that the matter has settled. Within a few days, I will calculate the time chargeable to the parties and the SED and advise.

You are to be commended on settling this matter on behalf of your clients. I thank you for your civility in working through this process. It was a pleasure working with you.

Judith
JAL:w

# Settlement Agreement

In Full settlement of the pending 3020-a matter of the North Syracuse School District against Danielle Rausa (file # 13,333), the undersigned agree to the following:

- Ms Rausa admits to the conduct as contained in charge TWO, and denies all remaining charges
- The amount of the suspension shall be reduced from 30 days to five days and the money to be refunded to Ms Rausa shall be issued within 30 days of the date of the settlement agreement.
- Ms Rausa will have 10 days from the date of this Settlement Agreement to issue a concise response to the ~~$~~ memos in her file related to the charges ~~a this matter~~, with the understanding that
  - a. she had the right to reply to each at the time they were issued and did not do so, and
  - b. this new ability to respond to these memos is allowed only in settlement of this matter & does not alter the normal practices of the parties or establish any precedent on that practice.
- No General Release is required by the School District.
- ~~This Agreement does not contain any provision for the payment of attorneys fees related to this matter, nor should it be construed to do so.~~
- ~~Nothing contained in this Agreement is a right of Ms Rausa~~ to negate



06/28/2010 14:51 3154611243 RIVETTE RIVETTE PC PAGE 02/03

To the extent the memos in Ms Rausa's file do not address the unadmitted charges, she will have the opportunity to address same in the same time frame (within 10 days of this Agreement) to issue a concise reply to same.

This Agreement is not a waiver of either party's right to commence an action for any relief not specifically addressed herein.

Except as expressly admitted herein, neither party makes an admission with respect to the charges in this matter.

This Settlement Agreement shall be attached to the charges and remain a part of Ms Rausa's file along with all response memos provided for herein, at the direction of the Hearing Officer.

Dennis G. O'Hara

Laura Har[illegible]

Judith A LaManna, Hearing Officer

Dated: June 28, 2010

# D

COPY

STATE OF NEW YORK

---------------------------------------------------x

DANIELLE RAUSA,

Claimant,

-against-

THE BOARD OF EDUCATION OF THE NORTH SYRACUSE CENTRAL SCHOOL DISTRICT and STEVEN WOLF, Principal of ROXBORO ROAD MIDDLE SCHOOL,

Respondents.

---------------------------------------------------x

The 50-h Hearing of DANIELLE RAUSA, held on March 18, 2011, at the Law Offices of Bond, Schoeneck & King, PLLC, One Lincoln Center, Syracuse, New York, before Melissa M. Phelps, Court Reporter, and Notary Public in and for the State of New York.

A P P E A R A N C E S

For Claimant: O'HARA, O'CONNELL & CIOTOLI, P.C.
Attorneys at Law
7207 East Genesee Street
Fayetteville, New York 13066
BY: STEPHEN CIOTOLI, ESQ.

For Respondents: BOND, SCHOENECK & KING, PLLC
Attorneys at Law
One Lincoln Center
Syracuse, New York 13202-1355
BY: LAURA H. HARSHBARGER, ESQ.

Also Present: Steven Wolf
Annette Speach

of stress and anxiety in paragraph 57.

A Okay.

Q What have you -- what symptoms, if any, have you experienced related to stress and anxiety due to the events we've been discussing about today and that you intend to seek relief for from the district?

A I've had three years of hell.

Q Okay. You need to describe that for me.

A Two weeks and two days after Mr. Wolf was hired, I got written up for the first time ever in my career and it just kept going. He would not speak to me about anything that was going on. It appeared that it was going to be his way or the highway. It also appeared that if you did anything that abutted up against anything that he wanted, he was going to retaliate by writing you up again and things like that. I told you before, December, the music department for the first time ever worked together and pulled off something outstanding and within a month and a half that was totally ripped apart. I love what I do. I'm really good at two things. I'm a really good mom and I'm really good at my job.

Mr. Wolf's not only robbed me of the joy of walking into the building and doing my job, he's created a very hostile work environment. The stress that goes along with all of that and trying to walk out, go home, and raise

my two children carries over, the headaches, the problems, the not sleeping, the just breaking into tears because I'm a fairly strong person most of the time. I've never been on any kind of anxiety medication in my life and four or five months after he came there, I was. My reputation as a music teacher and as an instrumental teacher was completely destroyed. My time with my children has been impacted. The fact that I was suspended for 30 days without pay impacted my finances with my children as a single mother. That's all stressful enough, and then I got a brain tumor and this district and this man could not even afford me the common human courtesy to just lay off for a little while and let me address that issue. It's a brain tumor, it's not a hangnail, it's not a knee surgery, it's a brain tumor and I was not afforded any type of anything. He just kept it up. That's what I needed to focus on. Tack the stress of that on top of the stress at work and everything else, and it's not very nice.

Q Ms. Rausa, did you request an accommodation due to your brain tumor condition at any point in time?

A I didn't need an accommodation until I figured out what was going on.

Q Okay.

A I was told -- the nurses were aware of what was going on. They knew if I got a headache, I needed to

**INDIVIDUAL VERIFICATION**

State Of New York )
) ss.:
County of Onondaga )

**Danielle Rausa**, being duly sworn, deposes and says that she is the Plaintiff in the within action; that she has read the foregoing Verified Complaint and knows the contents thereof; that the same is true to her own knowledge, except as to the matters therein stated to be alleged on information and belief and that as to those matters deponent believes them to be true.

Dated: September 13, 2011

Danielle R. Rausa

**Danielle Rausa**

Sworn to before me this
14th day of September, 2011

Eileen M. Malay
Notary Public

EILEEN M. MALAY
Notary Public, State of New York
Qualified in Cortland County
No. 01MA6043076
Commission Expires June 12, 2014