**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
**SYRACUSE DIVISION**

DANIELLE RAUSA,

Plaintiff,

-against-

THE BOARD OF EDUCATION of the North Syracuse Central School District and STEVEN WOLF, Principal of Roxboro Middle School,

Defendants.

AMENDED VERIFIED COMPLAINT

Jury Demand

CV No.:

Plaintiff, DANIELLE RAUSA, through her attorneys, O'HARA, O'CONNELL & CIOTOLI, for her Verified Amended Complaint against the Defendants states and alleges as follows:

**JURISDICTION**

1. Plaintiff brings this action under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the Due Process Clause of the Fourteenth Amendment to the United States Constitution, Title VII of the Civil Rights Act of 1964 at 42 U.S.C. § 2000e, *et. seq*., the New York Human Rights Law at New York Executive Law § 296, *et. seq*., and New York Education Law § 3020-a and pendent State tort claims.

2. This Court has jurisdiction under 28 U.S.C. § 1331 and has supplemental jurisdiction for the state causes of action under 28 U.S.C. § 1367.

3. With respect to the pendant claims, plaintiff has complied with applicable notice of claim requirements under New York State law by serving a timely Notice of Claim on

September 16, 2010. Annexed hereto as **Exhibit "A"** is a true and correct copy of the Notice of Claim.

4. Plaintiff was examined regarding her Notice of Claim, pursuant to New York State General Municipal Law § 50-h, on March 18, 2011.

5. This action has been commenced within the time required by General Municipal Law §50-i.

6. More than thirty (30) days has elapsed since the Notice of Claim was served on defendants and adjustment or payment thereof has been neglected and/or refused.

7. Further, Plaintiff has filed a claim with the Equal Employment Opportunity Commission ("EEOC") dated April 11, 2010 and has received a Right to Sue letter from the EEOC dated January 5, 2012, which is annexed hereto as **Exhibit "E"**, and gives Plaintiff the right to sue under these "Title VII" claims, within 90 days of the date of the letter.

**THE PARTIES AND VENUE**

8. Plaintiff resides in the Town of Clay, County of Onondaga and State of New York.

9. The North Syracuse Central School District (hereinafter, the "District") is a municipal corporation, organized and existing under Article 37 of the New York State Education Law. The District has administrative offices located in the County of Onondaga, State of New York.

10. Defendant, the Board of Education (hereinafter, the "Board"), is the governing body of the District.

11. At all times relevant hereto, defendant Steven Wolf (hereinafter, "Wolf") was the Principal of Roxboro Road Middle School (hereinafter, "Roxboro"). Roxboro is a middle school within the District.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) (1) and (2) and (c). A substantial part of the events giving rise to the Plaintiff's claim occurred within the Northern District of New York.

## FACTUAL BACKGROUND

13. Plaintiff has been employed by the District since 1997. She was granted tenure on or about April 24, 2000 in the Music Education tenure area and has been assigned to Roxboro as an instrumental and vocal music teacher since June 3, 2002.

14. Defendant Wolf began his employment with the District as principal of Roxboro on or about January 28, 2008.

15. Prior to that date, Plaintiff had always had a constructive and collegial relationship with the various principals at Roxboro and with her colleagues and fellow teachers.

16. However, immediately after Defendant Wolf's employment commenced, he began to make Plaintiff the target of unprofessional, unproductive and unwarranted criticisms, which is described in greater detail in the Notice of Claim and at the 50-h examination.

17. These criticisms were manifested in a variety of ways, most notably via improper reprimands that were placed in Plaintiff's personnel file.

18. The reprimands, discussed below, focused almost entirely on interactions that Plaintiff had with several male employees at Roxboro, all of whom were Defendant Wolf's "cronies" or buddies. The several male employees were identified by name by Plaintiff at the 50-h examination and are known to Defendants.

19. Plaintiff, as a female, was treated differently by Defendant Wolf than her male counterparts and the consequences of this disparate and hostile treatment have been devastating to Plaintiff, which continues through the present.

*The Reprimands*

20. Plaintiff received three reprimands during the first ten (10) months of Defendant Wolf's employment, whereas in the previous ten (10) years of Plaintiff's employment with the District she received none.

21. The first memorandum was dated February 25, 2008 and was subsequently placed in Plaintiff's personnel file.

22. This memorandum was disciplinary in nature as it contained castigating statements of misconduct. This reprimand was issued without affording Plaintiff, a tenured teacher, the due process protections pursuant to New York Education Law § 3020-a.

23. The specific conduct that was the basis for this memorandum was an alleged disagreement Plaintiff had with a male member of the music department. Plaintiff was disciplined for this alleged disagreement, while the male member was not.

24. The second reprimand was issued on or about June 25, 2008.

25. This reprimand again focused on an alleged incident that occurred between Plaintiff and a male member of the music department.

26. Plaintiff was reprimanded for her tone and for statements that were made during this alleged incident with the male employee. The male employee was not disciplined despite the fact that he was hostile, threatening, antagonizing and unprofessional during his interactions with Plaintiff. In fact, Defendant Wolf did not investigate Plaintiff's version of the incident in question. Neither did the Director of Human Resources when asked for her assistance.

27. This memorandum, like the February memorandum, was disciplinary in nature. It, too, contained castigating statements of misconduct and constituted a reprimand that was issued without affording Plaintiff, a tenured teacher, the due process protections of New York Education Law § 3020-a.

28. Finally, Plaintiff was issued two successive reprimands on October 20, 2008 and November 11, 2008, in which the first document from October 20, 2008 was really just notes from a meeting that Plaintiff had with the administration, but it was placed in Plaintiff's personnel file without her knowledge and the November 11, 2008 memorandum basically repeated what was in the October 20th document. The Director of Human Resources was asked to remove the October 20, 2008 document and refused telling Plaintiff it was "too bad, it stays."

29. Both of these documents contained false information, which even after Plaintiff explained to Defendant Wolf, the Director of Human Resources and the Assistant Superintendent, how the information was false, they still refused to change the reprimand.

30. All of the surrounding facts and circumstances of these illegal reprimands were reviewed in detail at the 50-h examination of Plaintiff.

31. In addition, Plaintiff has sought a FOIL request for all similar discipline of male staff members and has been informed that there are none, showing again the discriminatory and disparate impact of Defendants' action on Plaintiff.

*3020-a Charges and Suspension*

32. On June 16, 2009, Plaintiff was served with charges by the District pursuant to New York Education Law § 3020-a (the "3020-a Charges").

33. The District suspended Plaintiff without pay for thirty (30) work days, commencing on September 8, 2009, prior to the hearing and prior to any decision on the 3020-a

Charges by an impartial hearing officer. The unpaid suspension continued until Plaintiff returned to work on or about October 20, 2009. Upon her return, the Director of Human Resources and the Assistant Superintendant placed Plaintiff on intensive support with the threat of remediation.

34. This unpaid suspension clearly violated New York Education Law § 3020-a(2)(b) which, since the 1994 amendments to that statute, has clearly required that a pre-hearing suspension of a tenured teacher be *with pay*, except in limited circumstances not applicable here.

35. Charge One of the 3020-a Charges alleged that Plaintiff committed misconduct by failing to properly supervise her Drama Club students during the 2008-2009 school year.

36. The Charges alleged that Plaintiff allowed a male student to commit acts of sexual abuse against several female members of the Drama Club.

37. Plaintiff was the only individual that was charged for this alleged failure to supervise the students despite the fact that several other adults, and faculty members, were also present during the time period when the alleged abuse occurred and furthermore, this male student also committed these acts in other school settings, including on the school bus and in art class, but Plaintiff was the only school district employee to be punished or charged with misconduct.

38. The allegations of abuse were investigated by the Abused Persons Unit of the Sheriff's Department. Annexed hereto as **Exhibit "B"** is a copy of the Sheriff's Incident Report Complaint Number 09-214737. Plaintiff was never questioned or contacted by the Sheriff and no charges were filed by the Department against her. The investigating Deputy went so far as to indicate that there was no investigation into Plaintiff's conduct because each of the victims stated

unequivocally that the Plaintiff knew nothing about the alleged incidents of abuse. Even with this exonerating information, the District still proceeded to discipline the Plaintiff only.

39. Furthermore, during the previous (2007-2008) school year, at least one parent of a female student and two female students at Roxboro complained about the same male student's sexual harassment and abuse by speaking directly with the District administration (Assistant Principal Mrs. Hardy) and Defendant Wolf. However, the District and Defendant Wolf did not conduct any investigation into this complaint. Moreover, Wolf never advised Plaintiff or any other teachers of the complaint so that they would be alerted to this student's behavior. This reporting of the same male student's improper behavior from the prior school year is also referenced in the Sheriff's Incident Report (**Exhibit "B"** and attached as **Exhibit "B1"** is an affidavit from Michele Fiorini, the parent of the female student who complained to the school district the school year before regarding this male student abusing her daughter, thereby putting the District on notice regarding this male students abusive behavior).

40. Despite this fact, Plaintiff was made the scapegoat and blamed for this incident by Defendant Wolf the following school year. No other individual was held accountable for this male student's misconduct. Defendant Wolf was never held accountable for his failure to advise the relevant staff members of the 2007-2008 incident of sexual harassment and abuse involving the same male student.

41. Even when Defendant Wolf, who is a mandatory reporter of suspected abuse, was informed of this male student's improper behavior on Friday, March 27, 2009, by the female victims, he waited until Monday, March 30, 2009, to actually call the Sheriff's Department to report the abuse (See **Exhibit "B"**) and, again, Defendant Wolf was never disciplined for this misconduct by the District. The only one who was ever charged by the District was Plaintiff,

who knew nothing of the abuse or the history surrounding the abuse. Again, the Director of Human Resources was asked by Plaintiff to investigate this entire incident and Wolf's failure to report the sexual harassment, was given a list of names of students and parents affected, and still refused to investigate; and instead false charges were presented against the Plaintiff, with a 30 day suspension.

42. Charge One was later resolved and dropped by the District pursuant to a Settlement Agreement executed on **June 28, 2010** between the parties and signed by the hearing officer, where Plaintiff alleges herein on information and belief that the charges were so tenuous and unsustainable (and false) that the District had to drop it and back off. The Settlement Agreement is annexed hereto as **Exhibit "C"** and furthermore, the Settlement Agreement specifically contained a non-waiver of claims clause so that Plaintiff could pursue the instant claims against the Defendants, which started with the filing of the Notice of Claim and submission to the 50-h examination.

43. Based on the settlement of charges, this matter never did go to hearing, where under New York Education Law § 3020-a(4)(c), the hearing officer may find that a charge is "frivolous" and may order reimbursement to the employee for the reasonable costs, including attorney's fees, the employee incurred in defending the charges.

44. It is Plaintiff's contention here that the Charge based on her supervision of the Drama Club was a frivolous charge and would have been found so by an impartial hearing officer, and that the only reason this charge was brought against her was because of the discriminatory and retaliatory animus of Defendants against her.

45. The remaining charges included two that dealt with Plaintiff's alleged failure to timely submit grades. Plaintiff was charged with the late reporting of grades, while Defendant

Wolf and other District administrators allowed other teachers to submit late grades with no disciplinary repercussions whatsoever.

46. Plaintiff was also charged with misconduct for her interactions with several male employees, who, not surprisingly were individuals that Defendant Wolf favored over Plaintiff and such male employees were never written up themselves for hostile behavior toward the Plaintiff – only Plaintiff was ever written up for these encounters.

47. In exchange for Plaintiff's admission on one charge related to the timeliness of her grade submissions, the remaining charges, including Charge One, were resolved and not pursued by the District.

48. Furthermore, Plaintiff's unpaid suspension was reduced from 30 days to 5 days.

*Other Unprofessional and Discriminatory Behavior*

49. Defendant Wolf subjected Plaintiff to a variety of other discriminatory and unprofessional acts since he began his employment with the District, which were stated in paragraphs 56(a)-(z) of the Notice of Claim (**Exhibit "A"**) and Plaintiff was examined on these claims at the 50-h examination.

50. Ultimately, Defendants' discriminatory and retaliatory animus against Plaintiff culminated in the Settlement Agreement on the charges dated June 28, 2010, basically exonerating Plaintiff from any misconduct except for the one minor issue of turning in grades late, despite all the allegations contained in the reprimands and charges against Plaintiff.

51. This pattern of conduct directed at Plaintiff by Defendant Wolf has caused Plaintiff stress and anxiety, damaged her professional reputation and damaged otherwise productive relationships that she had with her peers, both male and female.

*Claimant's Brain Tumor and Medical Leave*

52. In the midst of Plaintiff's difficulties at work she was also diagnosed with a brain tumor at the end of January 2009.

53. Plaintiff went out on a disability leave from the District on *September 16, 2010* and returned to work on a part-time basis on *March 14, 2011* and then returned to work on a full-time basis. The surgery on the tumor took place at Johns Hopkins University Medical Center on September 17, 2010.

54. At one point, Defendant Wolf said to a staff member that the brain tumor would be Plaintiff's "*excuse*" now, as a way to further belittle and demean Plaintiff and her very serious medical condition.

*Since Plaintiff's Return to Work in March 2011*

55. Since Plaintiff returned to work in March 2011, the discriminatory animus and retaliatory behavior against Plaintiff continued through the end of the school year in June 2011, with threats of write-ups, multiple meetings with the Administration, including with the Assistant Superintendent for Instruction Stan Finkle (and Mr. Wolf), an unfair and improper evaluation, which required the filing of a grievance that led to the changing of this evaluation, favoritism in teaching assignments, instigation of a confrontation with a parent, and further favoritism shown toward male staff members the same as occurred prior to Plaintiff's' medical leave of absence.

56. For example, a male employee (Mr. Pat Wallace), who was also shown favoritism by the District and Mr. Wolf prior to Plaintiff's medical leave of absence, was given a teaching assignment so he could do an internship, which included reduced hours, while still receiving full pay, in violation of the teacher's contract, as well as other examples of preferential treatment for this particular male staff member.

*Injuries and Damages*

57. The harm and damage to Plaintiff has included stress and anxiety, damage to her professional reputation, damage to her professional relationships with her peers and fellow teachers, both male and female, loss of pay, which was originally 30 days pay, but later reduced to 5 days pay, and medical care and treatment. This harm and damage was stated in emotional detail by Plaintiff at her 50-h examination. Please see **Exhibit "D"** for the transcript of pages 145-146 of the 50-examination taken on March 18, 2011 for Plaintiff's testimony regarding her damages and how her life was turned into "three years of hell."

**FIRST CAUSE OF ACTION**
**DISCRIMINATION UNDER TITLE VII**

58. Plaintiff incorporates paragraphs "1" through "57" inclusive, as if fully set forth here.

59. Plaintiff is a female and a member of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, ("Title VII").

60. Title VII prohibits an employer from discriminating against any individual with respect to compensation, terms, conditions or privileges of employment on the basis of gender.

61. By the acts and conduct described herein, Defendants discriminated against Plaintiff in the terms, conditions and privileges of her employment in violation of Title VII by initiating reprimands, 3020-a charges, suspension and through its overall treatment of Plaintiff as compared to her male co-workers and counterparts.

62. As a result of Defendants' unlawful acts, Plaintiff has suffered, and/or continues to suffer, monetary damages, lost wages, physical and psychological harm, emotional distress, damage to her professional reputation, and other damages.

63. Plaintiff seeks damages and all other forms of relief available under Title VII.

**SECOND CAUSE OF ACTION**
**HOSTILE WORK ENVIRONMENT UNDER TITLE VII**

64. Plaintiff hereby incorporates paragraphs "1" through "63" inclusive, as if fully set forth here.

65. Title VII requires employers to provide a work environment that is free of abuse or hostility and free of discriminating animus.

66. By the acts and conduct described herein, a hostile and discriminatory work environment towards women existed at Plaintiff's place of employment. This environment was sufficiently severe and pervasive enough to alter the conditions of Plaintiff's work environment.

67. Upon information and belief, Defendants had knowledge of the hostile and discriminatory work environment that existed for its female employees and allowed this environment to exist. Defendants also had knowledge of the specific hostile and discriminatory work environment that Plaintiff experienced.

68. Based upon the foregoing, Defendants discriminated against Plaintiff in the terms, conditions and privileges of her employment in violation of Title VII.

69. As a result of Defendants' unlawful acts, Plaintiff has suffered, and/or continues to suffer, monetary damages, lost wages, physical and psychological harm, emotional distress, damage to her professional reputation, and other damages.

70. Plaintiff seeks damages and all other forms of relief available under Title VII.

**THIRD CAUSE OF ACTION**
**DISPARATE TREATMENT UNDER TITLE VII**

71. Plaintiff hereby incorporates paragraphs "1" through "70" inclusive, as if fully set forth here.

72. By the acts and conduct described herein, Defendants treated Plaintiff, a female, less favorable than it treated similarly situated male employees in violation of Title VII.

73. Based upon the foregoing, Defendants discriminated against Plaintiff in the terms, conditions and privileges of her employment in violation of Title VII.

74. As a result of Defendants' unlawful acts, Plaintiff has suffered, and/or continues to suffer, monetary damages, lost wages, physical and psychological harm, emotional distress, damage to her professional reputation, and other damages.

75. Plaintiff seeks damages and all other forms of relief available under Title VII.

## FOURTH CAUSE OF ACTION
## RETALIATION UNDER TITLE VII

76. Plaintiff hereby incorporates paragraphs "1" through "75" inclusive, as if fully set forth here.

77. By the acts and conduct described herein, Plaintiff engaged in protected activities when she made internal discrimination complaints as alleged herein and repeatedly went to the District administration to complain about the treatment she was receiving at the hand of Defendant Wolf and his male cronies.

78. Upon information and belief, Defendants were aware that Plaintiff engaged in these protected activities.

79. Plaintiff suffered adverse employment actions as a result of having engaged in these protected activities, including further reprimands, being deprived of employment opportunities and having charges brought against her, which were false and baseless, and were ultimately resolved and not pursued by the District.

80. Based upon the foregoing, Defendants discriminated against Plaintiff in the terms, conditions and privileges of her employment in violation of Title VII.

81. As a result of Defendants' unlawful acts, Plaintiff has suffered, and/or continues to suffer, monetary damages, lost wages, physical and psychological harm, emotional distress, damage to her professional reputation, and other damages.

**FIFTH CAUSE OF ACTION**
**42 U.S.C. § 1983 – TITLE VII**

82. Plaintiff incorporates paragraphs "1" through "81" inclusive, as if fully set forth here.

83. Defendants Board and Wolf are state actors acting under color of state law for purposes of 42 U.S.C. § 1983.

84. Plaintiff is a citizen of the United States whose rights and liberties are protected pursuant to 42 U.S.C. § 1983 and by Federal Statute.

85. As set forth above, Defendants discriminated against Plaintiff in the terms, conditions and privileges of her employment in violation of Title VII.

86. These acts constitute violation of Plaintiff's rights under Federal anti-discrimination law, in that the actions taken herein by Defendants and each of them named individually were intended to deprive Plaintiff of her rights guaranteed by applicable and known federal law, and were done by Defendants under color of state law.

87. As a result of Defendants' unlawful acts, Plaintiff has suffered, and/or continues to suffer, monetary damages, lost wages, physical and psychological harm, emotional distress, damage to her professional reputation, and other damages.

88. Plaintiff is also entitled to attorney's fees under 42 U.S.C. § 1988.

**SIXTH CAUSE OF ACTION**
**42 U.S.C. § 1983 – EQUAL PROTECTION**

89. Plaintiff incorporates paragraphs "1" through "89" inclusive, as if fully set forth here.

90. Defendants Board and Wolf are state actors acting under color of state law for purposes of 42 U.S.C. § 1983.

91. Plaintiff is a citizen of the United States whose rights and liberties are protected pursuant to 42 U.S.C. § 1983 and the United States Constitution.

92. As set forth above, Defendants deprived Plaintiff of her right to Equal Protection under the Fourteenth Amendment to the United States Constitution based on her gender as alleged herein.

93. As set forth above, Defendants discriminated against Plaintiff in the terms, conditions and privileges of her employment in violation of her Constitutional Rights.

94. These acts constitute violations of the Fourteenth Amendment to the United States Constitution and are actionable pursuant to 42 U.S.C. § 1983, in that the actions taken herein by Defendants and each of them named individually were intended to deprive Plaintiff of her rights guaranteed by applicable and known federal law, and were done by Defendants under color of state law.

95. As a result of Defendants' unlawful acts, Plaintiff has suffered, and/or continues to suffer, monetary damages, lost wages, physical and psychological harm, emotional distress, damage to her professional reputation, and other damages.

96. Plaintiff is also entitled to attorney's fees under 42 U.S.C. § 1988.

**SEVENTH CAUSE OF ACTION**
**- 42 U.S.C. § 1983 –**
**DEPRIVATION OF PROPERTY AND LIBERTY INTERESTS**

97. Plaintiff incorporates paragraphs "1" through "96" inclusive, as if fully set forth here.

98. Defendants are state actors, and the actions described herein were taken by Defendants acting under color of state law for purposes of 42 U.S.C. § 1983.

99. As such, Defendants had an obligation to provide Plaintiff with due process relative to any deprivation of property or liberty rights pursuant to 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments to the United States Constitution.

100. Plaintiff is a citizen of the United States whose rights and liberties are protected pursuant to 42 U.S.C. § 1983 and the United States Constitution.

101. Plaintiff has a protected property interest in her employment and tenure rights and a protected liberty interest in her good name, reputation and right to pursue her chosen career. Plaintiff may not be deprived of these rights by individuals acting under color of state law.

102. Defendant Wolf, under color of state law, deprived Plaintiff of these interests by issuing baseless reprimands and pursuing baseless 3020-a charges against her.

103. Defendant Board, under color of state law, deprived Plaintiff of these interests by serving baseless 3020-a charges against Plaintiff and by suspending Plaintiff for thirty (30) days without pay.

104. In addition, Defendants deprived Plaintiff of both of these interests, without any due process, by issuing illegal reprimands, by suspending Plaintiff without pay prior to any hearing as required by law and by engaging in a campaign of retaliation.

105. Such actions violated Plaintiff's tenure rights and harmed Plaintiff's good name and professional reputation.

106. As a result of Defendants' unlawful acts, Plaintiff has suffered, and/or continues to suffer, monetary damages, lost wages, physical and psychological harm, emotional distress, damage to her professional reputation, and other damages.

107. Plaintiff is also entitled to attorney's fees under 42 U.S.C. § 1988.

**EIGHTH CAUSE OF ACTION**
**VIOLATION OF NEW YORK EXECUTIVE LAW § 296**
**HUMAN RIGHTS LAW**

108. Plaintiff incorporates paragraphs "1" through "107" inclusive, as if fully set forth here.

109. Plaintiff is a female and, as such, is a covered individual under New York Human Rights Law (Executive Law § 296, et. seq.).

110. Plaintiff was subjected to disparate and discriminatory treatment by Defendants as compared with similarly situated male employees.

111. Upon information and belief, the Defendants' actions were based upon impermissible discrimination based upon the fact that Plaintiff was a female.

112. Based upon the foregoing, Defendants discriminated against Plaintiff in the terms, conditions and privileges of her employment in violation of New York Human Rights Law.

113. As set forth above, the aforementioned actions of the Defendants constitute a pattern and practice of gender discrimination, disparate treatment and/or harassment. These acts violation New York Executive Law § 296, et. seq., and are illegal.

114. As a direct and proximate result of this conduct, Plaintiff has suffered, and/or continues to suffer, monetary damages, lost wages, physical and psychological harm, emotional distress, damage to her professional reputation, and other damages.

**NINTH CAUSE OF ACTION**
**VIOLATION OF NEW YORK EXECUTIVE LAW § 296**
**RETALIATION**

115. Plaintiff incorporates paragraphs "1" through "114" inclusive, as if fully set forth here.

116. By the acts and conduct described herein, Plaintiff engaged in protected activities when she made internal discrimination complaints as alleged herein and repeatedly went to the District administration to complain about the treatment she was receiving at the hand of Wolf and his male cronies.

117. Upon information and belief, Defendants were aware that Plaintiff engaged in these protected activities.

118. Plaintiff suffered adverse employment actions as a result of having engaged in these protected activities, including further reprimands, being deprived of employment opportunities and having charges brought against her, which were false and baseless and ultimately dropped by Defendants.

119. Based upon the foregoing, Defendants discriminated against Plaintiff in the terms, conditions and privileges of her employment in violation of New York Human Rights Law (Executive Law § 296, et. seq.).

120. As a result of Defendants' unlawful acts, Plaintiff has suffered, and/or continues to suffer, monetary damages, lost wages, physical and psychological harm, emotional distress, damage to her professional reputation, and other damages.

**TENTH CAUSE OF ACTION**
**AIDING AND ABETTING UNDER § 296 OF THE HUMAN RIGHTS LAW**
**DEFENDANT STEVEN WOLF ONLY**

121. Plaintiff incorporates paragraphs "1" through "120" inclusive, as if fully set forth here.

122. Upon information and belief, Defendant Wolf directly participated in and thereby aided and abetted in the unlawful discrimination and retaliatory conduct of the Defendants as described herein.

123. Defendant Wolf discriminated against Plaintiff in the terms, conditions and privileges of her employment in violation of New York Executive Law § 296.

124. As a direct and proximate result of this conduct, Plaintiff has suffered, and/or continues to suffer, monetary damages, lost wages, physical and psychological harm, emotional distress, damage to her professional reputation, and other damages.

**ELEVENTH CAUSE OF ACTION**
**VIOLATION OF NEW YORK EDUCATION LAW § 3020-a**

125. Plaintiff incorporates paragraphs "1" through "124" inclusive, as if fully set forth here.

126. Plaintiff began her employment with the District in 1997 and acquired tenure on or about April 24, 2000.

127. New York State Education Law § 3020-a(2)(b) mandates that a pre-hearing suspension of a tenured teacher is to be with pay, except in limited circumstances not relevant here.

128. Defendants suspended Plaintiff without pay for thirty (30) days prior to the hearing. The unpaid suspension commenced on September 8, 2009 and continued until Plaintiff returned to work on or about October 20, 2009.

129. As a direct and proximate result of this conduct, Plaintiff has suffered, and/or continues to suffer, monetary damages, lost wages, physical and psychological harm, emotional distress, damage to her professional reputation, and other damages.

**TWELTH CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

130. Plaintiff incorporates paragraphs "1" through "129" inclusive, as if fully set forth here.

131. Defendants intentionally, willfully and knowingly engaged in the conduct alleged and referenced herein.

132. Said conduct is extreme and outrageous and exceeded all bounds of decency.

133. As a direct and proximate result of this conduct, Plaintiff has suffered emotional distress.

134. As a direct and proximate result of this conduct and intentional infliction of emotional distress, Plaintiff has suffered, and/or continues to suffer, monetary damages, lost wages, physical and psychological harm, emotional distress, damage to her professional reputation, and other damages.

**THIRTEENTH CAUSE OF ACTION**
**PRIMA FACIE TORT**

135. Plaintiff incorporates paragraphs "1" through "134" inclusive, as if fully set forth here.

136. Even if found otherwise lawful, as a result of Defendants' intentional and malicious conduct referenced above, Plaintiff has suffered injury in her employment and to her professional reputation.

137. Defendants intentionally engaged in the conduct referenced above without any excuse or justification. The Defendants' above referenced conduct was motivated solely by malevolence.

138. As a direct and proximate result of this conduct, Plaintiff has suffered, and/or continues to suffer, monetary damages, lost wages, physical and psychological harm, emotional distress, damage to her professional reputation, and other damages, including the loss of 30 days pay which was later reduced to 5 days pay, which caused a direct financial hardship.

139. Plaintiff has also sought medical treatment for her work related stress and anxiety and has incurred medical bills for such treatment and for prescription drugs.

## DEMAND FOR TRIAL BY JURY

140. Pursuant to the Fed. R. Civ. P. 38, Plaintiff respectfully demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter an award of damages in her favor in a sum to be determined according to proof and as provided by law, plus her attorneys' fees, costs and disbursements incurred in prosecuting this action, and such other and further relief as the Court may deem just and proper.

Dated: January 5, 2012

Yours, etc.,

s/ Stephen Ciotoli

Stephen Ciotoli, Esq.
Bar Roll No. 512228
*Attorney for Plaintiff*
O'HARA, O'CONNELL & CIOTOLI
7202 East Genesee Street
Fayetteville, New York 13066
(315) 451-3810

**INDIVIDUAL VERIFICATION**

State Of New York )
) ss.:
County of Onondaga )

**Danielle Rausa**, being duly sworn, deposes and says that she is the Plaintiff in the within action; that she has read the foregoing Amended Complaint and knows the contents thereof; that the same is true to her own knowledge, except as to the matters therein stated to be alleged on information and belief and that as to those matters deponent believes them to be true.

Dated: January 5, 2012

Danielle R. Rausa

**Danielle Rausa**
**Plaintiff**

Sworn to before me this
5th day of January, 2012

Susan M. Martino
Notary Public

SUSAN M. MARTINO
Notary Public, State of New York
No. 01MA6115671
Residing In Oswego County
My Commission Expires Sept. 13, 2012