SUPREME COURT
STATE OF NEW YORK ONONDAGA COUNTY

DANIELLE RAUSA,

*Claimant,*

v.

THE BOARD OF EDUCATION of the North Syracuse Central School District and STEVEN WOLF, Principal of Roxboro Road Middle School,

*Respondents,*

**NOTICE OF CLAIM**

TO THE ABOVE NAMED RESPONDENTS:

PLEASE TAKE NOTICE that Danielle Rausa (the "Claimant") hereby serves notice of the following claims upon the Board of Education (the "Board") of the North Syracuse Central School District (the "District") and the other named Respondents:

*The Parties*

1. I am employed by the North Syracuse Central School District (the "District") as a tenured teacher in the music department of Roxboro Road Middle School ("Roxboro").

2. My attorneys are O'HARA, O'CONNELL & CIOTOLI, with offices located at 7207 East Genesee Street, Fayetteville, New York 13066.

3. Respondent Board of Education (the "Board") is the governing body of the District. The Board is named because Respondent Steven Wolf may be entitled to

indemnification for any damages attributable to him as a consequence of the actions described below.

4. Steven Wolf ("Wolf") is currently the Principal of Roxboro and upon information and belief, he has held that position since approximately January 28, 2008.

*Factual Background*

5. I have been employed by the District since 1997. I was granted tenure on or about April 24, 2000 in the Music Education tenure area and have been assigned to the Roxboro Road Middle School as an instrumental and vocal music teacher since June 3, 2002.

6. During the period relevant to this Notice of Claim, I was employed as a music teacher at Roxboro responsible for both instrumental and vocal instruction.

7. For the last 9 years, I have also been the Drama Club advisor. In that role, I was responsible for producing and directing Roxboro's annual musical.

8. Wolf began his employment with the District on or about January 28, 2008.

9. Prior to that date, I had always had constructive and collegial relationships with the various Principals at Roxboro.

10. However, immediately after Wolf's employment commenced, he began to make me the target of unprofessional, unproductive and unwarranted criticisms.

11. These criticisms were manifested in a variety of ways, most notably via illegal reprimands that were placed in my personnel file.

12. The reprimands discussed below, focused almost entirely on interactions that I had with several male employees at Roxboro, all of whom were Wolf's "cronies."

13. I am female and I was treated differently by Wolf than my male counterparts.

14. Wolf's actions as described below were at times unprofessional and at other times discriminatory.

15. Wolf's actions in this regard so blatantly unprofessional that, upon information and belief, he received several complaints from parents and staff members about his treatment of me.

*The Reprimands*

16. From the moment Wolf began his employment, it became clear to me that he favored the male members of the Roxboro staff. As a consequence of this favoritism, I was subjected to unwarranted, illegal and unprofessional actions by Wolf.

17. I received three reprimands during the first ten (10) months of Wolf's employment.

18. The first memorandum was dated February 25, 2008 and was subsequently placed in my personnel file.

19. This memorandum was disciplinary in nature as it contained castigating statements of misconduct. This reprimand was issued without affording me, a tenured teacher, the due process protections of Education Law §3020-a.

20. The specific conduct that was the basis for this memorandum was an alleged disagreement that I had with a male member of the music department. I was disciplined for this alleged disagreement, while the male member was not. This is true despite that this male teacher

exhibited hostility and unprofessionalism during the interactions with me that are the subject of the reprimand.

21. The second reprimand was issued on or about June 24, 2008.

22. This reprimand again focused on an alleged incident that occurred between me and a male member of the music department.

23. I was reprimanded for my tone and for statements that were made during this alleged incident with the male employee. The male employee was not disciplined despite the fact he was hostile, threatening, antagonizing and unprofessional during his interactions with me. In fact, Wolf did not investigate my version of the incident in question.

24. This memorandum, like the February memorandum, was disciplinary in nature. It, too, contained castigating statements of misconduct and constituted a reprimand that was issued without affording me, a tenured teacher, the due process protections of Education Law §3020-a.

25. Finally, I was issued two successive reprimands on October 20, 2008 and November 11, 2008.

26. Although two memorandums were issued, they repeated references to the same events and alleged misconduct.

27. One of the allegations contained in these memorandums dealt with interactions that I had with Wolf concerning confusion about the structure of the chorus during the 2008-2009 school year.

28. Specifically, without notifying me and after, upon information and belief, consulting with various male members of the music program, Wolf unilaterally changed chorus

from a combined 6th and 7th grade program (the format utilized during the previous three (3) years) to 7th grade only. This was done without my knowledge.

29. Instead of discussing this in a constructive manner with me, Wolf unilaterally changed the structure of the chorus, cancelled informational meetings I had scheduled, and generally disrupted the orderly operation of my choral program.

30. Somehow, this resulted in an illegal reprimand being issued to me by Wolf.

31. The above reprimands involved situations where Wolf favored male employees and their version of events. This disparate treatment resulted in my being disciplined while male employees were allowed to treat me and other staff members in an unprofessional and hostile manner.

*3020-a Charges and Suspension*

32. On June 16, 2009, I was served with charges by the District pursuant to Education Law Section 3020-a (the "3020-a Charges").

33. The District suspended me without pay for thirty (30) work days, commencing on September 8, 2009. This suspension was imposed prior to the hearing and prior to any decision on the 3020-a Charges. The unpaid suspension continued until I returned to work on or about October 20, 2009.

34. This unpaid suspension clearly violated Education Law § 3020-a(2)(b) which, since the 1994 amendments to that statute, has clearly required that a pre-hearing suspension of a tenured teacher is to be *with pay,* except in limited circumstances not relevant here.

35. The District, ostensibly relying on pre-1994 language in the collective bargaining agreement between the District and its teachers (the "CBA"), ignored the clear mandates of § 3020-a and imposed an unpaid pre-hearing suspension. The relevant provision of the CBA states:

> In the event that any teacher is suspended pending a hearing on charges, such suspension shall be without pay until the findings and recommendations on the charges are determined.

36. Upon information and belief, this provision was in the CBA long before the Legislature amended Education Law § 3020-a(2)(b) in 1994 to require that the pre-hearing suspension of a tenured teacher be *with pay* except in very limited circumstances.

37. The CBA provision relied upon by the District has been preempted by the plain terms of Education Law Section 3020-a(2)(b), which explicitly requires that teachers be paid during suspensions under 3020-a.

38. My pre-hearing suspension was for thirty (30) work days. This is the *maximum* penalty that the Board sought to impose in the event I was found guilty of the 3020-a Charges. By suspending me without pay prior to the 3020-a disciplinary hearing for the maximum period sought by the Board, the Board violated my rights as a tenured teacher guaranteed by Education Law §3020-a (2)(b).

39. Furthermore, the Charges were pretextual in nature and orchestrated as part of Wolf's ongoing plot to discredit and illegally discipline me.

40. Charge One of the 3020-a charges alleged that I committed misconduct by failing to properly supervise her Drama Club students during the 2008-2009 school year.

41. The Charges alleged that I allowed a male student to commit acts of sexual abuse against several female members of the Drama Club.

42. I was the only individual that was held accountable for this alleged failure to supervise the students despite the fact several other adults, including the male technology club advisor, were present during the time period when the alleged abuse occurred.

43. The allegations of abuse were investigated by the Abused Persons Unit of the Sherriff's Department. I was never questioned or contacted by the Sheriff and no charges were filed by the Department against me. The investigating Deputy went so far as to indicate that there was no investigation into my conduct because each of the victim's stated unequivocally that the I knew nothing about the alleged incidents of abuse

44. Furthermore, during the previous (2007-2008) school year, at least one parent of a female student and two female students at Roxboro filed a formal complaint about the same male student's sexual harassment and abuse by speaking directly with Wolf. However, Wolf did not conduct any investigation into this complaint. Moreover, he never advised me or other teachers or advisors of the complaint so that we would be alerted to watch this particular student with extra vigilance. Ultimately, the parents who filed a complaint removed the child from the classroom where the incidents took place.

45. Additionally, the male student is alleged to have victimized female students in a variety of settings, including drama club rehearsals, on school buses, in the lunch rooms, in classrooms, in the hallways at Roxboro and outside of the school itself.

46. Despite this fact, I was made the scapegoat and blamed for this incident by Wolf. No other individual was held accountable for this male student's misconduct. Wolf was never

held accountable for his failure to advise the relevant staff members of the 2007-2008 incident of sexual harassment and abuse involving the same male student.

47. Charge One was dropped by the District pursuant to a settlement agreement executed on or about June 28, 2010.

48. The remaining charges included two that dealt with my alleged failure to timely submit grades. I was charged with the late reporting of grades, while Wolf and other District administrators allowed other teachers to submit late grades with no disciplinary repercussions.

49. I was also charged with misconduct for my interactions with several male employees who, not surprisingly, were individuals that Wolf favored over me and other female employees on several occasions.

50. This is true although several of the involved male employees were hostile, belligerent, negligent and unprofessional in their interactions with me.

51. In every instance where an allegedly strained encounter occurred between me and a male employee, I was saddled with the blame and the discipline for the incident. Wolf favored the male employees and treated them much differently than he treated me.

52. Ultimately, the 3020-a charges were resolved by way of settlement dated June 28, 2010.

53. In exchange for my admission of guilt on one charge related to the timeliness of my grade submission, the remaining charges, including Charge One, were dismissed.

54. My unpaid suspension was reduced from 30 days to 5 days.

*Other Unprofessional and Discriminatory Behavior*

55. Wolf subjected to me to a variety of other discriminatory and unprofessional practices since he began his employment with the District.

56. The following non-exhaustive list of incidents evidences a pattern of conduct by Wolf that began shortly after his appointment and continued until the conclusion of the 2009-2010 school year and the subsequent settlement of the 3020-a process:

a. Two months after Wolf was hired, he notified me that I was being removed from my instrumental position and moved into a classroom vocal position. As a justification for this move, Wolf stated that he believed that I was a "stronger vocalist than instrumentalist." However, this decision was made before Wolf had seen any performance by me, vocal or instrumental. Wolf thereafter placed a non-tenured male teacher, whom he favored, into my instrumental position. Upon information and belief, this decision was influenced by the male members of the music department because one male member wanted the instrumental position yet lacked the experience and seniority to be placed in that position.

b. As a continuing course of conduct throughout Wolf's employment, he has refused to speak directly to me on any issue or question related to the Drama Club. Instead, Wolf communicated with me through other individuals, even when the content of the message was critical and/or negative.

c. In September 2008, without notifying me and after, upon information and belief, consulting with various male members of the music program, Wolf unilaterally changed chorus from 7th grade ONLY to 6th and 7th grade. This was done without my knowledge.

d. From September 2008 through June 2010, Wolf would not allow me to operate the lights and sound for my productions and concerts. I had always completed these tasks. Instead, Wolf insisted that there was now a Technology Club, run by a male advisor whom Wolf favored, who would take care of all lighting and sound needs. I was denied access to the sound and lighting instruments.

e. From September 2008 through June 2010, Mr. Wolf repeatedly favored the male band director at Roxboro. I was disciplined and counseled for issues related to her use of the auditorium for rehearsals and other legitimate school related tasks. I was specifically chastised for failing to cooperate with the male band director and for allegedly failing to leave the auditorium in an appropriate state following rehearsals. The fact is that the male band director consistently refused to leave the auditorium when I was scheduled to use that space, failed to break down the stage and refused to work cooperatively with me. However, I, not the male band director, was criticized for these issues.

f. From 2008 through June 2010, Wolf, who was critical of me in the past for allegedly leaving the auditorium during Drama Club rehearsals, permitted the technology club advisor who was responsible for overseeing his club participants during Drama Club rehearsals, to simply NOT attend his club activities after school so that he could watch his children in the auditorium during drama club rehearsals. Wolf was advised of this fact and refused to take any action. I was left to monitor both my students and the technology club students.

g. In July 2009, Wolf accessed my private Facebook profile without my knowledge or consent. This was a clear violation of my privacy rights.

h. From June 2009 through June 2010, Wolf refused to meet with me to formally discuss my Year End Summary (YES) from the 2008-2009 school year. The YES report was in my personnel file despite this fact and despite the fact it included negative information that I was never permitted to respond to. I repeatedly requested a meeting (as required in the relevant CBA) with Wolf to discuss the YES.

i. From September 2009 through June 2010, whenever I was unable to attend staff meetings, Wolf refused to provide me with the minutes of the staff meetings despite the fact I promptly requested a copy. Upon information and belief, he regularly provided minutes to male staff members who missed meetings.

j. In October 2009, following my unilaterally imposed suspension that was later overturned, Wolf attempted to fill my position of Drama Club Director with a male member of the Roxboro staff.

k. From October 2009 through December 2009 and January 2010, despites my repeated complaints to Wolf, nothing was done to counteract the male technology advisor's failure to assist with technical support issues for students.

l. At the end of the 2008-2009 school year, I raised concerns to Wolf about a plan book and grade book that were stolen from my classroom. After following up several times with Wolf, I made a final request on November 8, 2009 to determine what steps were taken by Wolf or any other member of the District to investigate this incident. Wolf refused to provide this information. Upon information and belief, never investigated this incident.

m. In December 2009, Mr. Wolf openly praised the male band and orchestra directors following a student performance and wholly ignored me and the performance of my students.

n. In December 2009, Wolf scheduled a holiday pops concert and once again refused to include, inform, or allow the upper chorus that I headed to participate. This, in turn, intentionally created yet another rift in the music department, particularly between me and the male members of the department, who were favored by Wolf.

o. In December 2009 and January 2010, Wolf again favored the male members of the music department by praising the band and orchestra performances in the "Good News" bulletin. Little, if any, mention of the chorus that I headed was included in that or subsequent bulletins.

p. In January 2010, I was disciplined by Wolf for an unsubstantiated claim that I had acted unprofessionally by hanging up on Wolf's secretary.

q. From January 2010 through June 2010, despite my repeated requests, Wolf refused to provide adequate equipment and advisors in the auditorium for the concert that I was responsible for organizing.

r. In January 2010, Wolf publicly questioned the style of music that I chose to include in a student's performance.

s. In January 2010, Wolf illegally disciplined me one week prior to the chorus concert for failing to constructively work with the male members of the music department. Later that month, a male member of the music department was hostile during the

department's first meeting of the new year. That male member was not disciplined despite the fact his conduct was similar to my alleged conduct.

t. In February 2010, despite my decision to remove a student from Drama Club for disciplinary reasons, Wolf ordered that the student be allowed to participate in Drama Club. This ultimately led to a racial discrimination investigation.

u. In February 2010, I organized a District event at the Syracuse Crunch game despite Wolf's lack of support. After this turned out to be a successful event, Wolf took credit for the event.

v. From February through June 2010, I was responsible for organizing several successful events during this time period. Wolf ignored me and my contributions to the school, despite the fact many of the events were well received and even covered on local television.

w. On March 1, 2010, Wolf refused to respond to various requests and or questions I submitted to him despite the fact he previously demanded that I speak with him whenever I had questions and/or concerns.

x. In April 2010, I was responsible for the Drama Club production. I repeatedly requested that either Wolf and/or Wolf's close friend, the male technology club advisor, provide specific sound and lighting for the production. Wolf refused.

y. In June 2010, I voluntarily took the responsibility for organizing the 7th grade award night. Wolf took the credit for this event.

z. In June 2010, as discussed above, I was charged with various acts of misconduct by Wolf pursuant to Education Law §3020-a. One charge related to my alleged

failure to timely submit grades for a marking period during the 2008-2009 school year. However, several other teachers failed to meet the deadline for posting grades in both February and June, 2010, were not disciplined by Wolf.

57. This pattern of conduct directed at me by Wolf has caused me stress and anxiety, damaged my professional reputation and destroyed otherwise productive relationships that I had with her peers, both male and female.

## REQUESTS FOR RELIEF

58. Based on the foregoing, I make demand for damages for gender based discrimination and damages for personal and psychological injury, medical and doctor's expenses, emotional distress, and general damages and loss to my reputation and good name.

59. I further seek equitable relief, including, but not limited to, the removal of all illegal disciplinary memorandums and any other derogatory information from my personnel file.

60. I present this claim and demand payment for the damages that I have sustained. Unless I receive the relief outlined above and monetary damages adjusted and paid within the time provided by law from the date of presentation to you, I intend to commence an action on these claims.

Dated: September 16, 2010

Danielle Rausa

## INDIVIDUAL VERIFICATION

STATE OF NEW YORK )
COUNTY OF ONONDAGA ) ss.:

DANIELLE RAUSA, being duly sworn, deposes and says that the deponent is the Claimant in the within action; that deponent has read the foregoing notice of claim and knows the contents thereof; that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters deponent believes them to be true.

Danielle Rausa

Sworn to before me this

16th day of September, 2010.

Notary Public

Steven C. Judge
Notary Public State of New York
Tompkins County
Lic. #02JU6162317
Comm. Exp. 03/12/20__

**JUDITH A La MANNA**
ATTORNEY ARBITRATOR MEDIATOR
224 HARRISON STREET (#306)
SYRACUSE, NY 13202

PHONE: (315) 451-5552 x. 17
FAX: 315.461-1243
lamanna@rivette.us

**SENT VIA FAX ONLY**

DATE: June 28, 2010

# OF PAGES: 3 including cover

Laura Harshbarger, Esq.
Bond, Schoeneck & King
One Lincoln Center
Syracuse, NY 13202
(315) 218-8314 //
FAX (315) 218-8100

Dennis G. O'Hara, Esq.
O'Hara, O'Connell & Ciotoli
7207 East Genesee Street
Fayetteville, NY 13066
(315) 451-3810 //
FAX (315) 451-5585

RE: Charges preferred under §3020-a of the Education Law of New York.
North Syracuse CSD against Danielle Rausa File # 13,333

Attached please find a copy of the original Agreement executed by you earlier today on behalf of each of your clients, in full settlement of this matter. Thank you for your efforts and cooperation and reaching this result.

In light of your settlement, I have cancelled the arrangements made with the stenographic service and have cancelled the hearing days previously set. I will notify the New York State Education Department that the matter has settled. Within a few days, I will calculate the time chargeable to the parties and the SED and advise.

You are to be commended on settling this matter on behalf of your clients. I thank you for your civility in working through this process. It was a pleasure working with you.

Judith
Judith
JAL:w

# Settlement Agreement

In Full settlement of the pending 3020-a matter of the North Syracuse School District against Danielle Rausa (file # 13,333), the undersigned agree to the following:

- Ms Rausa admits to the conduct as contained in Charge TWO, and denies all remaining charges
- The amount of the suspension shall be reduced from 30 days to five days and the money to be refunded to Ms Rausa shall be issued within 30 days of the date of the settlement agreement.
- Ms Rausa will have 10 days from the date of this Settlement Agreement to issue a concise response to the memos in her file related to the charges ~~in this matter~~, with the understanding that
  - a. she had the right to reply to each at the time they were issued and did not do so, and
  - b. this new ability to respond to these memos is allowed only in settlement of this matter and does not alter the normal practices of the parties or establish any precedent on that practice.
- No General Release is required by the School District.
- ~~This Agreement does not contain any provision for the payment of attorneys fees related to this matter, nor should it be construed to do so.~~
- ~~Nothing contained in this Agreement is a right~~ to negate ~~of~~ Ms Rausa



06/28/2010 14:51 3154611243 RIVETTE RIVETTE PC PAGE 02/03

To the extent the memos in Ms Rausa's file do not address the unadmitted charges, she will have the opportunity to address same in the same time frame (within 10 days of this Agreement) to issue a concise reply to same.

This Agreement is not a waiver of either party's right to commence an action for any relief not specifically addressed herein.

Except as expressly admitted herein, neither party makes an admission with respect to the charges in this matter.

This Settlement Agreement shall be attached to the Charges and remain a part of Ms Rausa's file along with all response memos provided for herein, at the direction of the Hearing Officer.

[signature]
Dennis G. O'Hara

[signature]
Laura Harshbarger

[signature]
Judith A LaManna, Hearing Officer

Dated: June 28, 2010