UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DANIELLE RAUSA,

                              Plaintiff,

        v.                                        5:11-cv-1152

THE BOARD OF EDUCATION OF THE
NORTH SYRACUSE CENTRAL SCHOOL
DISTRICT and STEVEN WOLF, Principal
of Roxboro Middle School,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

        Plaintiff Danielle Rausa commenced the instant action against Defendants Board of

Education of the North Syracuse Central School District (the "District") and Steven Wolf,

asserting claims of gender-based discrimination and retaliation under Title VII, the New York

State Human Rights Law ("HRL"), and the Fourteenth Amendment; a violation of her

Fourteenth Amendment rights to due process of law; a violation of New York Education Law

§ 3020-a; and prima facie tort and the intentional infliction of emotional distress.  Presently

before the Court is Defendants' motion to dismiss the Amended Complaint pursuant to Fed.

R. Civ. P. 12.

## I.        FACTS

        Plaintiff commenced working for the District in 1997.  In April 2000, she was

granted tenure in Music Education.  Starting in June 2002, she was assigned to the Roxboro

Middle School ("Roxboro") as an instrumental and vocal music teacher.  Defendant Steven

Wolf became principal of Roxboro in January 2008.  It is claimed that, since Wolf became

president, Plaintiff was the subject of "unprofessional, unproductive, and unwarranted

criticisms," including reprimands placed in her personnel file.  Am. Compl. at ¶¶ 16-17.

Before Wolf became principal, Plaintiff had never received a reprimand.

Plaintiff first received a counseling memorandum dated February 25, 2008

concerning a disagreement she had with a male member of the music department.  Plaintiff

was disciplined for this incident whereas the male was not.  A second incident occurred in

June 2008 concerning Plaintiff's tone and statements she made to a male employee. The

male employee was not disciplined.  On October 20, 2008, a note was placed in Plaintiff's file

concerning a meeting Plaintiff had with the administration.  An additional memorandum was

placed in Plaintiff's file in November 2008 that basically repeated the contents of the October

20, 2008 document.

In June 2009, Plaintiff was served with charges pursuant to New York Education

Law § 3020-a.  The first charge alleged that Plaintiff failed to properly supervise the Drama

Club students during the 2008-09 school year.  The allegations concerned an incident

whereby a male student committed acts of sexual abuse against several female members of

the Drama Club.  The other charges alleged that Plaintiff failed to timely submit grades and

engaged in misconduct concerning her interactions with various male employees.

Commencing on September 8, 2009, Plaintiff was suspended without pay for thirty days.

Plaintiff returned in October 2009, at which time she was placed on intensive support with the

threat of remediation.  Am. Compl. at ¶ 33.  The charges were resolved through a settlement

agreement executed in June 2010.  In exchange for Plaintiff's admission concerning the

untimely submission of grades, the remaining charges were dropped and Plaintiff's unpaid suspension was reduced from thirty days to five days.[1]  Am. Compl. at ¶ 47-48.

In January 2009, Plaintiff was diagnosed with a brain tumor.  She was on disability leave from September 2010 through March 14, 2011, at which time she returned to work on a part-time basis.  Thereafter, she returned to work on a full-time basis.  It is claimed that since that time, Plaintiff was subjected to discriminatory animus and retaliatory behavior including threats of write-ups, multiple meetings with the Administration, unfair and improper evaluations, favoritism in teaching assignments, and favoritism towards male employees.

As a result of the foregoing, Plaintiff commenced the instant action claiming that Defendants: (1) engaged in discrimination in violation of Title VII; (2) permitted a hostile work environment in violation of Title VII; (3) treated Plaintiff disparately from similarly situated male employees in violation of Title VII; (4) retaliated against Plaintiff for engaging in protected activity; (5) discriminated against Plaintiff in violation of 42 U.S.C. § 1983; (6) violated Plaintiff's rights as guaranteed by the Equal Protection Clause of the Fourteenth Amendment; (7) deprived Plaintiff of her rights without due process of law, in violation of the Fifth and Fourteenth Amendments; (8) discriminated against Plaintiff in violation of the New York Human Rights Law; (9) retaliated against Plaintiff in violation of the New York Human Rights Law; (10) Defendant Wolf aided and abetted violations of the Human Rights Law; (11) violated New York State Education Law § 3020-s; (12) intentionally caused emotional distress; and (13) engaged in prima facie tortious conduct.

---

[1] Plaintiff had already served the thirty day suspension, but was reimbursed for twenty-five days of pay.

Presently before the Court is Defendants' motion to dismiss the Amended

Complaint pursuant to Fed. R. Civ. P. 12.  Plaintiff opposes the motion.

## II.        STANDARD OF REVIEW

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement

of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v.

Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct.

99 (1957)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations . . .  a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do."  Id. at 1964-65.  "Factual allegations must

be enough to raise a right to relief above the speculative level. . . on the assumption that all

the allegations in the complaint are true (even if doubtful in fact)."  Id. at 1965.  "'[T]he

pleading must contain something more . . . than . . . a statement of facts that merely creates

a suspicion [of] a legally cognizable right of action.'"  Id. at 1965 (quoting 5 C. Wright & A.

Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)).  "To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949

(2009) (quoting Twombly, 550 U.S. at 570).  A complaint does not suffice "if it tenders naked

assertions devoid of further factual enhancement."  Ashcroft, 129 S. Ct. at 1949.  Legal

conclusions must be supported by factual allegations.  Iqbal, at 1950.  "Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice."

Id. at 1949.  "A claim has facial plausibility when the plaintiff pleads factual content that

- 4 -

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 550 U.S. 557) (internal quotations omitted).

With this standard in the mind, the Court will address the pending motion to dismiss.

## III.    DISCUSSION

### a.    Title VII/New York Human Rights Law

#### 1.        Statute of Limitation

Defendants first move to dismiss on the ground that most, if not all, of Plaintiff's discrimination claims are barred by the applicable statute of limitations.  Plaintiff counters that her claims are timely because her causes of action accrued on June 28, 2010, the date she entered into a settlement agreement with the District concerning the charges against her.

To be timely, a charge of discrimination must be filed with the EEOC within 300 days of the alleged discriminatory act.  42 U.S.C. § 2000e-5(a); Lore v. City of Syracuse, — F.3d. —, —, 2012 WL 310839, at *31 (2d Cir. 2012).  "When, as in this case, a plaintiff's allegations of discrimination extend beyond the 300-day limitations period, the nature of the claim determines what consideration will be given to the earlier conduct." Petrosino v. Bell Atl., 385 F.3d 210, 220 (2d Cir. 2004).  "With respect to claims based on termination, failure to promote, denial of transfer, or refusal to hire . . . section 2000e-5(e)(1) precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period, even if other acts of discrimination occurred within the statutory time period." McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 75 (2d Cir. 2010) (internal quotations and citations

omitted); see also National Railroad Passenger Corporation v. Morgan, 536 U.S. 101, 122 S. Ct. 2061 (2002); Patterson v. County of Oneida, N.Y., 375 F.3d 206, 220 (2d Cir. 2004).

Plaintiff filed her charge of discrimination with the EEOC on April 11, 2011.[2] Accordingly, any discrete incidents that occurred more than 300 days prior to April 11, 2011 (i.e. June 15, 2010) are time-barred.  This includes the change in teaching assignment in 2008; the February 25, 2008, June 25, 2008, October 20, 2008, and November 11, 2008 reprimands/counseling memoranda; the charges served pursuant to N.Y. Educ. Law § 3020-a on June 16, 2009; and Plaintiff's suspension that commenced on September 8, 2009 and ceased on October 20, 2009.  The Court rejects Plaintiff's argument that her claims accrued on June 28, 2010 when she entered into a settlement agreement with the District concerning the charges against her. The cause of action begins to run "at the time the . . . [alleged discriminatory] decision was made and communicated to [the plaintiff]" even though the effects of the allege discriminatory decisions are not felt until a later time.  Delaware State College v. Ricks, 449 U.S. 250, 258, 101 S. Ct. 498 (1980).  The fact that there was a procedure by which the charges against Plaintiff were to be adjudicated does not alter the result.  Id. (rejecting the claim that the statute of limitations should commence after the conclusion of the grievance procedure).  "[T]he pendency of a grievance, or some other method of collateral review of an employment decisions, does not toll the running of the limitations period. . . . The existence of careful procedures to assure fairness in the

---

[2] Plaintiff's Amended Complaint alleges that the charge of discrimination was filed on April 11, **2010**.  Relying upon the actual charge of discrimination, which was filed on April 11, **2011**, Defendants point out that the use of the **2010** date likely was a typographical error.  In opposition to the motion to dismiss, Plaintiff does not dispute this.  Moreover, because Plaintiff relied on the charge of discrimination in her Amended Complaint and it is a public document, the Court may consider it in connection with the instant motion.  Because the document clearly indicates that it was filed in 2011, the Court will use that date.

[employment] decision should not obscure the principle that limitations periods normally commence when the employer's decision is made." Id. Here, the change in teaching assignment was effectuated when it was made known to Plaintiff at the time, the reprimands were made when they were placed in Plaintiff's file, and the decision to charge Plaintiff was made when she was served with the notice of the charges (and certainly no later than when the suspension was imposed). All these incidents occurred prior to June 15, 2010 and, therefore, are time-barred. See Woodruff v. National R.R. Passenger Corp., 403 Fed. Appx. 624 (2d Cir. 2010).

Similar reasoning applies to the claims against the District pursuant to the New York State Human Rights Law. New York Education Law § 3813(2-b) requires claims against a school district brought under the Human Rights Law to be commenced within one year. Matter of Amorosi v. South Colonie Ind. Cent. Sch. Dist., 9 N.Y.3d 367, 373 (2007). The instant action was commenced on September 27, 2011 and, accordingly, any events occurring prior to September 27, 2010 are time-barred as against the District.

Plaintiff next claims that she was subjected to a hostile work environment and, therefore, her claims are timely under the continuing violation theory.

> "Hostile work environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Morgan, 536 U.S. at 115, 122 S. Ct. 2061 (internal citation omitted). Accordingly, "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period."

McGullam, 609 F.3d at 75. Here, it is alleged that when Plaintiff returned to work in 2011 from her leave of absence, she was subjected to threats of write-ups, multiple meetings with

the administration; an improper evaluation; favoritism in teaching assignments; and "further favoritism shown toward male staff members the same as occurred prior to Plaintiff's medical leave of absence."  Because these allegations reference acts that transpired within the statutory time period, her hostile work environment claim is timely and may include consideration of conduct occurring prior to June 15, 2010.  Petrosino v. Bell Atlantic, 385 F.3d 210, 229 (2d Cir. 2004); Patresi v. New York State Unified Court System, 2010 WL 3781961, at *2 (E.D.N.Y. 2010); Urmey v. AT&T Corp., 2006 WL 2819627, at *2 (S.D.N.Y. 2006).

### 2.        Hostile Work Environment

Defendants next move to dismiss the hostile work environment claim on the ground that Plaintiff fails to allege conduct related to her gender and that the conduct is insufficiently severe or pervasive.  The standards governing a hostile work environment claim are well-settled.  The Second Circuit has explained that:

> a plaintiff seeking to establish a Title VII hostile work environment claim must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.  This severe or pervasive standard has objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive. Courts review the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

McGullam, 609 F.3d at 79 (internal quotations and citations omitted).  Of course, the plaintiff also must show that "the conduct at issue occurred 'because of the plaintiff's sex.'"  Id. at 79 n.6 (quoting Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007)).

Plaintiff's Amended Complaint (and which incorporated her Notice of Claim) alleges that the following instances comprised a hostile work environment:

a. the reprimands discussed above;

b. criticisms concerning Plaintiff's interactions with male employees, Am. Compl. at ¶ 16;

c. the charges pursuant to § 3020-a and resulting suspension;

d. the failure to reprimand any other personnel concerning the incident involving the male student and the female members of the Drama Club;

e. the failure to reprimand other teachers for the failure to timely submit grades;

f. removing Plaintiff from her instrumental position and moving her into a classroom vocal position and placing a non-tenured male teacher into the instrumental position;

g. refusing to speak directly with Plaintiff;

h. unilaterally changing the chorus from seventh grade only to both sixth and seventh grade;

i. prohibiting Plaintiff from operating the lights and sound for productions and concerts and, instead, giving that responsibility to the new Technology Club run by a male advisor;

j. disciplining Plaintiff for failing to cooperate with the male band director and leaving the auditorium in an inappropriate state after rehearsals;

k. allowing the Technology Club advisor to not attend club activities after school so he could watch his children attend other events, whereas Plaintiff was criticized for leaving Drama Club rehearsals;

l. accessing Plaintiff's Facebook profile without her consent;

m. refusing to meet with Plaintiff to discuss her year end summary;

n. refusing to provide Plaintiff with minutes of staff meetings, which were provided to male staff members;

o. attempting to fill Plaintiff's position as Drama Club director with a male employee;

p. refusing to respond to Plaintiff's complaints concerning the male technology advisor's failure to assist with technical support issues for students;

q. failing to respond to Plaintiff's complaint that a plan book and grade book were stolen from her classroom;

r. praising the male band and orchestra directors following a student performance while ignoring Plaintiff and the performance of her students;

s. scheduling a holiday pops concert and refusing to include the chorus that Plaintiff directed;

t. praising the band and orchestra performances (which were overseen by male members of the music department) in a bulletin while making "[l]ittle, if any, mention of the chorus that [Plaintiff] headed;"

u. disciplining Plaintiff in January 2010 for alleged unprofessional conduct towards Wolf's secretary;

v. refusing to provide adequate equipment and advisors for concerts Plaintiff was organizing;

w. publicly questioning the style of music Plaintiff chose to include in a student performance;

x. disciplining Plaintiff for failing to work constructively with the male members of the music department;

y. overturning Plaintiff's decision to remove a student from the Drama Club;

z. Wolf's taking credit for an event Plaintiff organized;

aa. ignoring Plaintiff's contributions to the school, despite her claimed successes;

bb. refusing to respond to various requests or questions submitted by Plaintiff;

cc. refusing to provide requested sound and lighting for a Drama Club production;

dd. Wolf taking credit for Plaintiff's organizing the seventh grade award night; and

ee. since Plaintiff returned to work in March 2011, she was subjected to:

(1) threats of write-ups;

(2) multiple meetings with the Administration;

(3) given an unfair and improper evaluation;

(4) favoritism in teaching assignments;

(5) instigation of a confrontation with a parent; and

(6) "further favoritism shown toward male staff members the same as occurred prior to Plaintiff's medical leave of absence," as exemplified by a male teacher being given a teaching assignment so he could do an internship and other preferential treatment involving this particular male staff member.

In their motion to dismiss, Defendants point to several factors suggesting that the conduct to which Plaintiff was subjected was unrelated to her gender. For example, Plaintiff conceded at her § 50-h examination that other female employees were not reprimanded for failing to timely turn in grades. Defendants also point out that other female employees were present during the sexual abuse incident at the Drama Club, but were not reprimanded. Defendants further note that any favoritism by Wolf was limited to three of his friends, thereby suggesting cronyism and not gender-based discrimination. Finally, Defendants note that many of the incidents on her list are simply unrelated to gender on their face.

While these examples demonstrate that Plaintiff's claims of a gender based discrimination may be weak and that she may have a difficult time ultimately proving that Defendants' actions were on account of her gender, that is not the standard by which to evaluate Plaintiff's Amended Complaint.[3] "At the pleading stage of the case, . . . plaintiff[]

---

[3] The Court declines Defendants' invitation to convert their motion into one for summary judgment at this early stage of the litigation. In any event, any such motion would be denied for failure to provide a statement of material facts as required by N.D.N.Y.L.R. 7.1(a)(3). Defendants are free to file a proper motion for summary judgment that complies with Fed. R. Civ. P. 56 and Local Rule 7.1.

need not plead a *prima facie* case of discriminated based on a hostile work environment, so long as [she provides] in the complaint a short and plain statement of the claim that shows that [the] plaintiff[] is entitled to relief and that gives the defendant[s] fair notice of plaintiff['s] claim for hostile work environment and the grounds upon which that claim rests." Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 242 (2d Cir. 2007).  "Plaintiff[] need not present a list of specific acts."  Id. at 241. The Amended Complaint alleges instances where Plaintiff was treated less favorably than male teachers.  For example, it is claimed that Plaintiff was removed from instrumental teaching and replaced by a male teacher.[4]  There also are claims involving altercations between Plaintiff and a male teacher where Plaintiff was reprimanded and the male teacher was not, despite the male having been "hostile, threatening, antagonizing and unprofessional."  Am. Compl. at ¶ 26.  There may be facts substantiating the allegation that Plaintiff received less favorable teaching assignments on account of her gender.  This is sufficient at this early stage of the litigation to state a claim of a hostile work environment on account of gender.

Defendants also move to dismiss on the ground that the alleged conduct is insufficiently severe or pervasive.  It has long been stated that Title VII does not place the Court in the role of a super personnel department.  Title VII is intended to eliminate unlawful employment practices; not impose a general civility code.  See Tepperwien v. Entergy Nuclear Operations, Inc., 63 F.3d 556, 568 (2d Cir. 2011).  The vast majority of incidents listed by Plaintiff are mere workplace annoyances, petty slights, general disagreements, lack of good manners, and problems that constitute minor incidents and trivial harms that would

---

[4] Although this is a discrete incident that, by itself, would be time-barred, discrete acts of discrimination may constitute evidence of a hostile work environment.  Petrosino, 385 F.3d at 229; Patresi, 2010 WL 3781961, at *2; Urmey, 2006 WL 2819627, at *2.

be insufficient to withstand summary judgment.  That being said, it cannot be said at this time

that the Amended Complaint fails to state a claim upon which relief may be granted.  There

may be other instances or more specific details not identified in the Amended Complaint or

Notice of Claim that expand upon the instant allegations and that would substantiate a claim

for a hostile work environment.  Moreover, the allegations must not be viewed in isolation, but

in their totality.  The Amended Complaint and Notice of Claim set forth a laundry list of

actions by Wolf that occurred over a relatively short period of time - from September 2008

through June 2010 - and resumed again upon her return from disability leave.  While it is

questionable whether these allegations are sufficient to withstand summary judgment or trial,

they are sufficient to state a claim and put Defendants on notice of the bases of the claim.

Moreover, because these incidents are alleged to have been perpetrated by Plaintiff's

supervisor, Defendant Wolf, the District is presumed to be responsible.  Kaytor v. Electric

Boat Corp., 609 F.3d 537, 546 (2d Cir. 2010).

### 3.    **Retaliation**

Defendants next move to dismiss the retaliation claim on the ground that any

alleged acts of retaliation are time-barred.  The Amended Complaint alleges that "Plaintiff

suffered adverse actions as a result of having engaged . . . [in protected activities when she

made internal discrimination complaints], including further reprimands, being deprived of

employment opportunities and having charges brought against her. . . . Am. Compl. at ¶ 79.

All of the alleged acts of retaliation occurred prior to June 15, 2010 and, therefore are

untimely.  The Amended Complaint does not allege any lost employment opportunities or

other actions occurring after her return from her leave of absence in March 2011.  The

Amended Complaint also fails to sufficiently allege any causal connection between any

protected activity and any timely conduct alleged to be retaliatory.  Accordingly, the retaliation claims are dismissed.

### 4.        Individual Liability

Defendant Wolf moves to dismiss the Title VII claims against him on the ground that there is no individual liability under that statute.  Plaintiff responds that case law supports individual liability under Title VII against supervisors.  Plaintiff's position is contrary to Second Circuit authority.  Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003) ("the district court's dismissal of plaintiff's Title VII claims against Gallagher in his personal capacity must be affirmed because under Title VII individual supervisors are not subject to liability.").  To the extent Wolf moves to dismiss the claims against him under the HRL, that motion is denied because Wolf is alleged to have been the person that caused the hostile work environment.  See Rizzo v. Niagara Mohawk Power Corp., 2006 WL 1742487, at *7 (and the cases cited therein for the proposition that a defendant who actually participates in the conduct giving rise to a claim of discrimination may be held personally liable under the HRL).

### b.    42 U.S.C. § 1983

### 1.        Liability of the District

The District moves to dismiss the claims brought pursuant to 42 U.S.C. § 1983 on the ground that Wolf was not a final policymaker and, therefore, his actions cannot be attributed to the District.  "District courts in the Second Circuit have found that a public school principal acts as a final policymaker to the extent that the ultimate harm that befell the plaintiff was under the principal's control."  Zambrano-Lamhaouhi v. New York City Bd. of Educ., — F. Supp.2d. —, —, 2011 WL 5856409, at *22 (E.D.N.Y. 2011) (and cases cited therein).  Because the day-to-day supervision of the school was under Wolf's control, he was

a final policymaker with respect to Plaintiff's claims of a hostile work environment.  He also was a final policymaker with respect to the issuance of the counseling memoranda (to which Plaintiff refers to as reprimands).  It was the Superintendent of Schools that issued the § 3020-a charges and he and the Board of Education (and not Defendant Wolff) are final policymakers for that purpose.

### 2.      Equal Protection

Defendants move to dismiss the discrimination claims asserted pursuant to the Fourteenth Amendment.  Claims of sex-based discrimination brought under the Fourteenth Amendment are analyzed in accordance with Title VII jurisprudence.  Hayut v. State Univ. of N.Y., 352 F.3d 733, 744-45 (2d Cir. 2003).  Accordingly, the preceding analysis concerning Title VII equally applies to Plaintiff's claims under the Fourteenth Amendment's Equal Protection Clause.

Because, however, § 1983 claims are subject to a three year statute of limitations, any conduct that occurred after September 27, 2008 is timely.  This includes certain of the counseling memoranda.  That being said, the Court finds that, with the exception of the hostile work environment claim previously discussed, the Amended Complaint fails to state a claim of gender-based discrimination based on any discrete incidents alleged to have transpired after September 27, 2008.  There is nothing about the October 20, 2008 counseling memorandum that plausibly suggests that it was based on Plaintiff's gender. That counseling memorandum discusses various issues pertaining to Plaintiff's desire to have a select chorus, other matters related to the chorus and the Drama Club, and the tone of a flyer issued by Plaintiff stating that her chorus is "not like your other chorus

experiences,"[5] and certain other concerns about Plaintiff's performance.  Moreover, this incident does not constitute an adverse employment action.  The November 10, 2008 counseling memorandum was a restatement of the issues of the October 20, 2008 memorandum and, similarly, cannot plausibly be construed as having been issued on account of Plaintiff's gender or to have constituted an adverse employment action.

Plaintiff also claims that the N.Y. Educ. Law § 3020-a charges against her were discriminatory.  The charges were issued in accordance with § 3020-a.  That section provides that charges must be in writing and filed with the clerk or secretary of the appropriate school district.  § 3020-a(1).  The clerk or secretary of the district then notifies the school board of the charges. § 3020-a(2)(a).  The board then determines, by majority vote, whether probable cause exists to bring a disciplinary proceeding against the employee.  Id.  If such a determination is made, a written statement specifying the charges and the applicable maximum penalties are served on the employee.  Id.  Significantly, the decision whether to pursue a disciplinary proceeding is made by the school board.  There is nothing in Plaintiff's Amended Complaint plausibly suggesting that the school board was motivated by Plaintiff's gender or that it was unduly influenced, or that its decision was otherwise tainted, by any gender-based discriminatory motive that can be attributed to Wolf, or that Wolf played a meaningful role in the probable cause determination.  Bickerstaff v. Vassar College, 196 F.3d 435, 450 (2d Cir. 1999).[6]  The Amended Complaint does not plausibly allege any other

---

[5] Defendants believed this statement to negatively reflect on other chorus teachers, insinuating that students experienced poor experiences with the other chorus teachers.

[6] Moreover, the allegations of a gender-based discriminatory animus on the part of Wolf is weak at best.

discrete incidents that constitute adverse employment actions and that could be said to have been on account of her gender.  Accordingly, any such claims are dismissed.

### c.   Due Process

Plaintiff's Seventh Cause of Action alleges that she was deprived of her protected property interest in her employment, tenure rights, and her good name without due process of law.  The bases for these claims include the reprimands, the § 3020-a charges, and the suspension.  Defendants argue that Plaintiff does not have any constitutionally protected property interests and, even if she did, she was afforded all the process that was due.

Because Plaintiff was a tenured teacher, she had rights guaranteed by New York State Education Law § 3020-a.  That section "provides the exclusive method of disciplining a tenured teacher in New York State."  Tebordo v. Cold Spring Harbor Cent. Sch. Dist., 126 A.D.2d 542, 510 N.Y.S.2d 665 (2d Dept. 1987).  "Under the statute, a tenured teacher is entitled to a due process hearing prior to the imposition of a . . . suspension for a fixed time without pay. . . ."  Id. (quoting Educ. Law § 3020-a(4)).  Because Plaintiff was suspended without pay and her conduct did not come within any of the statutorily prescribed exceptions to the right to a pre-suspension hearing, see Educ. Law § 3020-a(2)(b), it appears she was entitled to a due process hearing before being suspended without pay.  The Amended Complaint alleges that she did not receive a hearing until after the suspension and, therefore, states a claim for a violation of her right to due process of law.[7]

---

[7] Although Defendant argues that the protections afforded by the statute may be modified if a collective bargaining agreement so permits,§ 3020(4) limits that right to agreements between "the city school district **of the city of New York** and any employee organization representing employees or titles that are or were covered by any memorandum of agreement executed by such city school district and the united federation of teachers."  The school district of the City of New York is not involved here.  The cases on which Defendants rely are based on Matter of Bd. of Educ. of City of Rochester v. Nyquist, 48

(continued...)

The reprimands, however, do not implicate a protected property interest and, therefore, cannot form the basis of a due process claim.  In Holt v. Bd. of Ed. of Webutucl Centr. Sch. Dist., 52 N.Y.2d 625 (1981), the New York Court of Appeals held that written communications that have become a permanent part of tenured teachers' personnel files are not the equivalent of a disciplinary reprimand that can only be issued after formal charges and a hearing in accordance with § 3020-a.  Rather, such documents "critical as they may be of the respective teacher's job performance, amount to nothing more than administrative evaluations which the supervisory personnel of the school district have the right and duty to make as an adjunct to their responsibility to supervise the faculty of the schools."  Id. at 631. Section 3020-a applies only to "formal discipline."  Id. at 632.  Upon review of the "reprimands"[8] in this case it is clear that they are of the sort found by the New York Court of Appeal in Holt to be insufficient to warrant full due process protection.  Accordingly, the claims relating to the reprimands are dismissed.

Plaintiff also claims a due process violation in connection with the charges instituted against her pursuant to § 3020-a.  This claim must be dismissed because Plaintiff received all the process to which she was due.  She was served with written charges and had the opportunity for a hearing in accordance with § 3020-a.  No such hearing was held

---

[7](...continued)
N.Y.2d 97, 103 (1979), which noted that "the withholding of a teacher's pay during a period of suspension is nowhere proscribed. . . ."  This is how the statute read at the time of that case.  The statute was amended in 1994.  See N.Y. L.1994, c. 691, § 2.  The current version of § 3020-a clearly has such a proscription.

[8] Plaintiff clearly references and relies upon the "reprimands" in her Amended Complaint. Accordingly, the Court may consider their contents in reviewing the motion to dismiss.

because, with the advice of counsel, Plaintiff entered into a settlement agreement with the District disposing of the charges.

Lastly, Plaintiff appears to assert a "stigma plus" claim.  To prevail on a stigma-plus claim, Plaintiff must prove (1) the utterance of a statement that is injurious to reputation, that is capable of being proved false, and that is claimed to be false, and; (2) some tangible and material state-imposed burden in addition to the stigmatizing statement.  Monserrate v. New York State Senate, 599 F.3d 148, 158 (2d Cir. 2010); Velez v. Levy, 401 F.3d 75, 87–88 (2d Cir. 2005).  Plaintiff cannot maintain such a claim because she was afforded a name-clearing hearing through the procedures afforded her by § 3020-a.[9]  In the absence of a § 3020-a hearing, Plaintiff had an Article 78 proceeding available to her.  Guerra v. Jones, 421 Fed. Appx. 15 (2d Cir. 2011).

### d.    § 3020-a

Plaintiff claims that Defendants violated § 3020-a by suspending her without pay before affording her a hearing.  Defendants move to dismiss this claim on the ground that it was waived in the parties' settlement agreement and that it is barred by the four month statute of limitations governing Article 78 proceedings.

The failure to follow the procedures of § 3020-a are remediable by an Article 78 proceeding.  See Hickey v. New York City Dept. of Educ., 17 N.Y.3d 729 (2011) (a challenge to the issuance of disciplinary letters without a prior hearing was made pursuant to Article 78).  Article 78 proceedings are governed by a four month statute of limitations.  N.Y.C.P.L.R.

---

[9] It is of no moment that, because of the settlement agreement, Plaintiff did not ultimately receive such a hearing.  The hearing was available to her if she wished to pursue it.  She made the determination to forego the hearing in lieu of the settlement.

§ 217(1).  The instant action was commenced long after the determination to be reviewed became final and binding on Plaintiff.  Accordingly, any claim pursuant to § 3020-a is time-barred.

### e.    Intentional Infliction of Emotional Distress

Defendants move to dismiss Plaintiff's claim for the intentional infliction of emotional distress.  A claim for intentional infliction of emotional distress requires a showing of: (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress.  Conboy v. AT&T Corp., 241 F.3d 242, 258 (2d Cir. 2001); Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999).  There can be liability under this tort only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.  Stuto, 164 F.3d at 827.  The allegations in the Amended Complaint do not plausibly allege a course of conduct so extreme or outrageous as to be utterly intolerable in a civilized society.  As previously discussed, most of Plaintiff's complaints relate to typical workplace frustrations, disagreements, and annoyances and are barely sufficient to sustain her claims of gender based discrimination.  This claim must be dismissed.

### f.    Prima Facie Tort

Defendant moves to dismiss the claim of prima facie tort.  Under New York law, there are four elements to a claim of prima facie tort:  (1) an intentional infliction of harm; (2) without excuse or justification and motivated solely by malice; (3) resulting in special damages; (4) by an act that would otherwise be lawful.  Evergreen Pipeline Constr. Co. v.

Merritt Meridian Const. Corp., 95 F.3d 153, 161 (2d Cir. 1996).  This claim must fail because, based on Plaintiff's own allegations, malice was not the sole motivation.  Rather, as Plaintiff alleges, much of Wolf's motivation is claimed to be his preference for male employees.  See Notice of Claim at ¶¶ 31, 56(a); 56(e); 56(m); 56(o); see also Burns Jackson Miller Summit & Spitzer v. Lindner, 59 N.Y.2d 314, 332 (1983) ("there is no recovery in prima facie tort unless malevolence is the sole motive for defendant's otherwise lawful act. . . .").  Further, "special damages must be alleged with sufficient particularity to identify actual losses. . . . [R]ound sums without any attempt at itemization are insufficient."  Bear, Stearns Funding, Inc. v. Interface Group–Nevada, Inc., 361 F.Supp.2d 283, 306 (S.D.N.Y. 2005).  Plaintiff has not alleged any such special damages.  See Jain v. McGraw-Hill Companies, Inc., — F. Supp.2d —, 2011 WL 5120261, at *6 (S.D.N.Y. 2011).

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.  Defendants' motion is GRANTED insofar as the following are dismissed:

a.    the disparate treatment claims under Title VII and the Fourteenth Amendment;

b.    the Human Rights claims against the District;

c.    the individual claims against Wolf under Title VII;

d.    the retaliation claims;

e.   the due process claims with respect to the reprimands, Plaintiff's reputation, and the § 3020-a charges;[10]

f.   the claim pursuant to § 3020-a;

g.   the intentional infliction of emotional distress claim; and

h.   the prima facie tort claim.

In all other respects, Defendants' motion is DENIED.

IT IS SO ORDERED.

Dated: March 21, 2012


Thomas J. McAvoy
Senior, U.S. District Judge

---

[10] Plaintiff does state a due process claim with respect to her suspension without pay.