UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DANIELLE RAUSA,

Plaintiff,

v.

THE BOARD OF EDUCATION OF THE NORTH SYRACUSE CENTRAL SCHOOL DISTRICT, AND STEVEN WOLF,

Defendants.

Civil Action
No. 5:11-cv-01152-TJM-AJB

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Bond, Schoeneck & King, PLLC
Attorneys for Defendants
One Lincoln Center
Syracuse, NY 13202
Telephone: 315-218-8000

Of Counsel: Laura H. Harshbarger, Esq.
Kristen E. Smith, Esq.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1

FACTUAL BACKGROUND ........ 1

ARGUMENT ........ 4

I. PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM IS FACTUALLY AND LEGALLY FLAWED ........ 4

A. Plaintiff Cannot Show That the Alleged Harassment Occurred Because of Her Gender ........ 4

1. The Limited Role of the Time-Barred Events. ........ 5

2. Male and Female Administrators Were Involved in Decisions about Plaintiff's Employment. ........ 7

3. Female Co-Workers Complained Equally About Plaintiff's Behavior. ........ 8

4. Plaintiff's Comparisons to Male Colleagues Are Unpersuasive. ........ 9

5. Plaintiff Admissions Show That Many Of Her Allegations Have No Plausible Connection to Gender. ........ 11

B. Plaintiff's Own Testimony Confirms That Many of Her Allegations Are Untrue. ........ 13

C. Plaintiff's Harassment Allegations Are Not Objectively Hostile. ........ 15

II. PLAINTIFF'S HUMAN RIGHTS LAW CLAIMS AGAINST WOLF MUST ALSO BE DISMISSED. ........ 18

III. PLAINTIFF'S § 1983 DUE PROCESS CLAIM IS DEFICIENT AS A MATTER OF LAW ........ 19

A. Plaintiff is Bound by the Union's Waiver of Her Due Process Rights. ........ 19

B. Plaintiff Individually Waived Any Due Process Claim Related to Her Suspension via a Settlement Agreement ........ 20

C. State Courts Have Held that Unpaid Suspensions Are Still Permitted Under Education Law §3020-a ........ 22

D. Plaintiff Was Afforded Adequate Pre- and Post-Deprivation Process Related to her Suspension. ........ 23

CONCLUSION ........ 25

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Abramovich v. Board of Ed. of Central School District Number 1*,
46 N.Y.2d 450 (1979) .......... 20

*Alfano v. Costello,*
294 F.3d 365 (2d Cir. 2002) .......... 5

*Brady v. A Certain Teacher*,
166 Misc. 2d 566 (Sup. Ct. Suffolk Co. 1995) .......... 23

*Brown v. Henderson,*
257 F.3d 246 (2d Cir. 2001) .......... 4

*Bryant v. Delphi Auto. Sys. Corp*.,
2010 U.S. Dist. LEXIS 26578 (W.D.N.Y. Mar. 22, 2011) .......... 10, 19

*Bundschuh v. The Inn on the Lake Hudson Hotels, LLC*,
2012 U.S. Dist. LEXIS 158443 (W.D.N.Y. Nov. 5, 2012) .......... 5

*Burhans v. County of Putnam*,
2011 U.S. Dist. LEXIS 31999 (S.D.N.Y. Mar. 25, 2011) .......... 24

*Cleveland Board of Ed. v. Loudermill*,
470 U.S. 532 (1985) .......... 24

*De La Rosa v. City of New York Police Dept.,*
2010 U.S. Dist. LEXIS 112770 (S.D.N.Y. Oct. 22, 2010),
*affirmed* 2012 F. App'x 73(2d Cir. 2012) .......... 18

*DeCintio v. Westchester County Medical*,
807 F.2d 304 (2d Cir. 1986), *cert. den.*, 484 U.S. 825 (1987) .......... 9

*DeLain v. Governor's Office of Employee Relations*,
266 A.D.2d 627 (3d Dep't 1999) .......... 20

*Divers v. Metropolitan Jewish Health Sys*.,
2009 U.S. Dist. LEXIS 2312 (E.D.N.Y. Jan. 14, 2009),
*affirmed* 383 F. App'x 34 (2d Cir 2010) .......... 5

*Droutman v. New York Bloud Ctr*.,
2005 U.S. Dist LEXIS 42951 (E.D.N.Y. Jul. 27, 2005) .......... 10

*Elmore v. Mills*,
296 A.D.2d 704 (3d Dep't 2002) .......... 22, 23

*Fisher v. Vassar College*,
114 F.3d 1332 (2d Cir. 1997) .... 9

*Fleming v. MaxMara USA, Inc.*,
371 F. App'x 115 (2d Cir. 2010) .... 18

*Foster v. Dalton*,
71 F.3d 52 (1st Cir. 1995) .... 9

*Grandi v. New York City Transit Authority*,
977 F. Supp. 590, 594-95 (E.D.N.Y. 1997) .... 20

*Harris v. Forklift Sys., Inc.*,
510 U.S. 17, 114 S. Ct. 367 (1993) .... 15

*Harris v. New York City. Dep't of Homeless Svcs.*,
1998 U.S. Dist. LEXIS 5865 (S.D.N.Y. Apr. 28, 1998) .... 9

*Magadia v. Napolitano*,
2009 U.S. Dist. LEXIS 30926 (S.D.N.Y. Feb. 26, 2009) .... 6

*Mathews v. Elbridge*,
424 U.S. 319 (1976) .... 23

*Matter of Board of Ed. of City of Rochester v. Nyquist*,
48 N.Y.2d 97 (1979) .... 22

*McWhite v. New York City Housing Auth.*,
2008 U.S. Dist. LEXIS 29145 (E.D.N.Y. Apr. 10, 2008) .... 18

*National Railroad Passenger Corporation v. Morgan*,
536 U.S. 101, 113-14, 122 S. Ct. 2061, 2072-73 (2002) .... 4

*O'Connor v. Pierson*,
426 F.3d 187,197 (2d Cir. 2005) .... 24

*Oncale v. Sundowner Offshore Services, Inc.*,
523 U.S. 75, 118 S. Ct. 998 (1998) .... 4, 15

*Romano v. Canuteson*,
11 F.3d 1140 (2d Cir. 1993) .... 19

*Szoke v. Carter*,
165 F.R.D. 34 (S.D.N.Y. 1996) .... 24

*Ware v. City of Buffalo*,
186 F. Supp. 2d 324 (W.D.N.Y. 2001) .... 23, 24

*Woodward v. TWC Media Solutions*,
2011 U.S. Dist. LEXIS 1536 (S.D.N.Y. Jan. 4, 2011) .......................................................... 18

**STATUTES**

Education Law §3020-a ........................................................................................................ passim

## PRELIMINARY STATEMENT

Defendants, the Board of Education of the North Syracuse Central School District (the "Board") and Steven Wolf ("Wolf"), respectfully move for summary judgment, dismissing Plaintiff Danielle Rausa's ("Rausa's" or "Plaintiff's") Amended Complaint in its entirety.

This case originated as a thirteen count complaint. Defendants moved for dismissal for failure to state a claim, and this Court granted Defendants' motion on all but three claims. All that remains is: (1) a hostile work environment claim against the Board under Title VII; (2) a Section 1983 due process claim regarding an unpaid suspension; and (3) an aiding and abetting discrimination claim against Wolf under the New York State Human Rights Law ("NYHRL"). Having been allowed a full and fair opportunity for discovery, Plaintiff cannot substantiate any of these claims. Defendants' motion for summary judgment dismissing the remainder of Plaintiff's Amended Complaint should be granted.

## FACTUAL BACKGROUND[1]

Plaintiff Danielle Rausa is a tenured music teacher employed by the North Syracuse Central School District (the "District"). She has been employed since 1997, and has been assigned to Roxboro Road Middle School (RRMS) since 2002. On January 28, 2008, Wolf became Principal of RRMS. The District also employed one to two Associate (or Vice) Principals during the time period relevant to this case, including Ellen Hardy ("Ms. Hardy"), who retired in August 2008; Linda Jackson ("Ms. Jackson), who was hired in July 2008 and remains in the position; and Kathleen Gramet ("Ms. Gramet"), who served on an interim basis from spring 2009 through the end of 2010.

[1] Due to the large number of factual allegations presented by Plaintiff, space does not permit a detailed, chronological explanation of each and every allegation in this background section. Defendants, therefore, provide only a short overview of Plaintiff's employment here. Additional details regarding Plaintiff's factual allegations are addressed throughout the Argument section of the brief, as well as in Defendants' statement of undisputed material facts, and supporting affidavits.

Plaintiff brings this lawsuit to complain about a limited period of her employment history.

In February 2008, during a department meeting, Plaintiff became "heated" and behaved in a way Associate Principal Ellen Hardy found offensive and unprofessional. Deposition of Plaintiff, January 3, 2013 ("Pl. 2013 Dep.") at 22; Affidavit of Ellen Hardy ("Hardy Aff.") ¶¶ 9-11. Ms. Hardy issued her a counseling memorandum for this incident. Hardy Aff. ¶ 15; Ex. B. Also in the spring of 2008, Plaintiff was informed that she would be reassigned from teaching to instrumental lessons/band to teaching classroom music/chorus. Pl. 2013 Dep. at 50-52. This was recommended by Director of Fine Arts Dr. David Morton for programmatic reasons and resulted in no loss in pay or benefits for Plaintiff. Affidavit of David Morton ("Morton Aff.") ¶¶ 20-21, Ex. A; Pl. 2013 Dep. at 158-59. Nevertheless, Plaintiff was upset by this change and angrily confronted a colleague about it. Pl. 2013 Dep. at 42. Plaintiff was counseled for this incident by Director of Human Resources Annette Speach in June 2008. Pl. 2013 Dep. at 42-43; Affidavit of Annette Speach ("Speach Aff.") ¶¶ 19-20; Ex. B. In the fall of 2008, Plaintiff, having begrudgingly returned to the chorus teaching role, created a flyer disrespectful of the previous chorus teacher and advertising the formation of a select chorus that she had been told was not permitted. Wolf counseled Plaintiff about this in October 2008.[2] Affidavit of Steven Wolf ("Wolf Aff.") ¶¶ 13; 16-17; Speach Aff. ¶¶ 21-22; Ex. C, D.

In the spring of 2009, several incidents led the District to serve disciplinary charges against Plaintiff in accordance with Section 3020-a of the Education Law ("3020-a"). Speach Aff. ¶ 31; 36; Ex. E. In March 2009, a male student engaged in sexually inappropriate behavior toward female students during Drama Club rehearsals, which are supervised by Plaintiff. Deposition of Plaintiff,

[2] There is a separate document also labeled "counseling memorandum" dated November 10, 2008. Speach Aff. Ex. D. The October and November documents address the same incident and are therefore considered by all parties to be just one counseling incident. Pl. 2013 Dep. at 79. This is referred to throughout this brief as the October/November counseling memorandum.

March 18, 2011 ("Pl. 2011 Dep.") at 85-88; 101. Astonishingly, just days after this abuse was reported, Plaintiff left the building in the middle of a Drama Club rehearsal to take her daughter to an audition. Pl. 2013 Dep. at 122. She did not have permission to do so. Pl. 2013 Dep. at 124-25; Wolf Aff. ¶ 26. Plaintiff was also inexplicably derelict in entering grades for her students, including not entering any grades at all for any students for an entire marking period. Speach Aff. ¶ 29; Pl. 2013 Dep. at 126. Additionally, Plaintiff continued to behave with a lack of professionalism and collegiality, including airing her disputes with her colleagues to students and parents. Speach Aff. ¶ 31(D).

Plaintiff was offered a three-day suspension to informally resolve the above concerns. Speech Aff. ¶ 35; Pl. 2013 Dep. at 135-37. Plaintiff declined. *Id.* Thereafter, the Board of Education voted to prefer formal 3020-a Charges. Speach Aff. ¶ 36; Ex. E. The Charges were later amended to add another specification when it was discovered that Plaintiff had failed to enter grades for certain students in an earlier marking period. Speach Aff. ¶¶ 43-46; Ex. I. The Charges called for Plaintiff to be disciplined with a 30 day suspension (or a 10 day suspension if she elected not to have a formal 3020-a hearing). Speech Aff. ¶ 38. The Charges did *not* request her termination. Pl. 2013 Dep. at 131-32.

Pursuant to the teachers' collective bargaining agreement ("CBA"), the District may suspend a teacher in advance of a formal 3020-a hearing. Speach Aff. ¶ 39; Ex. F. In September 2009, Plaintiff served the 30-day unpaid suspension. Pl. 2013 Dep. at 36.

In advance of the 3020-a hearing, on June 28, 2010, the parties entered into a Settlement Agreement. Speach Aff. ¶ 50; Complaint Ex. C. Plaintiff admitted to one of the charges regarding the submission of late grades and further agreed that all charges would remain in her personnel file. *Id*. The unpaid suspension was reduced from 30 to five days, and Plaintiff was reimbursed for the 25-day difference. *Id.*; Pl. 2013 Dep. at 138. Accordingly, no 3020-a hearing was held.

Wolf continued to be Plaintiff's direct supervisor through the fall of 2011. Wolf. Aff. ¶ 31. Despite that, following Plaintiff's return from her suspension in October 2009, she was never again issued a counseling memorandum, disciplined or suspended. Pl. 2013 Dep. at 36-37.

As is clear from the Amended Complaint, Plaintiff blames Wolf for all of her troubles, and she views every aggravation and unsatisfactory interaction as worthy of redress.

## ARGUMENT

### I. PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM IS FACTUALLY AND LEGALLY FLAWED

Plaintiff alleges that she experienced a work environment that was hostile and discriminatory because she is female. Amended Complaint ¶ 66. Although she provides the Court with a laundry list of complaints, the list disintegrates in the light of discovery. Plaintiff cannot show that *any* of the incidents occurred because she was a woman. This alone requires dismissal of her claim. Further, Plaintiff's own testimony confirms that many of her allegations are simply untrue. Those few allegations that survive that culling are nothing more than petty workplace gripes and disappointments that fall dramatically short of the bar of severity or pervasiveness required to avoid summary judgment. For all these reasons, Plaintiff's Title VII hostile work environment claim is defective and must be dismissed.

#### A. Plaintiff Cannot Show That the Alleged Harassment Occurred Because of Her Gender

Plaintiff's hostile work environment claim is fatally flawed because there is absolutely no evidence that any of the alleged decisions or incidents were related in any way to her gender. Title VII is not "a general civility code"; only harassing conduct that is motivated by a person's status in a protected category is actionable. *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80, 118 S. Ct. 998, 1002 (1998). Hostile work environment claims must fail where there is no evidence that the harassing conduct is related to a person's gender. *See, e.g., Brown v. Henderson,* 257 F.3d 246, 254-56

(2d Cir. 2001); *Bundschuh v. The Inn on the Lake Hudson Hotels, LLC*, 2012 U.S. Dist. LEXIS 158443, at *21-23 (W.D.N.Y. Nov. 5, 2012). Thus, the burden is squarely on Plaintiff to present evidence sufficient to convince a reasonable jury that the decisions and incidents she complains about were directed at her because she is a woman. She cannot meet this burden.

Plaintiff's long list of factual allegations does not contain a single allegation that suggests a link to gender on its face. There are no allegations that anyone made a sexual comment or made a derogatory comment about Plaintiff for being female. Plaintiff makes only facially gender-neutral allegations. While "facially-neutral incidents may be considered in a hostile work environment analysis," there must be "some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory." *Alfano v. Costello,* 294 F.3d 365, 378 (2d Cir. 2002). Here, Plaintiff fails to muster *any* evidence, circumstantial or direct, to infer that Wolf or the District were motivated by discriminatory animus.

The burden of proof is *not* on the District to address each and every individual factual allegation and affirmatively prove why each act by the District or Wolf was gender neutral. *See Divers v. Metropolitan Jewish Health Sys*., 2009 U.S. Dist. LEXIS 2312, at *51-52 (E.D.N.Y. Jan. 14, 2009), *affirmed* 383 F. App'x 34 (2d Cir 2010) (plaintiff must do more than speculate as to discriminatory animus). However, to underscore the utter weakness of Plaintiff's claim, the District will lay out the many reasons why, based on the undisputed record evidence, there is no way a reasonable juror could conclude that the events about which she complains occurred because of her gender.

**1. The Limited Role of the Time-Barred Events.**

We begin where we should: at the beginning. However, the beginning in this story consists of time-barred discrete acts. As this Court recognized in its earlier Decision and Order, all three

counseling memoranda (in February, June and November 2008) and the 3020-a charges (June/September 2009) are time-barred for purposes of a disparate treatment claim.

The lesson of *National Railroad Passenger Corporation v. Morgan* is that a discrete act is subject to its own statute of limitations. 536 U.S. 101, 113-14, 122 S. Ct. 2061, 2072-73 (2002). *Morgan* stands for the obvious principle that plaintiff cannot save time-barred discrete acts by stringing them together and designating them a hostile environment. As one district court explained:

> Hostile work environment is not a vehicle for resurrecting time-barred claims of discrimination and retaliation; it is a wholly separate cause of action designed to address other types of work place behavior, like constant jokes and ridicule or physical intimidation. The plaintiff cannot piggyback the discrete acts about which he complains onto hostile work environment in order to make them actionable.

*Magadia v. Napolitano*, 2009 U.S. Dist. LEXIS 30926, at *47-48 (S.D.N.Y. Feb. 26, 2009).

For this reason, the potential evidentiary value of the time-barred discrete incidents is extremely limited. At most, they may be used as reference for contextual purposes, but they cannot be themselves a part of Plaintiff's hostile environment claim.

Even if one considers the counseling memoranda and 3020-a charges as context, this does nothing to advance Plaintiff's burden of proving a gender link. This Court previously found that Plaintiff had failed to even plausibly suggest that the counseling memoranda and 3020-a charges were discriminatorily motivated. Decision & Order (Docket No. 23), at p. 16-18. As discussed below, discovery has served only to reinforce that there is no suggestion of gender discriminatory bias in these time-barred acts.

### 2. Male and Female Administrators Were Involved in Decisions about Plaintiff's Employment.

Plaintiff alleges that Wolf "targeted" her for adverse treatment soon after his employment began in January 2008.[3] Complaint ¶ 16. She points to her three counseling memos (February, June and October/November 2008), as well as the 3020-a charges served in June 2009. Complaint ¶¶ 20-21, 24, 28; 44. The record confirms, however, that it was not Wolf, but various female administrators who were behind the issuance of most of this counseling and discipline.

The first, in February 2008, was issued by female Associate Principal, Ellen Hardy, based on upon her first-hand observations of Plaintiff's aggressive, unprofessional behavior in a music department meeting. Hardy Aff. ¶¶ 5-18; Ex. B. The counseling memorandum was reviewed and approved by another female administrator, the Director of Human Resources Annette Speach. Speach Aff. ¶ 11. Wolf had no involvement in the issuance of this counseling memo. Hardy Aff. ¶ 15; Wolf Aff. ¶ 4. The second, in June 2008, was issued by Ms. Speach and resulted from Ms. Speach's investigation and assessment of a complaint filed Plaintiff's co-worker, Mark Bossert, regarding a confrontation between them. Speach Aff. ¶¶ 17-20; Ex. B.

The third counseling memo, in October/November 2008, was issued by Wolf. Wolf. Aff. Ex. C. Plaintiff had been told that a select chorus would not be permitted but nevertheless advertised for one and did so in a manner disrespectful of the previous chorus teacher. *Id.* ¶ 13; Ex. B. Wolf consulted with Ms. Speach about this, and both determined that a letter of counsel was appropriate. *Id.* ¶¶ 16-18.

[3] To support that timeline, she alleges that prior to Wolf's arrival, she "always had a constructive and collegial relationship…with her colleagues and fellow teachers." Complaint ¶ 15. Plaintiff neglects to include in her rendition of the facts that she had a significant personal conflict with a fellow *female* music teacher in another building. This situation reached the point that Plaintiff and the co-worker were counseled in 2002 by the principal, Bernard Campbell. Thus, the actual story is that Plaintiff has had trouble in two different buildings and working under two different principals getting along with her male and female co-workers. Morton Aff. ¶ 9; Speach Aff. ¶ 8.

Similarly, the circumstances surrounding the issuance of 3020-a disciplinary charges support an inference that gender played no role. The underlying investigation and recommendation to bring disciplinary charges was made by Ms. Speech, in consultation with Superintendent Dr. Jerome Melvin, not Wolf. Speach Aff. ¶ 33; Wolf Aff. ¶ 28. The ultimate decision to bring the charges was made by vote of the Board of Education, which was comprised of a majority of women at the time. Speach Aff. ¶¶ 36-37.

Plaintiff attempts to attribute every adverse workplace decision to Wolf. But this overlooks the undisputed reality that it was a host of administrators—male and female alike—who took issue with and addressed Plaintiff's conduct. No reasonable jury could possibly conclude that an entire team of female administrators conspired with Wolf to counsel and eventually discipline Plaintiff *because she is a woman*.[4] To the extent these time-barred discrete acts provide background context of anything, the context they create is that male and female superiors agreed that Plaintiff had engaged in conduct worthy of counsel and discipline.

**3. Female Co-Workers Complained Equally About Plaintiff's Behavior.**

It is also significant that Plaintiff's female co-workers in the music department, including the other two female music teachers Robyn Launt and Kristen Kopf, were also bothered by Plaintiff's behavior and complained to Wolf and other administrators. Affidavit of Robyn Launt

[4] There is yet more reason to believe that none of the counseling memoranda or 3020-a charges have no link to gender. Merely by way of example, Plaintiff complains that one of the 3020-a charges was for her failure to enter grades. Complaint, ¶ 45. However, when asked which other teachers did the same thing without discipline, she named only *other women*. Pl. 2011 Dep. at 118-19. Similarly, Plaintiff complains that she was the only one brought up on 3020-a charges for the Drama Club sexual harassment incident. She testifies, however, that the only other faculty members she viewed as also responsible for directing the Drama Club production were two *women* – Robyn Launt and Jane Ginsburg. She further admitted that the male teacher who was present at the rehearsals, Joe Clayton, was *not* responsible for supervising Drama Club students. Pl. 2011 Dep. at 89; 93-95.

("Launt Aff.") ¶16, Exs. A-C; Affidavit of Kristen Kopf ("Kopf Aff.") ¶¶ 9-10; Ex. A. While Plaintiff attempts to paint a picture of a music department divided by gender, with Wolf taking the side of a few male teachers, the evidence does not support this theory. Instead, the record evidence, which Plaintiff cannot dispute, is that male *and female* music teachers complained about Plaintiff's behavior, and Wolf and other administrators were simply addressing these reports.

**4. Plaintiff's Comparisons to Male Colleagues Are Unpersuasive.**

Plaintiff's gender-based theory is premised on a comparison between herself and three male faculty members whom she refers to as the "boys club" (Patrick Wallace, Mark Bossert and Joseph Clayton). She believes these men were treated more favorably by Wolf. However, to the extent she was not identically treated, this is not evidence of any gender-based motivation, as the undisputed facts show that she is not similarly situated to any of these men.[5]

Plaintiff compares herself to Mr. Wallace, complaining that she was counseled regarding her behavior at a February 2008 music department meeting, while he was not. Complaint Ex. A, ¶ 56(e). However, that is because the *woman* who observed the incident, Ms. Hardy, concluded Mr. Wallace was not at fault. Hardy Aff. ¶ 12; Launt Aff. ¶ 14(e). Additionally, although Mr. Wallace's and Plaintiff's teaching roles were switched, this decision was based on multiple legitimate, educational reasons (including Ms. Rausa's strengths as a vocalist) as determined by the

[5] At best, Plaintiff's allegations are that she was treated less favorable because she was not a member of Wolf's circle of close friends. It is axiomatic that an employer can make personnel decisions for many unsavory reasons, even if such decisions are based on reasons that are "unbecoming or small minded, such as back-scratching, log-rolling, horse-trading, institutional politics, envy, nepotism, spite, or personal hostility." *Fisher v. Vassar College*, 114 F.3d 1332, 1337 (2d Cir. 1997). Courts have routinely dismissed employment discrimination claims when the decision at issue was based on personal relationships rather than protected categories. *See, e.g., DeCintio v. Westchester County Medical*, 807 F.2d 304, 308 (2d Cir. 1986), *cert. den.*, 484 U.S. 825 (1987); *Foster v. Dalton*, 71 F.3d 52, 56 (1st Cir. 1995) ("Title VII does not outlaw cronyism."); *Harris v. New York City. Dep't of Homeless Svcs.*, 1998 U.S. Dist. LEXIS 5865, at *24-26 (S.D.N.Y. Apr. 28, 1998) (female supervisor treating her female friends more favorably than the male plaintiff does not suggest discriminatory animus).

Director of Fine Arts, Dr. Morton. Morton Aff. ¶¶ 21-21, Ex. A; Wolf Aff. ¶ 5. Plaintiff has no basis to dispute the legitimacy of this decision, as she admits that she has no knowledge of Mr. Wallace's instrumental credentials. Pl. 2013 Dep. at 54-55. Further, while Plaintiff complains that Mr. Wallace received "favoritism in teaching assignments" (Complaint ¶¶ 55-56), she admits that this allegation relates to his schedule while he was participating in an administrative internship, and that she did not apply for an internship during Wolf's time as principal.[6] Pl. 2013 Dep. at 218. The District made the same type of accommodation for female teachers involved in administrative internships. Speach Aff. ¶ 54. Any comparisons to Mr. Wallace do not create an inference that Plaintiff was treated differently because of her gender.

The same is true for any comparison to Mr. Bossert. Plaintiff received a counseling memorandum in June 2008 as a result of a complaint filed by Mr. Bossert. Speach Aff. ¶¶ 17-20; Ex. B. Plaintiff laments that Mr. Bossert was not found equally at fault for this incident. Ms. Speach investigated this situation. Plaintiff's and Mr. Bossert's stories were inconsistent. Ms. Speach concluded based on multiple factors, including Plaintiff's historic difficulties working collegially with her colleagues, to credit Ms. Bossert's account and counsel Ms. Rausa. *Id.* Plaintiff's mere disagreement with Ms. Speach's conclusion is not evidence of gender discrimination. *Bryant v. Delphi Auto. Sys. Corp.*, 2010 U.S. Dist. LEXIS 26578, at *17-18 (W.D.N.Y. Mar. 22, 2011) ("plaintiff's disagreement with defendant's conclusion is not evidence or pretext"); *Droutman v. New York Blood Ctr.*, 2005 U.S. Dist LEXIS 42951, at *9 (E.D.N.Y. Jul. 27, 2005) ("an employer's good faith belief that an employee engaged in misconduct is a legitimate reason for [disciplining him], and the fact that an employer is actually wrong is insufficient to show pretext").

[6] Plaintiff clarified in her deposition that her reference to "favoritism" of Mr. Wallace in paragraphs 55 and 56 of the Complaint both refer to this same issue – changing Mr. Wallace's schedule to accommodate his administrative internship.

Finally, Plaintiff compares herself to technology teacher Mr. Clayton, the male director of the Technology Club. She complains that whereas she was criticized for not supervising Drama Club rehearsals, Mr. Clayton was allowed to leave his students unsupervised without repercussion. Complaint, Ex. A., ¶56(f). However, once again, Mr. Clayton and Plaintiff are not similarly situated. It was under Plaintiff's supervision—not Mr. Clayton's—that a male student was accused of sexually abusing female students, which culminated in criminal charges against the student and Section 3020-a charges against Plaintiff. Speach Aff. ¶¶ 27-28; 31; 36; Pl. 2013 Dep. at 94-98; Pl. 2011 Dep. at 85-88; 94. Given this significant, undisputed fact, Plaintiff cannot compare herself to Mr. Clayton and argue that any difference in treatment must be because of gender. Further, to the extent Ms. Rausa complains that Mr. Clayton was treated better because he was the point person for access to the sound system (Complaint Ex. A., ¶ (d)), this decision (1) was a legitimate and reasonable measure to protect a newly upgraded sound system; and (2) affected male and female teachers equally. Launt Aff. ¶17; Wolf Aff. ¶ 33. Further, she admits that, when she continued to be dissatisfied with the sound quality, the District hired a professional sound person for her musicals, a fact which proves that none of this was an effort to scuttle her performances. Pl. 2013 Dep. at 162-64; Wolf Aff. ¶ 35.

**5. Plaintiff Admissions Show That Many Of Her Allegations Have No Plausible Connection to Gender.**

In two separate depositions, Plaintiff made several admissions that further underscore the general-neutral nature of her allegations:

- Plaintiff complains that Wolf refused to speak with her directly and instead spoke through two other employees. Complaint, Ex. A, ¶ 56(b). Plaintiff admitted that the two other employees were women. Pl. 2013 Dep. at 14. This is hardly evidence that Wolf would not talk to Plaintiff because she is a woman.

- Plaintiff complains that her chorus was not invited to participate in a sing-along event. (Complaint, Ex. A, ¶ 56(n)). However, Ms. Launt's chorus was invited to participate. Launt Aff. ¶ 23. Whatever the reason for Plaintiff's not being welcomed, it was not because she is a woman.
- Plaintiff complains that the configuration of choruses was changed in the 2008-2009 school year from a 6th/7th grade combined chorus (when Mr. Wallace ran the chorus) to a 7th grade only chorus (a change effective when Plaintiff returned to the chorus position). However, Plaintiff admits that the 6th graders she wanted were placed in a chorus run by Ms. Launt. Pl. 2013 Dep. at 143-44. Again, this cannot be a *gender* related decision.
- Plaintiff refers to an "instigation of a confrontation with a parent." Complaint ¶ 55. At her deposition, she explained that this allegation is based on her allegation that a parent was upset with her, and Associate Principal Linda Jackson—a female administrator—told the parent to speak to Plaintiff directly. Pl. 2013 Dep. at 222. Plaintiff may not have liked dealing with an angry parent, but there is no evidence to conclude a female administrator "instigated" an incident because Plaintiff is a woman.

In sum, Plaintiff's attempt to forge a connection between her gender and the facially-neutral incidents and decisions she complains about fails. No reasonable juror could conclude that in a middle school employing predominantly female teachers (Speach Aff. ¶ 55), an entire group of administrators and co-workers—male and female alike—conspired to target Ms. Rausa and make her life difficult because she is a woman. Lacking any evidence to suggest a connection between her gender and her allegations, her Title VII hostile work environment claim must be dismissed.

**B. Plaintiff's Own Testimony Confirms That Many of Her Allegations Are Untrue.**

Plaintiff's hostile work environment claim is further undermined by a series of admissions she made during her depositions. Even viewing the evidence in the light most favorable to Plaintiff, she cannot rely on these allegations to establish the existence of a hostile work environment:

- Plaintiff makes multiple allegations that Wolf did not praise her work sufficiently, or took credit for her work. Complaint, Ex. A, ¶ 56(m, o, u, v, y). At her 50-h deposition, Plaintiff explained that Wolf did this by doing such things as waving at the crowd during an ice hockey event, and talking too long during his welcoming remarks at another event. Pl. 2011 Dep. at 141-143. The triviality of such allegations is obvious. However, during her deposition in this case, Plaintiff was forced to acknowledge that, contrary to her allegations, Wolf did in fact praise her and her events. Pl. 2013 Dep. at 171-175; Wolf Aff. ¶¶ 42-43; Exs. F-G.
- Plaintiff alleges that Wolf accessed her private Facebook page without her consent. (Complaint, Ex. A, ¶ 56(g)). Plaintiff is aghast at what she characterizes as an invasion of her privacy. At her deposition, Plaintiff admitted, however, that she had posted a comment about Wolf on her Facebook page ("If there is any justice in this world . . . and I do believe there is – Wolfie picked the WRONG person to mess with!!!! Oh, Yeah, -- it's ON!!!"). Pl. 2013 Dep. at 147; Wolf Aff. ¶ 37, Ex. D. This got back to Wolf. By Plaintiff's own testimony, all that occurred was that Wolf's secretary (who was Plaintiff's Facebook "friend") logged into Facebook and showed Plaintiff's post to Wolf. Thus, on a single occasion Wolf's secretary showed him what Plaintiff had said about

him. Pl. 2013 Dep. at 145-151.[7] The fact that Wolf wanted to see what Plaintiff had said about him online is proof that Wolf is human, not that he is gender discriminatory.

- Plaintiff claims that Wolf "refused" to meet with her to discuss a 2008-2009 Year End Summary. Complaint, Ex. A, ¶ 56(h). However, at her deposition, Plaintiff admitted both that (a) she was scheduled to meet with Wolf for this purpose in June 2009, but the meeting had to be rescheduled; and (b) Wolf's secretary Ms. Moran contacted her to reschedule the meeting over the summer, but Plaintiff was unwilling to come into school during the summer for this purpose. Pl. 2013 Dep. at 151-155. Thus, the evidence is not that Wolf "refused" to meet with her as Plaintiff alleges, but rather that Plaintiff did not regard a meeting as important enough to come in for over the summer.
- Plaintiff alleges that Wolf refused to provide her minutes from staff meetings. Complaint, Ex. A, ¶ 56(i). At her deposition, however, Plaintiff could not name a single individual—male or female—who received minutes from Wolf. Pl. 2013 Dep. at 151-155.
- Plaintiff claims that Wolf attempted to fill her position as Director of the Drama Club, (Complaint, Ex. A, ¶ 56(k)). Yet she admitted that the position was *never* posted, that no male faculty member was asked to fill the position, and that she has held the position consistently every year since 2003. Pl. 2013 Dep. at 157, 159-160.
- Plaintiff's Amended Complaint reads that in June 2010, she was disciplined for hanging up on Wolf's secretary. Complaint, Ex. A., ¶ 56(p). Plaintiff admits, however, that she was not disciplined at all, but was only questioned about the incident. Pl. 2013 Dep. at 189-190. In fact, not only was Plaintiff not disciplined for this particular incident, *she*

[7] Notably, Plaintiff flatly (and falsely) denied during her 50-h deposition that she had ever posted anything about Wolf on Facebook. When confronted with a copy of her post at her most recent deposition, she had to admit it. *Compare* Pl. 2011 Dep. at 130 *with* Pl. 2013 Dep. at 147.

*admits* that from the time she returned from a suspension in October 2009 through the time Wolf's employment as Principal ended, *she was not issued a single counseling memo, suspension or other disciplinary charge*. Pl. 2013 Dep. at 36-37.

- Plaintiff also references additional "illegal discipline" that was issued in January 2010. Complaint, Ex. A, ¶56(s). Consistent with her testimony that she has not been counseled or disciplined since returning to work in October 2009, she admits that this allegation is, in her words, "inaccurate." Pl. 2011 Dep. at 136-38.

Thus, among the twenty-six allegations in the "laundry list" set forth in her Notice of Claim, and incorporated by reference into her Complaint, nearly half are simply not true based on Plaintiff's own testimony. All of the above allegations must be disregarded.

**C. Plaintiff's Harassment Allegations Are Not Objectively Hostile.**

Even if there was sufficient evidence linking Plaintiff's harassment allegations to her gender, which there is not, Plaintiff's hostile work environment is still subject to dismissal because the allegations are not sufficiently severe or pervasive to be considered objectively hostile. Plaintiff's allegations do not begin to suggest that her workplace was "'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" *Oncale,* 523 U.S. at 78, 118 S. Ct. at 1001. (*quoting Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993)). As this Court already observed, the allegations set forth in Plaintiff's complaint consist of the type of "workplace annoyances, petty slights, general disagreements, lack of good manners, and problems that constitute minor incidents and trivial harms that would be insufficient to avoid summary judgment." Decision & Order (Docket No. 23), at p. 13-14. Nevertheless, this Court declined to dismiss the complaint at the pleading stage, recognizing that Plaintiff should have an

opportunity to expand upon and substantiate her claims through the discovery process. Discovery is now complete. Rather than validating her allegations, however, discovery has served only to further underscore their petty, non-intimidating and non-abusive nature.

Setting aside all those allegations which must be disregarded for the reasons discussed above as either disproved by Plaintiff's own testimony (Point B, *supra*) or having no connection to gender based on the undisputed evidence (Point A, *supra*), we have only the surviving allegations:

a. Plaintiff makes multiple allegations that Wolf mistreated her by not providing proper technical support for her middle school Drama Club productions. Complaint, Ex. A, ¶56(d, k, q, x). Wolf concurs that the sound quality was not good for the opening night of her spring 2009 musical, but he took steps to improve the sound for the next night. Wolf Aff. ¶ 34. Further, he arranged for a professional sound person to work with Plaintiff and the Drama Club for future performances, which Plaintiff admits improved the sound quality. *Id.* ¶ 35; Pl. 2013 Dep. at 162-164.

b. Wolf did not look for Plaintiff's lost grade book, or otherwise investigate its whereabouts. But she admits her grade book is her own responsibility, and she concedes that she cannot say whether Wolf would have been any more successful in finding it than she was. (Complaint, Ex. A, ¶ 56(l); Pl. 2013 Dep. at 164).

c. Wolf "publicly questioned" the style of music she chose for a student performance in January 2010. She testified that the basis for this allegations is that Wolf introduced her students' performance of Michael Jackson tunes by saying "Tonight you're going to hear some very interesting music". Her allegation is that the word "interesting" was not sufficiently superlative. (Complaint, Ex. A ¶ 56(r); Pl. 2011 Dep. at 136).

d. Wolf ordered that a student, who Plaintiff had removed from Drama Club, be allowed to participate in the club, and this led to a racial discrimination investigation. However,

Plaintiff 's testimony shows that this investigation had nothing to do with Drama Club, and her involvement was so tangential that she knows virtually nothing about it. (Complaint, Ex. A ¶ 56(t); Pl. 2011 Dep. at 140-41).

e. On one particular day, March 1, 2010, Wolf did not respond to her emails. (Complaint, Ex. A, ¶ 56(w)).

f. After March 2011, the District "threatened to" write Plaintiff up by holding a Weingarten investigatory meeting, and required her to meet with Assistant Superintendent Stan Finkle. This was the result of a parent complaint against Plaintiff. Plaintiff was merely spoken to about this by Mr. Finkle; she admits that she was not in fact written up. (Complaint ¶55; Pl. 2013 Dep. at 36-37; 210-11; Speach Aff. ¶53).

g. Associate Principal Ms. Jackson, a female, issued an evaluation Plaintiff characterizes as "improper and unfair". Plaintiff testified that she was "bothered" by (although not "upset" by) the fact that Ms. Jackson Googled information to support her feedback to Plaintiff regarding her use of a certain teaching method – the "Cognitive Growth Model." She was further bothered by Ms. Jackson's statement that Plaintiff should not "throw the baby out with the bath water," and another statement that related to her being collaborative. Plaintiff admits that after they discussed the evaluation, Ms. Jackson removed this "bathwater" statement and revised the evaluation to Plaintiff's satisfaction. (Complaint ¶ 55; Pl. 2013 Dep. at 211-15; 198-99).

Viewed in their totality, these allegations do not come close to creating the type of discriminatory hostility that is actionable under Title VII. These allegations are all typical workplace frustrations, disappointments and mishaps that are not the province of federal anti-discrimination laws. There is no allegation of threatening conduct, name-calling, vulgarities, touching, or anything else to suggest that these interactions were anything more than routine

workplace annoyances. Courts routinely dismiss hostile work environment claims involving similar allegations. *See, e.g., Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (excessive criticism of work, exclusion from meetings, rudeness and arbitrary imposition of work outside of her responsibilities do not support finding of severe and pervasive abusive work environment); *Woodward v. TWC Media Solutions*, 2011 U.S. Dist. LEXIS 1536, at *33-34 (S.D.N.Y. Jan. 4, 2011) (refusal to train, negative evaluations, written warning, rummaging through desk, together with supervisor rubbing baseball bat in a sexual manner, standing too close, and spreading his legs on his desk not severe or pervasive); *De La Rosa v. City of New York Police Dept.,* 2010 U.S. Dist. LEXIS 112770, at *58-59 (S.D.N.Y. Oct. 22, 2010) *affirmed* 2012 F. App'x 73(2d Cir. 2012) (list of fourteen incidents, including discipline, suspension, negative evaluations, threatened discipline and other items not severe or pervasive); *McWhite v. New York City Housing Auth.,* 2008 U.S. Dist. LEXIS 29145, at *41-43 (E.D.N.Y. Apr. 10, 2008) (observing that "general rude behavior is insufficient to demonstrate a hostile work [environment]" and dismissing harassment allegations where plaintiff's supervisor issued plaintiff a counseling memorandum, suspended her, accused her of stealing, and told co-workers not to speak to her).

Consistent with this Court's initial impression, discovery has only underscored that Plaintiff's complaints are nothing more than "workplace annoyances, petty slights, [and] general disagreement" that do not constitute an objectively hostile work environment. Plaintiff's hostile work environment claim must be dismissed.

## II. PLAINTIFF'S HUMAN RIGHTS LAW CLAIMS AGAINST WOLF MUST ALSO BE DISMISSED.

Plaintiff's claim against Wolf as an aider and abetter must also be dismissed. For all the reasons discussed above and in the accompanying affidavits, Wolf was not responsible for many of the acts Plaintiff attributes to him. Plaintiff speculates that Wolf was a puppet master pulling

others' strings, but Plaintiff's speculation is disproved by the record evidence. Wolf issued only one counseling memo, and this was for the legitimate reasons discussed above. Plaintiff's mere disagreement is not evidence of pretext. *See Bryant* 2010 U.S. Dist LEXIS at *17-18, *see also supra* at Point I (A)(4). Further, there never was a legally cognizable "hostile environment", and, therefore, Wolf cannot have "aided and abetted" it. For all these reasons, as well as all the reasons outlined under Point I, *supra*, Plaintiff's discrimination claims against Wolf must also be dismissed.

## III. PLAINTIFF'S § 1983 DUE PROCESS CLAIM IS DEFICIENT AS A MATTER OF LAW

The bulk of Plaintiff's § 1983 due process claims were dismissed for failure to state a claim. However, one narrow due process claim remains: that her unpaid suspension was a deprivation of due process. Complaint ¶104; Decision & Order (Docket No. 23) at p. 18. This claim is now subject to dismissal for several independent reasons.

### A. Plaintiff is Bound by the Union's Waiver of Her Due Process Rights.

Plaintiff's Amended Complaint fails to include an important, decisive fact related to her September 2009 unpaid suspension: that the suspension was imposed consistent with the terms of the CBA between the District and Plaintiff's union. Speach Aff. ¶ 39; Ex. F. Article 8.6 of the CBA plainly provides:

> In the event that any teacher is suspended pending a hearing on charges, such suspension shall be without pay until the findings and recommendations on the charges are determined.

It is well established that a union, as the collective bargaining agent for its employees, has the legal authority to waive its members' constitutional due process rights. *See Romano v. Canuteson*, 11 F.3d 1140, 1141 (2d Cir. 1993) ("due process requirements are not of controlling relevance if the party seeking to assert them has waived them in a voluntary agreement such as a

collective bargaining agreement"); *DeLain v. Governor's Office of Employee Relations*, 266 A.D.2d 627, 629 (3d Dep't 1999) (same).

For instance, in *Grandi v. New York City Transit Authority*, an employee asserted a §1983 procedural due process claim, arguing that his employer was obligated to follow certain Civil Service Law procedures prior to placing him on involuntary leave. 977 F. Supp. 590, 594-95 (E.D.N.Y. 1997). The court dismissed the § 1983 claim on waiver principles, observing that the plaintiff's union had waived these statutory procedures via a labor agreement. *Id*. at 595-96. The court explained, "[t]he fact that plaintiff himself did not sign the CBA or may not approve of this waiver of his due process rights is immaterial," and that "[p]laintiff's dissatisfaction with the CBA is an issue…to raise with the union, not with his employer." *Id*. at 595.

Plaintiff's case is indistinguishable from *Grandi*. Article 8.6 of the parties' CBA plainly provides that suspensions pending disciplinary hearings are unpaid. On behalf of its members, the Union has clearly and unequivocally waived any constitutional due process right to a pre-suspension hearing. Speach Aff., Ex. F. If Plaintiff believes that this waiver is undesirable, she must redress that issue via her union, not via a due process claim against the District.

### B. Plaintiff Individually Waived Any Due Process Claim Related to Her Suspension via a Settlement Agreement

Plaintiff's claim is also defective because she individually waived this claim related to her suspension by way of her settlement of the 3020-a charges. Such individual waivers of the procedures in Section 3020-a are valid and enforceable under state law. *Abramovich v. Board of Ed. of Central School District Number 1*, 46 N.Y.2d 450, 455 (1979) (upholding a tenured teacher's right to waive the protections of Section 3020-a by settlement).

Plaintiff was served with charges in June 2009. The District suspended Plaintiff for 30 days without pay in September 2009 pursuant to the District's ordinary 3020-a process and teachers' CBA. Speach Aff. ¶¶ 36; 38; 40; 42.

Prior to the hearing in June 2010, the parties agreed to settle the 3020-a matter. The parties agreed that the 30-day unpaid suspension would be reduced to five unpaid days. Plaintiff was repaid for the 25-day difference. Speach Aff. ¶ 50; Pl. 2013 Dep. at 138-39; Complaint Ex. C.

The June 2010 Settlement Agreement specifically provided that it was "***in full settlement of the pending 3020-a matter***." Complaint Ex. C. By agreeing to fully settle the 3020-a matter, Plaintiff necessarily agreed to forgo ***all*** claims related to the 3020-a process. Plaintiff's claim here is that 3020-a barred her pre-hearing suspension. However, having agreed that this was ***"in full settlement of the pending 3020-a matter"***, Plaintiff cannot not now argue that she agreed to waive certain aspects of the 3020-a process, but not others.

This is not a situation where the District seeks to sneak some later event into a waiver retroactively. Plaintiff had already served the suspension at the time of the Settlement Agreement. There can be no reasonable argument that the Agreement's sweeping language about the resolution of the 3020-a matter somehow did not include the fact that Plaintiff had been suspended without pay leading up to the 3020-a hearing.

The fact that the Settlement Agreement did not include a general release does not alter the conclusion that Plaintiff waived any 3020-a due process claims. The agreement provides: "This Agreement is not a waiver of either party's right to commence an action for ***any relief <u>not</u> <u>specifically</u> <u>addressed</u> herein***." Complaint ¶ 42; Ex. C (emphasis added). This language actually forces the conclusion that Plaintiff waived the claim she now asserts. The bolded phrase is significant: Plaintiff preserved claims related to the 3020-a events *only* if the issue was "*<u>not</u>* specifically addressed" in the Agreement. That would include, of course, a remedy for

discrimination and harassment. The District has never attempted to stretch this language to cover such unaddressed matters.

However, by the Settlement Agreement's clear language, to the extent any relief *was* "specifically addressed" in the Settlement Agreement, it was waived via the "in full settlement of the pending 3020-a matter" language. Relief for Plaintiff's unpaid suspension was more than "specifically addressed" in the Settlement Agreement; it was the ***very reason*** for the settlement and the monetary compensation she received. The Agreement reads:

> The amount of the ***suspension*** shall be reduced from 30 days to five days and ***the money to be refunded*** to Ms. Rausa shall be issued within 30 days of the date of the settlement agreement.

Complaint Ex. C. If this does not constitute a matter which is "specifically addressed", we do not know what does. The parties agreed that Plaintiff would receive relief in the form 25 days pay for her unpaid suspension. Plaintiff may wish she had asked for more, but this is no reason to do violence to the parties' agreement that the disciplinary suspension was remedied and resolved.

### C. State Courts Have Held that Unpaid Suspensions Are Still Permitted Under Education Law §3020-a

Plaintiff's claim that she was entitled to be paid during her suspension as a matter of due process is defective because state courts have concluded that such unpaid suspensions continue to be permitted under state law. Although Education Law §3020-a was amended in 1994 to include language stating that suspensions should be with pay, state courts have continued to recognize that this particular aspect of 3020-a may be bargained away. In 2002—eight years after the law was amended—the Appellate Division, Third Department, recognized the continuing validity of contractual waivers. *See Elmore v. Mills*, 296 A.D.2d 704, 706 (3d Dep't 2002) (*citing Matter of Board of Ed. of City of Rochester v. Nyquist*, 48 N.Y.2d 97, 103-05 (1979). The court stated: "a CBA may allow a school district to suspend its teachers without pay as long as the agreement's

terms clearly manifest the parties' intent to do so". *Id*. at 706; *see also Brady v. A Certain Teacher*, 166 Misc. 2d 566, 574 (Sup. Ct. Suffolk Co. 1995). What is more, in 2010, a hearing officer appointed by the State Commissioner of Education examined the very language in the parties' CBA in the context of a 3020-a proceeding, and concluded that an unpaid suspension pending a 3020-a hearing did not violate 3020-a. (Speach Aff. ¶ 41; Ex. H). We respectfully submit that state level interpretation of this state law should control, and the present law is that unpaid suspensions contractually bargained for continue to be permissible.

### D. Plaintiff Was Afforded Adequate Pre- and Post-Deprivation Process Related to her Suspension.

Irrespective of the above, it is imperative to distinguish Plaintiff's § 1983 constitutional claim to due process *under the Fourteenth Amendment* from her *state statutory claim* for violation of Education Law 3020-a. Even if this Court interprets 3020-a to prohibit an unpaid suspension pending a 3020-a hearing, and concludes that the District violated this state law, this does *not* equate to a violation of Plaintiff's procedural due process rights under the Fourteenth Amendment.

It is well-established that the degree of due process required under the Fourteenth Amendment is a fact-dependent issue that depends on, *inter alia*, the gravity of the property interest that is at stake. *See Mathews v. Elbridge*, 424 U.S. 319, 335 (1976); *Ware v. City of Buffalo*, 186 F. Supp. 2d 324, 334-35 (W.D.N.Y. 2001). Under the *Mathews* analysis, a short suspension will necessarily require less procedural protection than loss of employment. *See, e.g., Ware*, 186 F. Supp. 2d at 334 ("Because plaintiff was not terminated but only suspended, courts have factored that salient point into the due process analysis."). While courts addressing teachers' loss of employment have approved 3020-a procedures as adequately protecting these teachers' due process rights, that does not mean that this extensive procedure sets the constitutional floor for *any* decision affecting a teacher's employment, no matter how minor.

Courts analyzing constitutional procedural adequacy consider whether an employee was afforded both (a) pre-deprivation and (b) post-deprivation process. *O'Connor v. Pierson*, 426 F.3d 187,197 (2d Cir. 2005). Plaintiff cannot argue that she was not afforded sufficient *post*-deprivation process. Here, Plaintiff was entitled to a full-blown adversarial hearing regarding her suspension under 3020-a. The fact that she ultimately decided to waive the hearing is immaterial. There is no question that Plaintiff was afforded adequate post-deprivation process.

Thus, the only constitutional issue is whether she received adequate *pre*-deprivation process. "Pre-deprivation process 'need not be elaborate'" *O'Connor*, 426 F.3d at 197 (*quoting Cleveland Board of Ed. v. Loudermill*, 470 U.S. 532, 545 (1985)). Particularly where significant post-deprivation process is provided (e.g., a hearing), the pre-deprivation process need only serve as an "initial check against mistaken decisions." *Id.* The process need only provide "notice and opportunity to respond." *Id.* In fact, as a matter of *constitutional* due process, "[t]he Supreme Court has never held that a public employee, even one with tenure or its equivalent, has a right to a hearing prior to a suspension." *Ware,* 186 F. Supp. 2d at 334 (*quoting Szoke v. Carter*, 165 F.R.D. 34, at *7 (S.D.N.Y. 1996)).

Plaintiff was provided notice and opportunity to respond prior to her unpaid suspension. Ms. Speach met with Plaintiff and a union representative to get her "side of the story." Speach Aff. ¶ 30. At the conclusion of the investigation, Ms. Speach met again with Plaintiff and offered to resolve the allegations for only a three-day suspension. *Id.* ¶ 35. These multiple meetings certainly met the modest "notice and opportunity to be heard" pre-deprivation standard. *Loudermill*, 470 U.S. at 546 ("public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story"); *Ware*, 186 F. Supp. 2d at 335 (meeting with union representative prior to suspension adequate due process); *Burhans v. County of Putnam*, 2011 U.S. Dist. LEXIS 31999, at *20-22 (S.D.N.Y. Mar.

25, 2011) (letter explaining unpaid leave sufficient where hearing available after the leave). State law procedural protections and constitutional due process rights are not coextensive. Even if the District violated *state law* by suspending Plaintiff without pay pending the hearing, this does not rise to the level of a *constitutional due process* violation.

## **CONCLUSION**

Defendants respectfully request that the Court grant its motion for summary judgment and dismiss Plaintiff's remaining claims in their entirety.

DATED: March 29, 2013
Syracuse, New York

BOND, SCHOENECK & KING, PLLC

BY: /s/ Laura H. Harshbarger
Laura H. Harshbarger, Esq.
Bar Roll No. 509779
Kristen E. Smith, Esq.
Bar Roll No. 513756
*Attorneys for Defendants*
Office and Post Office Address
One Lincoln Center
Syracuse, NY 13202
Telephone: (315) 218-8314
Facsimile: (315) 218-8100

TO: Stephen Ciotoli, Esq.
O'Hara, O'Connell & Ciotoli
*Attorneys for Plaintiff*
Office and Post Office Address
7202 East Genesee Street
Fayetteville, NY 13066
Telephone: (315) 451-3810
E-mail: sdc@oharalaw.com