UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

DANIELLE RAUSA,

Plaintiff,

v.

THE BOARD OF EDUCATION OF THE NORTH SYRACUSE CENTRAL SCHOOL DISTRICT, AND STEVEN WOLF,

Defendants.

---

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

Civil Action No. 5:11-CV-1152 (TJM/ATB)

Pursuant to Local Rule 7.1(a)(3), the Board of Education of the North Syracuse Central School District and Steven Wolf (collectively, "Defendants") state that the following material facts are not genuinely in dispute for purposes of Defendants' motion for summary judgment:

**Employment Background**

1. Plaintiff Danielle Rausa ("Plaintiff") is a tenured music teacher, employed by the North Syracuse Central School District (the "District"). Plaintiff has been employed by the District since 1997. Complaint ¶ 13.

2. Prior to Plaintiff's placement at Roxboro Road Middle School in 2002, Plaintiff was assigned to Smith Road Elementary School. Pl. 2013 Dep. at 28; Complaint ¶ 13; Morton Aff. ¶¶ 7; 9.

3. While working at Smith Road, Plaintiff had a significant personal conflict with a female coworker. Pl. 2013 Dep. at 28; Morton Aff. ¶ 9.

4. On February 8, 2002, the Principal of Smith Road Elementary School, Bernard Campbell, counseled Plaintiff and her coworker about their unprofessional

communications and failure to cooperate with each other about the music program. Pl. 2013 Dep. at 29-30; Speach Aff. ¶ 8; Ex. A.

5. Multiple male and female teachers and staff at Roxboro Road Middle School, including music teachers Robyn Launt, Kristen Kopf and Mark Bossert, complained to District administrators about their difficulties working with Plaintiff. Speach Aff. ¶ 25; Wolf Aff. ¶¶ 19-20; 23; Gramet Aff. ¶ 13; Launt Aff. ¶ 16; Kopf Aff. ¶ 9-10.

**2007- 2008 School Year**

6. Steven Wolf became Principal of Roxboro Road Middle School on or about January 28, 2008. He worked at the school up until October 2011, when he went on medical leave. His resignation was effective January 27, 2012. Pl. 2013 Dep. at 20; Wolf Aff. ¶ 1; 31.

7. On or about February 12, 2008, then Assistant Principal Ellen Hardy held a meeting of the music department to discuss scheduling issues, including a scheduling conflict for students who were both in music teacher Patrick Wallace's chorus and also Plaintiff's Drama Club. Pl. 2013 Dep. at 20-22; Hardy Aff. ¶¶ 5-9.

8. Wolf did not attend this meeting. Pl. 2013 Dep. at 25.

9. At this meeting, Plaintiff became "heated" and got up to walk out of the meeting. Pl. 2013 Dep. at 22; Hardy Aff. ¶ 9.

10. Ms. Hardy was offended by Plaintiff's loud, aggressive and disrespectful conduct during this meeting. Hardy believed that Plaintiff had behaved "outrageously" toward her and Mr. Wallace. Hardy Aff. ¶ 9-11, 13.

11. Ms. Hardy determined that Plaintiff should be issued a counseling memorandum for the incident. This decision was Ms. Hardy's alone, and Ms. Hardy was not

encouraged or instructed by Mr. Wolf to issue Plaintiff a counseling memorandum. Hardy Aff. ¶¶ 15; 17 Ex. B; Wolf Aff. ¶ 5.

12. Plaintiff was aware of the District's policy against discrimination and harassment, and she attended District-provided training concerning discrimination and harassment. Pl. 2013 Dep. at 41.

13. Plaintiff was aware that there was a complaint form to initiate a harassment complaint pursuant to the District's harassment policy. Plaintiff never at any time filled out a harassment complaint form. Pl. 2013 Dep. at 41; Speach Aff. ¶ 12.

14. At all relevant times, Director of Fine Arts David Morton, Ph.D. had District-wide responsibility for the District's music and other fine arts programs. Morton Aff. ¶ 4.

15. In spring 2008, Dr. Morton recommended that Plaintiff be moved from an instrumental to a classroom music/chorus position for the 2008-2009 school year to take better advantage of the respective strengths of Plaintiff and Mr. Wallace. Wolf Aff. ¶ 5; Morton Aff. ¶¶ 20-21; Ex. A. Wolf accepted this recommendation. *Id.*

16. Plaintiff sings professionally. Pl. 2013 Dep. at 53.

17. Mr. Wallace was formerly a United States Army musician, which Dr. Morton regards as highly competitive and outstanding instrumental training. Morton Aff. ¶ 20.

18. Plaintiff testified that she does not know whether she is a stronger instrumentalist than Mr. Wallace. Pl. 2013 Dep. at 54-55.

19. This teaching assignment change did not affect Plaintiff's pay, benefits, work location, work hours or seniority. Pl. 2013 Dep. at 157-59.

20. Plaintiff was informed about this teaching assignment change by Wolf and Dr. Morton in or about April 2008. Wolf Aff. ¶ 6; Morton Aff. ¶ 22; Pl. 2013 Dep. at 50-52.

21. In May 2008, Plaintiff initiated a conversation with music teacher Mark Bossert. Pl. 2013 Dep. at 42.

22. Following this conversation, Mr. Bossert made a complaint to the District about Plaintiff's behavior. Pl. 2013 Dep. at 42; Wolf Aff. ¶ 8. Mr. Bossert complained that that he felt intimidated by Plaintiff, and complained that Plaintiff accused him of orchestrating her move to a classroom music/chorus position. Speach Aff. ¶ 17; Wolf Aff. ¶ 8.

23. Director of Human Resources (now Assistant Superintendent for Educator Effectiveness and Human Resources) Annette Speach interviewed Plaintiff about Mr. Bossert's allegation and allowed Plaintiff to give her "side of the story." Pl. 2013 Dep. at 43-44; Speach Aff. ¶ 18.

24. Ms. Speach concluded that Plaintiff had behaved unprofessionally. Speach Aff. ¶ 19. Ms. Speach issued Plaintiff a counseling memorandum as a result of this incident in June 2008. Pl. 2013 Dep. at 42-43; Speach Aff. ¶ 20; Ex. B.

**2008-2009 School Year**

25. Plaintiff took over chorus at the start of the 2008-2009 school year, and the configuration of chorus was changed from combined 6th/7th grade to 7th grade only. The 6th grade students that Plaintiff "lost" went to the other chorus teacher, Ms. Launt. Pl. 2013 Dep. at 143-44.

26. In September 2008, Plaintiff and Ms. Launt desired to create a "Select Chorus". Pl. 2013 Dep. at 58; Wolf Aff. ¶ 10. This "Select Chorus" would include only "the best of the school." Pl. 2013 Dep. at 62.

27. Wolf cancelled a September 2008 meeting Plaintiff planned to hold with students where she planned to announce, among other things, the Select Chorus. Wolf cancelled the meeting because Dr. Morton had not yet gotten back to Wolf regarding whether the Select Chorus would be permitted. Wolf. Aff. ¶ 11; Pl. 2013 Dep. at 59.

28. Dr. Morton considered the question of a Select Chorus and determined that it was educationally inappropriate for the middle school level. Morton Aff. ¶ 27.

29. Plaintiff received a memo dated September 29, 2008, indicating that a Select Chorus would not be permitted at the school. Pl. 2013 Dep. at 60; 63-64; Pl. 2011 Dep. at 62-63; 69-70; Wolf Aff. ¶ 12, Ex. A.

30. Thereafter, it came to the District's attention that flyers advertising a Select Chorus were being distributed to students. Morton Aff. ¶ 28; Wolf Aff. ¶ 13; Pl. 2013 Dep. at 64.

31. Wolf believed that the tone of the flyer was inappropriate, because it stated: "This won't be like your other chorus experiences, you'll have a great time," implying that the previous chorus teacher's chorus had not been fun. Wolf Aff. ¶ 13; Ex. B.

32. Wolf looked into this incident and issued Plaintiff a counseling memorandum. Wolf Aff. ¶ 16-17; Speach Aff. ¶ 22. Two written memos were actually prepared, dated October 20 and November 10, 2008, but the parties agree that these represent just one counseling incident. Pl. 2013 Dep. at 79; Speach Aff. ¶ 24; Exs. C, D.

33. The counseling memorandum discussed not only the fact that the Select Chorus flyer had been distributed, but also that the tone of the flyer was disparaging of colleagues. Speach Aff., Exs. C, D.

34. In February 2009, male and female teachers in the music department requested a meeting between them, building administration and the union to discuss Plaintiff's behavior and its impact on the department. Wolf Aff. ¶ 23; Kopf Aff. ¶ 16, Ex. A.

35. Plaintiff was the Director of the Drama Club, a District-paid position, and she was responsible for supervising Drama Club students. Pl. 2013 Dep. at 98-99; Pl. 2011 Dep. at 101.

36. A male student engaged in sexually inappropriate behavior toward female students during a Drama Club rehearsal, and the female students complained to District officials on or about March 27, 2009. The Sherriff's Department thereafter conducted a criminal investigation. Pl. 2011 Dep. at 85-88; Wolf Aff. ¶ 25; Speach Aff. ¶ 27.

37. Approximately one week after the female students complained of abuse, Plaintiff left the building during a Drama Club rehearsal held on Saturday, April 4, 2009, at a time when she was responsible for the students and their supervision. Pl. 2013 Dep. at 122; Wolf Aff. ¶ 26.

38. Plaintiff did not have permission from administration to leave the Drama Club rehearsal on April 4, 2009. Pl. 2013 Dep. at 124-25; Wolf Aff. ¶ 26; Gramet Aff. ¶ 11.

39. Plaintiff failed to enter any grades at all for the third marking period of 2008-2009 school year. Pl. 2013 Dep. at 126; Speach Aff. ¶ 29.

40. Ms. Speach met with Plaintiff and her union representative to discuss concerns regarding the abuse that occurred during Drama Club rehearsal, Plaintiff's act of leaving rehearsal without permission on April 4, and her failure to enter grades for the third marking period of 2008-2009. Speach Aff. ¶¶ 28-30. Plaintiff was allowed to tell her "side of the story." *Id.*

41. Ms. Speach conferred with then-Superintendent Jerome Melvin, and they determined that Plaintiff should be disciplined. Speach Aff. ¶¶ 31; 33. Speach and Melvin decided to recommend to the Board of Education that 3020-a charges be brought against Plaintiff. Speach Aff. ¶ 33.

42. Prior to charges being served, Ms. Speach met with Plaintiff and a union representative to explain the allegations. Ms. Speach offered to resolve the allegations for a three (3) day suspension in lieu of proceeding with formal 3020-a charges. Plaintiff declined. Speach Aff. ¶ 35; Pl. 2013 Dep. at 135-37.

43. The District served an original set of 3020-a charges against Plaintiff in June 2009. The original set of charges contained three (3) specified charges. The charges sought a maximum penalty of a 30 day suspension, not Plaintiff's termination from employment. Pl. 2013 Dep. at 131-32; Speach Aff. ¶ 36; Ex. E.

44. The collective bargaining agreement contains a provision providing that the District may suspend a teacher without pay in advance of a 3020-a hearing. Speach Aff. ¶ 39; Ex. F.

45. An independent arbitrator and a 3020-a hearing officer have considered the provision in the collective bargaining agreement on prior occasions and have agreed that it is valid, even after the 1994 amendments to Section 3020-a of the Education Law. Speach Aff. ¶ 40; Exs. G; H.

46. Plaintiff claimed that her gradebook went missing in or around June 2009. It was Plaintiff's responsibility to keep track of and control over her gradebook. Pl. 2013 Dep. at 164.

47. Wolf and Plaintiff were scheduled to discuss Plaintiff's Year-End Summary ("YES report") for the 2008-2009 school year on June 12, 2009. Pl. 2013 Dep. at 151-52. That meeting had to be rescheduled. *Id*.

48. Wolf's secretary Ms. Moran contacted Plaintiff to attempt to reschedule the meeting to go over the YES report during the summer or 2009. Pl. 2013 Dep. at 153. Plaintiff told Ms. Moran that she would not come in for the meeting over the summer. Pl. 2013 Dep. at 155.

49. Plaintiff posted on her Facebook page the following status: "If there is any justice in this world . . . and I do believe there is – Wolfie picked the WRONG person to mess with!!!! Oh, Yeah, -- it's ON!!!" Pl. 2013 Dep. at 147; Wolf Aff. Ex. D.

50. Wolf's secretary Tami Moran was Plaintiff's "Facebook friend" during the time Wolf was Principal. Ms. Moran logged in to her account and showed Wolf the statement Plaintiff had posted about Wolf; a "Facebook friend" has the ability to show posts made by their "friends" to anyone, and Plaintiff knew this at the time she made the post. Pl. 2013 Dep. at 145-151; Wolf Aff. ¶ 37.

**2009-2010 School Year**

51. Plaintiff served her 30-day unpaid suspension in September 2009, at the start of the new school year, and returned on October 20, 2009. Pl. 2013 Dep. at 36.

52. The District served an amended set of charges against Plaintiff in September 2009, while Plaintiff was serving her 30-day suspension. Pl. 2013 Dep. at 36. This amended set of charges added a fourth specified charge (for failure to enter grades for certain students in the second quarter of the 2008-2009 school year). The District did not increase the penalty against

Plaintiff. The District continued to seek only a 30-day suspension as a maximum penalty. Speach Aff. ¶¶ 42-46; Ex. I.

53. After Plaintiff returned from her suspension in October 2009, she was never again issued a counseling memo or any further discipline. Pl. 2013 Dep. at 36-37; Speach Aff. ¶¶ 49; 51.

54. Wolf did not post the Drama Club Director position in October 2009 or any other time; no male faculty member was asked the fill the position. Pl. 2013 Dep. at 159-60. Plaintiff held the position continuously from 2003 forward, including the entire time Wolf was Principal. Pl. 2013 Dep. at 157.

55. Ms. Launt's chorus was invited to participate in the holiday sing-along in December 2009. Launt Aff. ¶ 23.

56. Plaintiff was not disciplined or issued a counseling memorandum for a January 2010 incident where she was accused of hanging up on Wolf's secretary, rather, the District merely held a Weingarten investigative meeting. Pl. 2013 Dep. at 189-90; Speach Aff. ¶ 52.

57. The District hired a professional sound person to handle sound for the school's auditorium, including Plaintiff's "Oz" production, in the spring of 2010. This provided improved sound quality for Plaintiff's musicals. Pl. 2013 Dep. at 162-64; Wolf Aff. ¶ 35.

58. Wolf praised and congratulated Ms. Rausa via e-mail and in school news bulletins by saying: "The students, their advisors and directors have been working very hard and are looking forward to sharing the results of all their hard work! Please join us!"; "THIS IS AWESOME STUFF! Congratulations and Good Luck tonight!"; "A big thank you to Ms. Rausa and all the Drama Club members for all their hard work!"; "Our musical production of 'Oz!' was

a tremendous success! Thank you to Ms. Rausa for her tireless dedication to this intensive project!" Wolf Aff. ¶¶ 42-43 36; Exs. F-G; Pl. 2013 Dep. at 171-76.

59. In June 2010, Plaintiff and the District entered into a Settlement Agreement fully settling the 3020-a matter; Plaintiff admitted to one of the charges, and agreed that all charges would remain in her file. The penalty was reduced from a 30-day suspension to a five-day suspension. Pl. 2011 Dep. at 115; Pl. 2013 Dep. at 138-39; Speach Aff. ¶ 50; Complaint Ex. C.

60. Pursuant to the Settlement Agreement, the District paid and Plaintiff accepted a refund of 25 days pay. Pl. 2013 Dep. at 138; Speach Aff. ¶ 50.

**2010-2011 School Year**

61. Mr. Wallace's teaching schedule was changed for the 2010-2011 school year to accommodate his administrative internship. Speach Aff. ¶ 54. The District made similar scheduling changes for female teachers in the internship program. *Id.*

62. Plaintiff did not apply for an internship during the time that Wolf was employed as Principal. Pl. 2013 Dep. at 218.

63. The administrator who Plaintiff believes "instigated a confrontation with a parent" sometime after March 2011 was Associate Principal Linda Jackson. Pl. 2013 Dep. at 222.

64. The spring 2011 evaluation that Plaintiff characterizes as "unfair and improper" was drafted by Ms. Jackson. Pl. 2013 Dep. at 211.

65. Ms. Jackson changed the evaluation to Plaintiff's satisfaction. Pl. 2013 Dep. at 215.

66. In June 2011, a parent complained about Plaintiff. A Weingarten investigative meeting was held, but Plaintiff was not disciplined or issued a counseling memorandum over the subject of that meeting. Pl. 2013 Dep. at 210-11; Speach Aff. ¶ 52.

67. Plaintiff was not issued a counseling memorandum, disciplined, or suspended in 2010-2011 school year. Pl. 2013 Dep. at 36-37.

DATED: March 29, 2013
Syracuse, New York

BOND, SCHOENECK & KING, PLLC

BY: /s/ Laura H. Harshbarger
Laura H. Harshbarger, Esq.
Bar Roll No. 509779
Kristen E. Smith, Esq.
Bar Roll No. 513756
*Attorneys for Defendants*
Office and Post Office Address
One Lincoln Center
Syracuse, NY 13202
Telephone: (315) 218-8314
Facsimile: (315) 218-8100

TO: Stephen Ciotoli, Esq.
O'Hara, O'Connell & Ciotoli
*Attorneys for Plaintiff*
Office and Post Office Address
7202 East Genesee Street
Fayetteville, NY 13066
Telephone: (315) 451-3810
E-mail: sdc@oharalaw.com